SHORT RECORD
NO. 24-8014
FILED 05/06/2024

No. 24-____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| BENAHDAM HURT, | ) Petition for Permission to Appeal |
| | ) Order of the United States District |
| Plaintiff-Respondent, | ) Court for the Northern District of |
| | ) Illinois |
| v. | ) |
| | ) No. 1:17-cv-07909 |
| HASINA JAVED, FAIZAL KAREEMI, | ) |
| DREW BECK, and COLEEN | ) |
| DELANEY, | ) The Honorable |
| | ) REBECCA R. PALLMEYER, |
| Defendants-Petitioners. | ) Judge Presiding. |

## PETITION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. § 1292(b)

Based on 28 U.S.C. § 1292(b), Defendants Hasina Javed, Faiza Kareemi,

Colleen Delaney, and Drew Beck (collectively, "defendants") petition this court for

permission to appeal from the district court's interlocutory orders issued on

(1) September 25, 2023, denying in part defendants' motion for summary judgment,

A1-A29, and (2) February 15, 2024, denying in part defendants' motion to

reconsider that summary judgment order, A30-A46.

At issue in this case is whether defendants, who are employees at a state-run

mental health facility for adults, are liable for failing to intervene to protect

Plaintiff Benahdam Hurt from one of their colleague's sexual misconduct.  Relevant

here, the parties dispute which legal standard governs that claim:  (1) the

traditional deliberate indifference standard that requires a defendant's actual

knowledge of a substantial risk of harm, or (2) the modified deliberate indifference

standard that this court has applied only in the foster care setting and that imposes liability if a defendant knew or *suspected* the risk of harm. The district court ruled that the latter applied, but recognized that it was deciding an issue of first impression, since this court has never resolved which standard applies in a failure-to-intervene claim involving sexual abuse of an adult resident of a state-run mental health facility. A21; A37. And given the nature of the record in this case — which includes no direct evidence of actual knowledge by defendants — the difference between the two standards may very well be dispositive at trial. *E.g.*, A48-A49.

In light of the foregoing, defendants filed a motion to certify a question for an interlocutory appeal under section 1292(b) based on the district court's orders denying defendants' motion for summary judgment on the failure-to-intervene claim and denying in part their motion to reconsider the summary judgment order. Doc. 277. Specifically, defendants sought review of the question whether the deliberate indifference standard or modified deliberate indifference standard applies to a failure-to-intervene claim involving sexual abuse of an adult resident of a mental health facility. *Id.* at 4. On April 25, 2024, the district court granted that motion upon finding that the orders presented a controlling question of law on which there was substantial ground for difference of opinion and that an immediate appeal could materially advance the litigation. A47-50.

To obtain leave to appeal an interlocutory order under section 1292(b), both the district court and this court must grant a party permission to appeal. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624 (7th Cir. 2010). Defendants now ask

this court to grant this petition and hear an appeal in this case at this time. Defendants further request that the appeal be briefed without extensions so that it could be set for argument during the first week of the court's 2024-2025 Term or as soon as practicable in advance of the November 6, 2024 trial date set by the district court.

## BACKGROUND

From 2014 to 2017, plaintiff was a patient at the Elgin Mental Health Center, which is a state-run mental health facility treating individuals who have been found not guilty by reason of insanity in a criminal case, among others. Doc. 217 at 2-3. In 2017, security officers at the facility became aware that social worker Christy Lenhardt was engaged in sexual misconduct with plaintiff, who was one of her patients at the time. A1. Lenhardt was fired and later pleaded guilty to a felony count of sexual misconduct with a person with disabilities. A16-A17. Plaintiff filed an action in federal court, Doc. 1, and alleged in the operative complaint that defendants failed to intervene to protect him from the sexual misconduct, among other claims, Doc. 57.

In 2022, the parties cross-moved for summary judgment. Docs. 216, 220. As relevant here, plaintiff asserted that he was entitled to summary judgment on the failure-to-intervene claim because the evidence demonstrated that defendants knew or suspected that Lenhardt was abusing plaintiff. A20. As support, plaintiff pointed to circumstantial evidence, including Lenhardt's history of sexual misconduct with facility residents, the rumors about Lenhardt at the facility, the

fact that the misconduct involving plaintiff occurred on-site, and statements purportedly made by defendants about the interactions between Lenhardt and plaintiff. A25-A26.

For their part, defendants asserted that they were entitled to summary judgment because plaintiff presented no evidence that any defendant actually knew about Lenhardt's misconduct or disregarded a substantial risk of harm. Doc. 217 at 2, 7-11. Instead, defendants argued, plaintiff's theory rested on the view that defendants should have known about the misconduct, which was insufficient under this court's precedent. *Id.* at 2. Indeed, the evidence showed that the encounters between plaintiff and Lenhardt primarily occurred in an office with the door closed and that both plaintiff and Lenhardt actively worked to conceal their sexual activities from others. *Id.* at 3-4. And though evidence suggested that some defendants walked by Lenhardt's office while she and plaintiff were engaging in sexual acts, there is no evidence that any defendant saw the sexual activity or otherwise actually knew about Lenhardt's misconduct. *Id.* at 3-5. Finally, each defendant testified that he or she had no knowledge or suspicion of the sexual misconduct committed by Lenhardt. *Id.* at 7-8.

The district court denied summary judgment to both parties on the failure-to-intervene claim, but granted summary judgment to defendants on the other claims. A28. The court first addressed the dispute over the legal standard, noting that defendants relied on bystander-liability cases involving excessive force by police officers that require actual knowledge of a constitutional violation, whereas plaintiff

cited cases in the supervisor-liability context that look to whether the defendant "knew *or suspected* that the plaintiffs were being abused." A20. The court concluded that, in its view, "neither side in this case has cited directly-controlling case law." A21. Instead, the court decided, the most analogous standard "can be found in § 1983 failure-to-intervene cases brought by victims of sexual abuse in the foster care setting," where "the Seventh Circuit has applied a 'modified deliberate indifference standard . . . requiring actual knowledge *or suspicion of the alleged risk.*'" *Id.* (quoting *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003)) (emphasis and ellipses in original). In both the foster-care cases and this case, the court explained, "the plaintiffs are individuals with limited capacity — children and individuals adjudged criminally insane, respectively" — and "were in the long-term custody of the state when they were allegedly subjected to abuse." A22.

The court then reviewed the evidence presented by both parties and concluded that "there remain significant issues of material fact as to what each Defendant knew or suspected" with respect to Lenhardt's sexual misconduct toward plaintiff. A25. On the one hand, the court explained, there was evidence "connecting Lenhardt's sexual abuse to Defendants," including the "rumors that swirled around the facility" about Lenhardt, her misconduct with other patients, that she engaged in this misconduct during normal business hours, and that she was nearly caught in the act on multiple occasions. *Id.* On the other hand, notwithstanding the "voluminous" record evidence that Lenhardt was abusive, plaintiff "must show that the Defendants in fact knew or suspected the existence of

abuse, not merely that they 'should have known.'" A25-A26 (internal quotations omitted). And on this point, defendants "each vehemently denied [the] inferences supplied by Plaintiff and maintain that they had no knowledge or suspicion of a sexual relationship between Lenhardt and [plaintiff]." A26. Accordingly, the court concluded, there is "evidence from which a reasonable jury could find that each Defendant knew of or suspected that Lenhardt was sexually abusing [plaintiff]" or, alternatively, that "each Defendant was indeed ignorant of Lenhardt's abuse, in part because of Lenhardt and [plaintiff's] efforts to conceal their relationship and in part because of the sheer unlikelihood of the scenario." A26-A27. The court thus denied the cross-motions for summary judgment on the failure-to-intervene claim. A27. Because the parties did not cite the foster-care line of cases in their summary judgment filings, however, the court invited additional briefing on whether the modified deliberate indifference standard should apply. A23 n.8.

Shortly thereafter, defendants filed a motion to reconsider on several bases, including the application of the modified deliberate indifference standard to the failure-to-intervene claim. Doc. 254. As defendants explained, that standard is limited to the foster care setting, where "children in state custody have a constitutional right not to be placed in a foster home where the state knows or suspects that the children may be subject to sexual or other abuse." *Id.* at 7 (internal quotations omitted). Indeed, courts have continued to apply a standard based in actual knowledge (as opposed to mere suspicion) to failure-to-intervene claims arising out of other contexts where the district court's logic could arguably

apply, such as in mental hospitals, prisons, and schools. *Id.* at 6-9. Defendants also identified several critical differences between foster homes and state-run mental health facilities. *Id.* at 9-12.

The district court denied the portion of defendants' motion that sought reconsideration of the modified deliberate indifference standard. A46. In reaching this decision, the court acknowledged that "the Seventh Circuit has not explicitly endorsed applying the modified deliberate indifference standard outside of the foster care context," but it also has not "foreclosed application of the standard in analogous contexts." A37. The court reiterated its view that "the foster care cases are most analogous to [plaintiff's] case," A39, and rejected comparisons to the deliberate indifference standard typically applied in the prison context, under which a plaintiff must show actual knowledge of a substantial risk of harm, A40-A41. Finally, the court noted that its earlier "summary judgment ruling is not contingent on application of the [modified deliberate indifference standard]" because plaintiff's claim "would survive summary judgment under the traditional deliberate indifference standard as well." A42.

Defendants then moved the district court to permit an interlocutory appeal of a controlling legal question decided in the district court's September 23, 2023 and February 15, 2024 orders — specifically, whether the deliberate indifference standard or modified deliberate indifference standard applies to a failure-to-intervene claim involving sexual abuse of an adult resident of a mental health facility. Doc. 277. The district court granted the motion on April 25, 2024, upon

concluding that all four criteria identified by this court for interlocutory appeals under section 1292(b) had been satisfied: the question presented was (1) a question of law (2) that is controlling, (3) contestable, and (4) has the potential to accelerate the litigation. A48-A49. On the final point, the court explained that while the case will be proceeding to trial on November 6, 2024, an intermediate appeal was appropriate at this time because "clarity on the liability standard would streamline trial arguments[,] minimize jury confusion[, and] mitigate the risk of a retrial in the event of an erroneous legal standard application." A49.

## QUESTION PRESENTED

Whether the deliberate indifference standard or modified deliberate indifference standard applies to a failure-to-intervene claim involving sexual abuse of an adult resident of a state-run mental health facility.

## DISCUSSION

This court may permit an appeal from an interlocutory order when it raises "a controlling question of law as to which there is a substantial ground for difference of opinion" and an interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). To permit a section 1292(b) appeal here, then, this court must find that: (1) the district court's orders raised a legal question, (2) the question is controlling, (3) the question is contestable, and (4) this court's answer to the question has the potential to "speed up" the litigation. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis omitted).

As detailed below, the question presented, which was decided in the district court's September 25, 2023 and February 15, 2024 orders, meets this criteria, and therefore should be reviewed by this court at this time.

## I. The question presented is a pure question of law.

To start, the question presented — whether the deliberate indifference or modified deliberate indifference standard applies to failure-to-intervene claims involving sexual abuse of an adult resident of a state-run mental health facility — is a purely legal one. For purposes of section 1292(b), a legal question is "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," and not "whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. They are questions that a court may "decide quickly and cleanly without having to study the record," and thus are often considered "'pure' question[s] of law" or "abstract legal issue[s]." *Id.* at 677.

Here, as the district court explained, the question presented "revolves around whether one constitutional standard (deliberate indifference) or another (modified deliberate indifference) applies to a general factual context (sexual abuse of an adult resident of a state-run mental health facility)." A48. In other words, it is an abstract legal question that would not require this court to consider the specific facts of this case, let alone "go 'hunting through the record compiled in the summary judgment proceeding.'" *Id.* (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d

at 625-26). Instead, "its resolution primarily requires a review of the constitutional provisions and caselaw animating the parties' competing legal standards." *Id.*

Because the question presented is a legal one that would not require this court to study a factual record to answer, the first criterion under section 1292(b) is satisfied.

## II. The answer to this question likely will control the future course of this case.

The question presented is also "controlling" for purposes of section 1292(b). As this court has explained, "the application of a legal standard is a controlling question of law within the meaning of section 1292(b)." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 626. Additionally, a question of law "may be deemed 'controlling'" on a case if "its resolution is quite likely to affect the future course of the litigation, even if [it is] not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996); *see also, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997), *abrogated on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) (fact that the issue "may in the end not prove decisive does not show that the district judge and we were wrong to certify his ruling on the issue" under section 1292(b)). Similarly, a question may be considered "controlling" where, as here, litigation would continue before the district court regardless of how this court answered the certified question. *See Sokaogon*, 86 F.3d at 659 (court does not "interpret the term ['controlling'] literally"). In other words, it is sufficient for purposes of section 1292(b) for there to be the "possibility" of "curtailing and

10

simplifying pretrial or trial" proceedings. Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2023).

The question presented is "controlling" for several reasons. At the threshold, it involves the application of a legal standard to a new factual scenario — a type of question that this court has deemed sufficient for purposes of section 1292(b). *In re Text Messaging Antitrust Litig.*, 630 F.3d at 626 (collecting cases). Furthermore, as noted by the district court, this criterion is satisfied for the additional reason that "whether a given defendant is ultimately found liable at trial may well turn on which of the two standards is applied to Plaintiff's claim." A49. For instance, "the evidence at trial might show that a defendant only *suspected* — and did not have *knowledge* — that there was a substantial risk that Plaintiff was being sexually abused." *Id.* (emphasis in original).

Indeed, the summary judgment record contained no direct evidence that any defendant knew about Lenhardt's sexual misconduct; on the contrary, each defendant denied knowing that Lenhardt was abusing plaintiff. *Supra* p.4. To support his theory that defendants knew or suspected abuse, plaintiff has thus relied on evidence of abuse that was "seemingly right in front of Defendants," as well as inferences that could be drawn from statements allegedly made by defendants. A25-A26. If the jury were to credit defendants' statements denying actual knowledge but agree with the theory presented by plaintiff, then the difference between the deliberate indifference standard, which requires actual

knowledge, and the modified deliberate indifference standard, which does not, would likely be dispositive.

Finally, the question is "controlling" because, as detailed further below, *see infra* Section IV, resolving which standard applies to plaintiff's failure-to-intervene claim will simplify pretrial and trial proceedings, including by ensuring that the correct legal standard is applied to the evidence presented at trial. Without such resolution, there will be substantial pretrial litigation over the proper jury instructions and scope of admissible evidence, as well as the potential for a retrial if this court were to later disagree with the district court's determination that the modified deliberate indifference standard applies. For each of these reasons, the second criterion for section 1292(b) is satisfied.

## III. There is substantial ground for difference of opinion on the question presented.

Turning to the third criterion, the district court correctly determined that it was satisfied because the question presented is contestable. For purposes of section 1292(b), a question of law is contestable if "there is a substantial ground for disagreement." *Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) (emphasis omitted). And as this court has recognized, "questions of first impression . . . [are] certainly contestable." *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002).

As the district court explained in its summary judgment order, and reiterated in its orders denying reconsideration and certifying an interlocutory appeal, the

question presented is one of first impression because this court has never set forth the applicable standard for failure-to-intervene claims involving sexual abuse of an adult resident of a state-run mental health facility. A21; A37; *see also* Doc. A49 ("As the court has now stressed across three orders, neither party has pointed to controlling Seventh Circuit precedent, and the court's own research has not illuminated an answer that definitively settles the debate."). It thus constitutes a "contestable" question for purposes of section 1292(b).

Another reason that the question is contestable is because there is a substantial ground for difference in opinion as to its correct resolution. In reaching its decision to apply the modified deliberate indifference standard, the district court canvassed decisions addressing failure-to-intervene claims in other, similar contexts. *E.g.*, A19-A22; A34-A40. Based on that review, it observed that there were "at least three potential standards: 'actual knowledge'; 'actual knowledge of a substantial risk' (deliberate indifference); and 'actual knowledge or suspicion of a substantial risk' (modified deliberate indifference)." A39. And although there was no "directly-controlling case law," A21, it ultimately concluded that the modified deliberate indifference standard should apply because claims arising out of sexual abuse in the foster care setting were the closest analogue to the failure-to-intervene claim presented in this case. As support for this conclusion, the court pointed to the fact that the plaintiffs in both contexts are "individuals with limited capacity" who are "in the long-term custody of the state when they were allegedly subject to abuse." A22.

The district court's analysis disregards, however, that this court and lower courts within the circuit have addressed failure-to-intervene claims in other situations involving individuals who have limited capacities or who are in the custody or care of the State, yet have not extended the modified deliberate indifference standard beyond the foster care setting. Indeed, as the district court recognized, this court has consistently applied the deliberate indifference standard in the prison context, where individuals are also in the "long-term custody" of the State. A40; *see also, e.g., Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). And lower courts have applied the deliberate indifference standard (or a similar standard based on actual knowledge) in cases involving adults committed to mental hospitals, *e.g., Strong v. Wisconsin*, 544 F. Supp. 2d 748, 765 (W.D. Wisc. 2008); abuse of children who were civilly committed, *e.g., Golbert v. Aurora Chicago Lakeshore Hosp., LLC*, No. 19-cv-08257, 2021 WL 949334, at *6 (N.D. Ill. Mar. 11, 2021); and abuse of children in the school setting, *e.g., Medina as next friend for N.M. v. Izquierdo*, 594 F. Supp. 3d 1045, 1060-61 (N.D. Ill. 2022).

There are also significant differences between children in foster care and adult patients in a mental health facility. For instance, individuals in the foster care setting are children who may lack meaningful opportunities to report abuse by foster parents. *E.g., K.H. through Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) ("given the privacies of the home, it is more difficult for the state to prevent neglect and abuse by foster parents than by employees in a state institution"). At the facility where plaintiff was housed, by contrast, the adult patients have access

to numerous people at any time of the day, making it easier to report abuse.  And although individuals treated at state-run mental health facilities may have limited capacities in certain respects, those determinations are assessed on an individualized basis and typically do not involve imposition of the same legal limitations as apply to children.  *E.g.*, 405 ILCS 5/2-100 (adults admitted to mental health facilities retain all rights, benefits, and privileges guaranteed by law, including the right to vote and the right to file lawsuits in their own name); *id.* § 5/2-101 (legal incompetence for individuals admitted to a mental health facility decided in a guardianship hearing); *id.* §§ 5/2-102, 107, 107.1, 111 (adult patients have the right to refuse treatment, medication, and medical and surgical procedures, except in emergencies or with a court order).

In short, because the question presented is a legal question of first impression on which there is substantial ground for debate, the third criterion for permitting a section 1292(b) appeal is satisfied as well.

## IV. This court's answer to the legal question will likely speed up the litigation.

Finally, the fourth criterion is satisfied because an interlocutory appeal is likely to accelerate the litigation.  Under section 1292(b), this criterion does not require that the interlocutory appeal resolve the entirety of the litigation; instead, it is satisfied so long as "an immediate appeal *may* materially advance the ultimate termination of the litigation."  *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (emphasis in original).

As the district court correctly noted, an interlocutory appeal would materially advance the litigation because "clarity on the liability standard would streamline trial arguments and minimize jury confusion," as well as allow the parties to better evaluate their prospects of prevailing at trial, which could aid settlement discussions. A49. Furthermore, clarifying the legal standard at this juncture will minimize the risk of retrial. *Id.* If this court denies this petition and plaintiff prevails under the modified deliberate indifference standard, then defendants will end up pursuing an appeal on the same question presented by this interlocutory appeal. And if they succeed on that appeal, then there would be a retrial and, potentially, another appeal from that judgment. Resolving the question presented now, however, would eliminate that risk and allow the parties to proceed to trial with the certainty that the correct legal standard will be applied.

## CONCLUSION

WHEREFORE, this court should permit an interlocutory appeal from the part of the district court's September 25, 2023 order denying their summary judgment motion on the failure-to-intervene claim, and the part of the district court's February 15, 2024 order denying their motion to reconsider on the failure-to-intervene claim, under 28 U.S.C. § 1292(b). Defendants further request that the appeal be briefed without extensions so that it could be set for argument during the

first week of the court's 2024-2025 Term or as soon as practicable in advance of the

November 6, 2024 trial date set by the district court.

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

By:    <u>/s/ Sarah A. Hunger</u>
SARAH A. HUNGER
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

# APPENDIX

# TABLE OF CONTENTS TO APPENDIX

District Court Order (Dist. Ct. Doc. 245),
entered Sept. 25, 2023 ............................................................................A1-A29

District Court Order (Dist. Ct. Doc. 274),
entered Feb. 15, 2024 ............................................................................A30-A46

District Court Order (Dist. Ct. Doc. 288),
entered Apr. 25, 2024 ............................................................................A47-A50

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENAHDAM HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17-cv-7909 |
| | ) | |
| JAMES CORCORAN, *et al.*, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |
| ―――――――――――――― | ) | |
| | ) | |
| MARK OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-334 |
| | ) | |
| JAMES P. CORCORAN, *et al.*, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |
| ―――――――――――――― | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On June 30, 2017, security officers escorted social worker Christy Lenhardt from the premises of the Elgin Mental Health Center ("EMHC"), a state-run mental health hospital that houses and treats patients who have been found not guilty by reason of insanity ("NGRI"). Earlier that day, security officers uncovered evidence that Lenhardt was sexually abusing a patient, Plaintiff Benahdam Hurt. Lenhardt has since pleaded guilty to a felony count of sexual misconduct with a person with disabilities for her sexual abuse of Hurt. Unfortunately, Lenhardt's misconduct was not isolated to Plaintiff Hurt, and other patients, including Plaintiff Mark Owens, have alleged that she made sexual advances on them. In these related cases, Plaintiffs Hurt and Owens bring suit against multiple EMHC staff members whom they believe should have taken steps to protect them. The Defendants—each state employees sued in their individual capacity—are Dr. Faisa Kareemi and Dr. Hasina Javed, psychiatrists employed by EMHC; Diana Hogan and Colleen Delaney, nurses at EMHC; and Andrew Beck, a social worker at EMHC. Plaintiffs allege that the

**A1**

Defendants violated their substantive and procedural due process rights under the Fourteenth Amendment because they knew or suspected that Lenhardt had been abusing them but failed to report Lenhardt to the authorities, despite their obligations to do so. Both sides now move for summary judgment.

## BACKGROUND[1]

### A.    Introduction to EMHC and Defendants

Of central importance in this case is what information was available to the individual defendants. An understanding of EMHC's physical and administrative structures is therefore helpful. EMHC is organized in different units, including, as relevant here, the K-Unit and the L-Unit, both of which house forensic patients. (Hurt DSOF ¶ 10.) Forensic patients are patients who have been committed to EMHC either because they have been deemed unfit to stand trial under 725 ILL. COMP. STAT. ANN. 5/104-16 or have been found NGRI under 730 ILL. COMP. STAT. ANN. 5/5-2-4. (Pls.' Joint Br. at 6.) The K-Unit and L-Unit are spatially separated by a common administrative area, but the staff of the two units have access to both units.[2] (Hurt DSOF ¶ 11.)

---

[1]      The facts set forth here come mainly from the parties' Local Rule 56.1 statements and related exhibits. Plaintiffs filed a joint statement, and Defendants responded to that statement jointly. Defendants filed separate statements on the two dockets, and Plaintiffs responded to them separately. (See Defs.' L.R. 56.1 Joint Statement of Material Facts in Supp. of Summ. J. ("Hurt DSOF") [Hurt 218]; Def.'s L.R. 56.1 Statement of Material Facts in Supp of Summ. J. ("Owens DSOF") [Owens 202]; Pls.' L.R. 56.1 Joint Statement of Material Facts in Supp. of Summ. J. ("PSOF") [Hurt 222, Owens 204].) The court has also accounted for each party's responsive statements. (See Hurt's Resp. to DSOF ("Hurt DSOFR") [Hurt 234]; Owens' Resp. to Owens DSOF ("Owens DSOFR") [Owens 212]; Defs.' Joint Resp. to PSOF ("PSOFR") [Hurt 236, Owens 214].)
        The court considers only those facts that are supported by record evidence. Several of Plaintiffs' statements of facts are not supported by record evidence and therefore are not addressed here. For example, in some instances the cited material does not support the statement asserted. (See, e.g., PSOF ¶¶ 35, 36, 46, 52, 56, 63, 64, 67, 68, 90, 95, 96, 111, 116, 117.) In addition, some of Plaintiffs' citations reference documents not in the record. (See, e.g., PSOF ¶¶ 2, 39, 40, 92, 118.)

[2]      The court is uncertain whether there is any other distinction between the K-Unit and the L-Unit or why a patient may be initially assigned to one unit versus the other.

**A2**

Staff on the K-Unit and L-Unit typically includes nursing staff, psychologists, security therapy aides ("STAs"), social workers, activity therapists, and two psychiatrists—one for each unit. (*Id.* ¶ 12.)

EMHC patients ordinarily meet with their social workers individually every one to two weeks, but these meetings may be more frequent when a patient is first admitted or requires additional treatment for any reason. (*Id.* ¶ 13.) Social workers on the L-Unit normally meet patients in the social workers' offices, and, under EMHC rules, social workers were expected to keep their office doors closed but unlocked during these meetings. (*Id.* ¶ 14.) On their arrival at EMHC, patients would meet with their treating psychiatrist on a daily or weekly basis, but, after the patient is settled in, the frequency of those visits is reduced to bi-monthly or monthly. (*Id.* ¶ 15.) Also on a monthly basis, patients meet with their entire treatment team, including the assigned social worker and psychiatrist, along with other EMHC staff members. (*Id.* ¶ 16.) Each employee at EMHC is required by state law to call the Office of the Inspector General ("OIG") within four hours if they learn or suspect that any patient has been subject to any sort of neglect or abuse. (*Id.* ¶ 19.)

At all relevant times, Defendants in this case were staff members in the K-Unit or L-Unit. Defendant Dr. Faisa Kareemi worked as a psychiatrist on the K-Unit (*id.* ¶¶ 3, 25), and Defendant Dr. Hasina Javed worked as a psychiatrist on the L-Unit. (*Id.* ¶¶ 2, 23). Psychiatrists at EMHC work with social workers and nursing staff as part of a treatment team, but the psychiatrists do not supervise the social workers or nursing staff, nor are psychiatrists responsible for evaluations or disciplinary action of social work or nursing staff. (*Id.* ¶¶ 17, 18.) Drs. Javed and Kareemi never worked in the social work division at EMHC and have never supervised any social workers during their employment at EMHC. (*Id.* ¶ 37.)

Defendant Colleen Delaney was a member of the EMHC nursing staff (*Id.* ¶ 4); she worked on the L-Unit as a nurse manager from approximately 2011 to 2015, when she became the Associate Director of Nursing for the Forensic Treatment Program, overseeing 11 units, including the K-Unit and L-Unit. (*Id.* ¶ 29.) Defendant Diana Hogan was also a member of the EMHC

3

**A3**

nursing staff (*id.* ¶ 5); from 2008 to 2015, Hogan served as the Associate Director of Nursing of the Forensic Treatment Program, and she then became the Director of Nursing at EMHC. (*Id.* ¶ 32.) Hogan did not work on the K-Unit or the L-Unit on a daily basis and, as Associate Director of Nursing and then Director of Nursing, Hogan did not supervise social workers. (*Id.* ¶¶ 33, 34.) Defendants Delaney and Hogan never worked for the social work division of EMHC and have never supervised any social workers during their employment at EMHC. (*Id.* ¶ 37.)

Defendant Andrew ("Drew") Beck was an EMHC social worker and worked on the K-Unit beginning in 2008. (*Id.* ¶¶ 6, 36.) As a fellow social worker, Beck did not supervise Christy Lenhardt. (*Id.* ¶ 38.) For her part, Lenhardt worked as a social worker at EMHC for twenty years, from approximately 1996 to 2017 (PSOF ¶ 1; Hurt DSOF ¶ 21); she worked on the K-Unit and the L-Unit, and the details of her transfers between the two units are discussed in more detail below.

### B.    Christy Lenhardt's Prior Abuse

Beyond Christy Lenhardt's educational qualifications (Lenhardt holds a master's degree in social work) and her start date of 1996 as a social worker at EMHC (PSOF ¶ 1; Hurt DSOF ¶ 20), the record includes little information about her early years with EMHC. The first document of note is an employment review Lenhardt received in 2005, when she was working on the M-Unit. At that time, Jeff Pharis, the EMHC Forensic Program Director, documented Lenhardt's "perceived overinvolvement with a male patient" and ordered Lenhardt to undertake additional training on "setting limits, clear boundaries" with patients. (Ex. D to PSOF [Hurt 222-4] at 808.) The document did not identify the source of this information nor elaborate on the nature of the specific behavior. (*See id.*; *see also* PSOFR [Hurt 236] ¶ 4.) At her deposition, however, Lenhardt filled in some of the details. She testified that EMHC staff reported to the administration that she was caught in another EMHC employee's office with a patient named A.R.[3] (Christy Lenhardt Dep., Ex. F to PSOF [Hurt 222-9] at 27:4–21 (stating that "people reported it to whoever they

---

[3]    The names of other individuals who are potential victims have been redacted.

**A4**

reported it to").)  The office in question was that of Rebecca ("Nikolov") Ogrodny, a clinical staff member who had worked with Lenhardt on the M Unit.  (PSOF ¶¶ 12, 13.)  Nikolov, as the parties refer to her, s a key witness in this case.

Following her August 2005 review, Lenhardt was transferred from the M-Unit to the L-Unit. (*Id.* ¶ 9.)  Lenhardt acknowledged that she was transferred due to concerns "about [her] boundaries with patients" and, specifically, with A.R.—the male patient referred to in her employment review.  (*Id.* ¶ 9; PSOFR ¶ 9; Lenhardt Dep. at 23:24–29:6.)  Rumors spread (to what extent, it is unclear) among some EMHC workers that Lenhardt was transferred because of suspicions that she was too close to one or more patients.  (*See* PSOF ¶¶ 32, 33; PSOFR ¶¶ 32, 33.)  For example, Audrey Boston—an activity therapist[4] who began working at EMHC in 1988 and, starting in 2012, worked in the L-Unit with Lenhardt and Dr. Javed—testified that in 2005 she heard rumors that Lenhardt had been transferred "due to some sexual or boundary issues with a patient on a prior unit."  (Boston Dep., Ex. J to PSOF [222-14] at 8:3–10, 61:24–62:19; PSOF ¶¶ 23, 24.)

Despite this transfer, Lenhardt continued to pursue a relationship with A.R.  Then, on or about February 27, 2006, A.R. escaped from EMHC.  (PSOF ¶ 10.)  The Illinois State Police ("ISP") began investigating the escape (*id.* ¶ 11), and, on March 1, 2006, they interviewed EMHC workers, including Lenhardt and Nikolov.  (*Id.* ¶¶ 12, 13, 16.)  Lenhardt denied any knowledge of A.R.'s escape plans and characterized her relationship with A.R. as "strictly professional"; however, Lenhardt did tell ISP that the EMHC "administration" had accused her of abusing and neglecting A.R., but she claimed that these allegations were unfounded.  (*Id.* ¶ 14, 17.)  For her part, Nikolov told ISP that she knew nothing about A.R.'s escape plans and did not assist in his escape.  (*Id.* ¶ 15.)  Nikolov further reported that A.R. simply walked past security and signed out, and that it seemed he acted impulsively.  (*Id.* ¶ 16.)

---

[4]     Ms. Boston testified that activity therapists "provide different modes of therapy through groups, such as coping skills, physical activity, [and] exercise."  (Boston Dep. at 9:2–7.)

In truth, A.R. fled to Europe after his escape—and Lenhardt planned to meet him there. (*Id.* ¶ 37.) Whether Lenhardt told Nikolov of these plans in advance is not clear from the record, but Nikolov did drive Lenhardt to the airport for her flight and picked her up upon her return. (*Id.* ¶ 37; *see also* PSOFR ¶ 36.) Whether anyone else at EMHC ever knew of Lenhardt's travels to Europe to meet A.R. is also not clear from the record.

Staff members did know, of course, that a patient had escaped. For example, Defendant Dr. Javed worked continuously with Lenhardt after Lenhardt's transfer from the M-Unit to the L-Unit in 2005, during the period when A.R. escaped in 2006, and continuing until Lenhardt's separation from EMHC on July 5, 2017. (PSOF ¶ 19.) Dr. Javed says she did not know why Lenhardt was transferred from the M-Unit to the L-Unit. (Javed Dep., Ex. G to PSOF [222-10] 77:10–13 ("She was being transferred to our unit because of some issue on the other unit but I don't know any details of that, you know.").) But Dr. Javed did hear the "big news" about a patient escaping "right after" it happened; only "[m]uch later" however, did the doctor learn that the patient was A.R. (*Id.* at 83:6–23.)

Notwithstanding Lenhardt's involvement in A.R.'s escape, she continued her job as a social worker in the L-Unit for more than ten years, ostensibly because EMHC administrators were unaware of the involvement. A few years later, in 2009 or 2010, Lenhardt's relationship with another patient, Patient M.A.H., generated concern among EMHC staff members. (*See Id.* at 100:22–101:18.) In a 2017 interview with ISP after Lenhardt's abuse of Plaintiff Hurt had come to light, Dr. Javed reflected on Lenhardt's earlier relationship with M.A.H., who had been Dr. Javed's patient. Dr. Javed told police that she "believed that [M.A.H. had been] spending a lot of time in [Lenhardt's] office," and that Javed "had discussed that with the patient." (*Id.* at 97:9–12, 100:22–101:18.) Dr. Javed further explained that she and M.A.H. are both Muslim, and she had discussed M.A.H.'s feelings for Lenhardt in connection with his religious beliefs. Javed reported that M.A.H. told her that Prophet Mohammed married a wife much older than he was, so there would be nothing wrong with his having a relationship with Lenhardt. (*Id.* at 120:23–121:3.) After

**A6**

this conversation with M.A.H., Javed told Lenhart that M.A.H. had "shared with [Javed] that he had feelings for [Lenhardt] and that it would be advisable if he d[id] not continue to see her anymore." (*Id.* at 107:2–5.) Javed reported that she was "concerned about the patient being overly fixated on the staff" in his unit, where only women worked, and she decided he should be transferred to a different unit where he could work with a male therapist. (*Id.* at 106:2–15.)

Word of M.A.H.'s transfer also got around. Defendant Delaney, who worked in the nursing division, testified that at some point (Delaney does not recall when), Defendant Beck told Delaney that M.A.H. had reported to his treatment team that he had developed feelings for Lenhardt. Delaney recalls that Lenhardt had reportedly admitted she had "feelings for [M.A.H.]" and had acknowledged "that it would be better if he was moved off the unit." (Delaney Dep., Ex. N to PSOF [222-18] 191:7–192:10.) Whether Lenhardt and M.A.H. engaged in a sexual relationship is not clear, but it appears that there was no further issue between Lenhardt and M.A.H. after he transferred to a different unit.

### C.     Lenhardt and Plaintiff Owens

Plaintiff Mark Owens was admitted to EMHC in 2012 for charges related to the attempted assault of a police officer. (Owens DSOF ¶ 17; Dep. of Mark Owens, Ex. M to PSOF [Hurt 222-17] at 14:11–15, 30:8–16.) Mr. Owens was housed in the L-Unit where Lenhardt was assigned as social worker. (PSOF ¶ 49; Owens Dep. at 48:11–49:12.) Owens testified that other EMHC patients—namely, Plaintiff Hurt and M.A.H.—told him about sexual acts Lenhardt performed on them. (*See* PSOF ¶ 50; Owens Dep. at 63:19–22.) Lenhardt made Owens feel "uncomfortable." (Owens Dep. at 36:2–3.) For example, Owens recalled a meeting with Lenhardt during which Lenhardt said to him, "you're not going to get out of here unless you work—unless we get what we want," and he interpreted this remark as a sexual advance. (*Id.* at 34:7–35:24.) On another occasion, when Owens was seated across from Lenhardt in a chair in her office, she "nudg[ed] [him] to come closer." (*Id.* at 49:20–23.) Owens testified that Lenhardt "took [him] by the seat [of his chair] and tried to move it." (*Id.* at 56:12–14.) Owens further testified that on one occasion

**A7**

when Lenhardt came to her office at EMHC over the weekend, he listened while Lenhardt described her personal problems to him, in tears; Lenhardt did not make any advances that Owens considered sexual during this encounter, however. (Owens DSOF ¶ 24.)

At his deposition, Owens also described an incident that occurred around June of 2014 when he and Lenhardt were meeting outside of Lenhardt's office. (PSOF ¶ 51; Owens Dep. at 38:4–39:13.) According to Owens, Dr. Javed walked by and, when she observed them, asked why Owens and Lenhardt were meeting outside of Lenhardt's office, and Owens told Javed that he "was not comfortable being in the office with [Lenhardt]." (Owens Dep. at 38:12–14.) Owens testified that Dr. Javed asked, "is it because of the Islam?" and he confirmed this, saying, "You can consider it's because of the Islam." (*Id.* at 38:18–19.) As Owens and Javed are both Muslim, Owens interpreted Javed's question as "insinuating" that the reason he was not comfortable being in the room with Lenhardt was because of his religious beliefs. (*Id.* at 38:20–23; 45:6–10.) After Dr. Javed confronted Owens about his meeting with Lenhardt outside her office, Owens says (without further explanation) that he went into Lenhardt's office hoping she "would be cool" but that "it kind of got real hot" and "awkward." (*Id.* at 39:2–13.)

Dr. Javed also recalled this episode. She testified in her deposition that when she questioned Owens, he said only that he "d[idn't] want to meet in offices," and "want[ed] to be seen in open spaces." (Javed Dep. at 166:8–18.) Dr. Javed did not understand that these concerns were directed toward Lenhardt specifically; rather, Owens "mention[ed] that he [wa]s not comfortable meeting with any staff in offices." (*Id.* at 166:19–167:1.) Dr. Javed did not believe that Owens' statements were meant to alert her to any inappropriate behavior by Lenhardt towards Owens. (Owens DSOF ¶ 45.)

Owens reports, however, that the next time he spoke with Dr. Javed after this incident, he told her that he "was uncomfortable working with Christy from that time forward." (Owens Dep. at 48:1–2.) Owens acknowledges that during this conversation, he did not tell Javed why he was uncomfortable working with Lenhardt, and Javed did not inquire. (*Id.* at 48:3–7.) It is not clear

8

**A8**

from the deposition testimony whether Owens ever specifically asked Javed to be assigned do a different social worker, but Owens was in fact switched to another social worker after this conversation. (*Id.* at 48:8–14.)

The record also shows that on January 15, 2014, Mr. Owens had a physical altercation with another patient. (*See* Ex. R to PSOF [Hurt 222-22] at Bates 8726–27.) The next day, an unidentified social worker documented a call from Mr. Owens' parents in which they raised concerns about the January 15 incident. Page(s) are missing from Owen's medical chart on this date, however (Dr. Javed does not know why), so the full scope of the phone conversation is unknown. (*See id.*; *see also* Javed Dep. at 134:24–135:4.)

Even though Owens had been assigned to another social worker, Lenhardt completed a social work note in his medical chart several months later, on January 5, 2015. (*See* Medical Chart Social Work Note January 5, 2015, Ex. G to Owens DSOFR [Owens 212-8].) After that date, there are no notes labeled as social work progress notes in Owens' file. (*See* PSOF ¶ 65; PSOFR ¶ 65; *see also generally* Ex. U to PSOF [Hurt 222-26]; PSOF ¶ 67; PSOFR ¶ 67.) On August 12, 2017, Owens was transferred from EMHC to Chicago Read Medical Hospital, ending his five-and-a-half-year term at EMHC. (Owens DSOF ¶ 18; PSOF ¶ 115.) Although Mr. Owens believed that Lenhardt was "affectionate" toward him, it is undisputed that the two never engaged in sexual behavior with one another. (*See* PSOF ¶ 59; PSOFR ¶ 59; Owens DSOF ¶ 26–32, 34; Owens DSOFR ¶ 26–32, 34.)

### D. Lenhardt and Plaintiff Hurt

On August 14, 2014, Plaintiff Ben Hurt was admitted to EMHC as NGRI for aggravated battery of a peace officer. (Hurt DSOF ¶ 39.) When first admitted to EMHC, Hurt was housed on the L-Unit where Lenhardt was his social worker and Dr. Javed was his treating psychiatrist. (*Id.* ¶ 40.) Soon after Hurt arrived at EMHC, Lenhardt pursued him. Hurt and Lenhardt first kissed in late 2014. (PSOF ¶ 62.) Hurt's own behavior drew attention: in late November 2014, a nurse's

note in Hurt's chart described instances of Hurt's acting in sexually inappropriate ways around other patients. (*Id.* ¶ 61; Ex. T to PSOF [Hurt 222-25] at Bates Hurt 13989–91.)

Around December 14, 2014, Hurt was temporarily transferred to the K-Unit for his safety after a physical altercation with another patient. (Hurt DSOF ¶ 41.) Hurt returned to the L-Unit by January 4, 2015. (*Id.*) Around that same time, in late 2014 or early 2015, Lenhardt and Hurt started a sexual relationship and began engaging in sexual activity, including Lenhardt's performing oral sex on Hurt in her office. (*Id.* ¶ 43.) During these interactions in Lenhardt's office, Hurt would usually stand in front of Lenhardt with his back facing the door, but looking over his shoulder through a window in the door to see if anyone was approaching. (*Id.* ¶ 44.) Hurt knew that Lenhardt's behavior was placing her job at risk if other EMHC staff members learned of it. (*Id.* ¶ 45.) Specifically, Hurt believed that if EMHC staff discovered their relationship, Lenhardt would go to jail, and he would be transferred to a different mental health facility. (*Id.* ¶ 46.) Lenhardt, too, knew that discovery of the sexual relationship would have serious consequences, including the loss of her job and her social work license and damage to her relationship with her family. (*Id.* ¶ 47.) Accordingly, Hurt and Lenhardt both actively took steps to conceal their sexual relationship from other EMHS patients or staff, and neither said anything about it to other patients or staff, including any of the Defendants. (*Id.* ¶¶ 48, 49, 50.)

All Defendants in fact deny having any knowledge of Lenhardt's sexual relationship with Hurt, but both Hurt and Lenhardt have described circumstances suggesting Defendants could have had a basis for suspicion. Hurt testified that Dr. Javed noticed that he had spent a lot of time with Lenhardt and asked what they were doing together, to which Hurt offered an innocuous response. (*Id.* ¶ 51.) According to Hurt, on one occasion, Dr. Javed came to Lenhardt's office door when Lenhardt was performing oral sex; Hurt concedes he does not know whether Dr. Javed could see what was going on. (*Id.* ¶ 52.) On another occasion, Hurt testified, Lenhardt vomited after performing oral sex on him in a bathroom. (PSOF ¶ 75.) After cleaning himself up, Hurt "walk[ed] out of the bathroom, and Dr. Javed was there." (Hurt Dep. at 80:9–81:3.) According to

**A10**

Hurt, Javed asked him "What's going on with you and [Lenhardt]?" because "[s]omething seems like it's up." (*Id.* at 80:20–22.) Hurt recalls that he "pass[ed] it off," telling Javed that nothing was going on. (*Id.* at 80:22–81:3.)

As for Defendant Delaney, the Director of Nursing, Hurt testified that Delaney noticed that he was "with Christy Lenhardt in the office a lot" and asked "[w]hat are you guys doing?" (Hurt DSOF ¶ 53.) Hurt did not tell Delaney that he was having a physical relationship with Lenhardt, but instead explained that they were engaged in "paperwork." (*Id.* ¶ 53.) Delaney, too, walked by Lenhardt's office on one occasion while Lenhardt was performing oral sex but, as with the incident involving Javed, Hurt does not know that Delaney was aware of what was happening. (*Id.* ¶ 54.) According to Audrey Boston (the activity therapist), Defendant Delaney did call Lenhardt out for "boundary issues" during nursing meetings where, among others, Defendants Dr. Javed, Dr. Kareemi, and Beck were present. (Boston Dep. at 41:5–16.) Boston estimated that Delaney admonished Lenhardt for her behavior several times between 2012 and 2017. (*Id.* at 41:20–44:24.) Lenhardt herself testified that Delaney would "attack" her in morning meetings, though she did not specify the reason for these verbal "attacks." (Lenhardt Dep. at 44:5–50:22.)

Hurt and Lenhardt testified that Defendant Beck, too, had his suspicions. Hurt testified that Beck commented on the amount of time that he spent with Lenhardt. (Hurt DSOF ¶ 55.) And, like Javed and Delaney, Beck came to Lenhardt's office on one occasion when Lenhardt was performing oral sex. (*Id.* ¶ 56.) Again, however, Hurt does not know whether Beck saw what Lenhardt was doing, and Beck never said anything to Hurt about Lenhardt's conduct. (*Id.* ¶ 56.)

Hurt described one incident when he and Lenhardt were interrupted by a knock on the door during an episode of oral sex. (Hurt Dep. at 102:22–103:2.) Hurt alerted Lenhardt that someone was at the door, and when Lenhardt opened it, Beck was there; Beck said, "Christy, I'd like to speak with you," to which Lenhardt replied, "okay." (*Id.* at 102:22–103:15.) According to Hurt, he stepped outside the office at Lenhardt's request. Lenhardt and Beck initially engaged in a conversation outside the office in Hurt's presence, but then went into Lenhardt's office, while

**A11**

Hurt remained outside. (*Id.* at 103:14–24.) Hurt heard Beck and Lenhardt arguing for about ten minutes in the office, after which Beck left and Hurt reentered the room and finished his session with Lenhardt. (*Id.* at 103:20–104:6.)

According to Hurt, Lenhardt told him about her exchange with Beck and reported that Beck had asked her, "What's with you and black guys?" (*Id.* at 103:14–104:6.) In her own testimony, Lenhardt confirmed that Beck made this comment about "black guys" to her. (Lenhardt Dep. at 108:1–3.) Lenhardt also testified that Beck had warned her that "administration was watching [her] and [Hurt]." (*Id.* at 107:13–14.) Beck himself disputes having posed such a question to Lenhardt and denies telling her that the administration was suspicious of her behavior. (Andrew Beck Decl., Ex. 1 to PSOFR [Owens 214-1] ¶¶ 9–10.) Beck asserts that he "first learned of any impropriety" regarding Lenhardt and any EMHC patients during the ISP investigation in the fall of 2017. (Beck Decl. ¶ 4.)

Lenhardt continued to engage in behavior which, according to Plaintiffs, could have exposed Lenhardt's misconduct. Between September and December 2016, Lenhardt and Hurt exchanged numerous amorous emails, including naked pictures of Lenhardt. (PSOF ¶ 74.) Lenhardt used her mobile phone to communicate with an email account that she set up for Hurt. (*Id.* ¶ 74.)

On December 18, 2016, Hurt was transferred from the L-Unit to the K-Unit due to the aggressive behavior of another patient. (*Id.* ¶ 79; PSOFR ¶ 79.) Hurt's transfer to the K-Unit in 2016 resulted in his treatment team being changed. (*See* PSOF ¶ 80.) The treatment teams in both the K-Unit and L-Unit agreed that Hurt would complete the Mental Health Substance Abuse ("MISA") program in the K-Unit. (*Id.* ¶ 80; PSOFR ¶ 80.) That program typically takes patients six to nine months to complete, and Hurt was scheduled to leave EMHC in the summer of 2017, so the plan for his completion of this MISA program would have kept him housed in the K-Unit for the remainder of his time at the facility. (*See* PSOF ¶¶ 80, 112; PSOFR ¶ 80.)

**A12**

Hurt's new social worker in the K-Unit was Robert ("Bob") Hamlin.[5] (*See* Bob Hamlin Dep., Ex. GG to PSOF [Hurt 222-36] at 19:17–20:11.) As a result of Hurt's transfer to the K-Unit, one of Hamlin's patients was transferred to Lenhardt in the L-Unit. (Lenhardt Dep. at 92:6–93:4.) Despite this rearrangement, Lenhardt had a reason to enter the K-Unit where Hurt was housed: Lenhardt explained that Hamlin gave his patients snacks as an incentive for good behavior, and Lenhardt continued this program for Hamlin's former patient, now assigned to the L-Unit. Lenhardt frequently visited Hamlin's office in the K-Unit to retrieve snacks. (*Id.*) In a statement he later gave to the ISP, Hamlin confirmed that he left food for patients in his office. (Ex. B to PSOF [Hurt 222-2] at 000137–38.)

Lenhardt's frequent presence on the K-Unit nevertheless drew suspicion. Activity Therapist Boston testified "on more than several occasions," she observed that Lenhardt had secluded herself in an office with Hurt and was giving him food. (Boston Dep. at 32:9–14; 34-1.) Boston testified that on one occasion she warned Lenhardt that "it looked very odd to have somebody secluded in your office . . . with food," and that "the other patients are talking about it." (*Id.* at 33:13–16.) Boston recalled that when confronted about "boundary issues" during staff meetings, Lenhardt "always made excuses to other people . . .; she would have excuses." (*Id.* at 32:23–24; 41:5-7.) In late December 2016 or early 2017, Lenhardt became emotional, openly in tears for several days during the morning staff meetings about the fact that Hurt was no longer on the L-Unit, and, according to Boston, asking with "over-excessive" tears why he wasn't being transferred back. (Id. at 133:8-134:12; PSOF ¶ 83.)

Defendant Dr. Faiza Kareemi took over as Hurt's treating psychiatrist in the K-Unit. (*Id.* ¶ 80; PSOFR ¶ 80.) Hurt testified that Dr. Kareemi made inquiries about his relationship with Lenhardt, asking him, "How are you two getting along?", "What are you two working on more than—more than work?", "What was going on in the office, why [Hurt] was there so much . . . ."

---

[5]     Defendant Drew Beck was also Hurt's social worker on the K-Unit for a brief period between April 2017 and May 2017. (PSOF ¶ 86.)

**A13**

(Hurt Dep. at 54:18–24.) He also recalled Dr. Kareemi commenting that "Christy Lenhardt is really busy. You go to her office a lot. Why?" (*Id.* at 55:5–7.) Hurts responded by telling Dr. Kareemi that he visited Lenhardt's office to "[g]et services for my treatment plan." (*Id.* at 55:7–8.)

On at least one occasion, Hurt and Lenhardt engaged in sex acts in Hamlin's office. The lock on Hamlin's office was faulty; this defect had at some point previously been reported to security staff. (DSOF ¶ 69.) On May 31, 2017, while Lenhardt and Hurt were in the office, they were accidentally locked in and Lenhardt had to call security to open the door. (PSOF ¶ 91.) A security officer documented this event in a security incident report, noting that Lenhardt told him that she had asked Hurt into the office to try to fix the broken lock. (Ex. GG to PSOF [Hurt 222-36].) On June 1, 2017, Chief of Security William Epperson forwarded the report to several individuals, including Defendants Delaney and Hogan, and stated in his email that he was "[v]ery concerned that a [social worker] would ask for assistance from a patient, for an office not on her unit." (*Id.*) The following day, Medical Administrator James Corcoran attended an administrative meeting where the attendees discussed the fact that "Mr. Hurt, and a social worker, had been locked in an office inadvertently and security was called to somehow open the door." (James Corcoran Dep., Ex. HH to PSOF [222-37] at 24:14–25:20.) At that meeting, "[t]he first thing that came to [Corcoran's] mind" was "Is this reportable to the Office of the Inspector General?" (*Id.* at 29:10–17.)

Corcoran was not the only worker concerned about the incident. When later talking to ISP officers, Defendant Beck also said it was unusual for a patient to be locked in a room with a social worker, especially a social worker who was not assigned to work with that patient. (*See* PSOF ¶ 98; Beck Dep. at 106:3–107:10.) Nikolov, the woman who drove Lenhardt to the airport to visit A.R., testified that after the incident in Hamlin's office she "maybe" told Dr. Javed and Dr. Kareemi that Lenhardt had feelings for a patient in the past. (Nikolov Dep. at 59:2–16.) For their parts, however, neither Javed nor Kareemi has any memory of ever having a conversation with Nikolov about Lenhardt and Hurt or Patient A.R. (Javed Dep. at 251:12–20; Kareemi Dep. at 108:6–8.)

**A14**

In early June, Richard Malis, the Acting Medical Director of EMHC, heard about the locked office incident. (PSOF ¶ 100.) Sometime in early June, he saw Hurt standing in the doorway of Bob Hamlin's office talking to Lenhardt, and he reported this to Hamlin, who then became angry with Lenhardt. (*Id.* ¶ 100; Hurt PSOFR ¶ 100.) Whether Malis or Hamlin took any further action at this point is uncertain.

Then on June 30, 2017, at around 7:30 a.m., Chief Epperson received a report that Hurt had posted on social media a photo of himself, taken within EMHC. (PSOF ¶ 101.) From the appearance of this photograph—which included a picture that could be seen in the background— Epperson and other security officers determined that the photo of Hurt had been taken in Lenhardt's office. (*Id.* ¶ 101; PSOFR ¶ 102.) Security officers proceeded to conduct a search of Hurt's room while Epperson himself was attending the morning meeting. (William Epperson Dep., Ex. JJ to PSOF [Hurt 222-39] at 23:15–18.) In their search, the security staff discovered evidence that included a journal and four USB drives containing audio recordings. In one of these recordings, Lenhardt and Hurt can be heard engaged in or discussing sexual activity; in another, Lenhardt can be heard telling Hurt she had assisted in the escape of A.R. and had visited A.R. in Germany months later. (*Id.* at 16:14-17:19; 35:1–7.) Immediately after the search, security officer Jeremy Jackson knocked on the meeting door and asked Epperson to step outside, where Jackson showed Epperson a passage from the journal he had retrieved from Hurt's room, which made reference to Lenhardt's efforts to assist A.R.'s escape. (*Id.* at 28:2–31.) Epperson returned to the meeting, but did not immediately share what he had learned with others in attendance at the meeting. (*Id.* at 28:16–23.) Epperson did tell the hospital administrator, Brian Dawson, about his team's discovery, and advised Dawson that he intended to report the matter to the Division of Internal Investigations. (*Id.* at 28:24–30:9.)

The room search and meeting had occurred before Lenhardt arrived at work. (PSOF ¶ 105.) Epperson conferred with HR Director Derek Williams and, when Lenhardt arrived, HR personnel intercepted her and took her to the administration area. (Hurt PSOFR ¶¶ 105, 106;

**A15**

Epperson Dep. at 31:13–18.)  By 11:00 a.m., Epperson had listened to the recordings of two conversations between Hurt and Lenhardt, and wrote a detailed report that included an allegation of custodial sexual abuse against Lenhardt.  (PSOF ¶ 108.)  After the recording and journal were found in Hurt's room, Lenhardt was escorted out of EMHC, never to return.[6]  (Id.)  At 1:00 p.m., Epperson called the ISP Division of Internal Investigation and informed them of the allegation of custodial sexual abuse.  (PSOF ¶ 109.)

Dr. Javed testified that she does not recall being present at EMHC the day that Hurt's room was searched and Lenhardt was removed from the premises.  (Javed Dep. at 258:15–265:20.)  She does recall being present soon afterwards, however, and also recalls receiving a call from Lenhardt's husband, who told Dr. Javed that Lenhardt was very upset.  (Id. at 256:19–258:11; See also PSOF ¶ 119.)  In response to a question from Lenhardt's husband about what had happened, Dr. Javed told him, "I know she was walked out relating to some patient issue but that's all I know."  (Javed Dep. at 257:4–17.)

Also on June 30, 2017, Chief Epperson or a member of the EMHC nursing staff imposed a restriction of rights ("ROR") on Hurt, restricting his movement off the unit and his telephone privileges.  (PSOFR ¶ 107.)  On July 3, 2017, EMHC staff extended the ROR until July 22, 2017, effectively prohibiting Hurt from contacting anyone other than his mother.  On July 22, 2017, Hurt's NGRI commitment expired, and he was released from EMHC.  (PSOF ¶ 110, 112.)

After the imposition of the ROR and before his release, Hurt had psychiatric sessions with Dr. Kareemi.  Dr. Kareemi testified that she did not ask Hurt about the investigation during those sessions because the administration had not told her anything about it, and she did not feel it "it was appropriate or my place to go and ask administration why they were hiding it, why they were not telling me."  (See Kareemi Dep. at 206:11–211:17.)

---

[6]      The record is not clear as to how long Lenhardt was in the administration area before she was escorted from the facility.

**A16**

On August 3, 2017, ISP received Chief Epperson's security report. (Ex. B to PSOF at Bates 112.) As noted, Christy Lenhardt has pleaded guilty to a felony count of sexual misconduct with a person with disabilities. (*See* Lenhardt Dep. at 80:10–16.)

## PROCEDURAL HISTORY

Hurt, through counsel, filed this suit on November 2, 2017. He has since filed several amended complaints [Hurt 23, 39, 56] and raises a host of constitutional claims pursuant to 42 U.S.C. § 1983. (*See* Third Amended Complaint [Hurt 56] ¶ 17.) Owens filed his suit on January 1, 2018. His claims in large part mirror Hurt's. The court has dismissed some of those claims on Defendants' motion. *See Hurt v. Corcoran*, No. 17 C 7909, 2019 WL 3842819, at *1 (N.D. Ill. Aug. 15, 2019). What remains are both Plaintiffs' Fourteenth Amendment claims against Dr. Javed; and Hurt's Fourteenth Amendment claim against Kareemi, Beck, Delaney, and Hogan.

Both sides now seek summary judgment [Hurt 216, 220; Owens 200, 203]. In Hurt's case, Defendants argue that they are entitled to summary judgment on all counts on the following bases: (1) Hurt's failure to intervene claim fails because Hurt cannot prove that any Defendant had actual knowledge of the sexual relationship between himself and Lenhardt; (2) Hurt's claims under a theory of supervisory liability fail because none of the Defendants ever supervised Lenhardt in any capacity; and (3) Defendants are entitled to qualified immunity because there is no evidence that any Defendant violated Plaintiff's constitutional rights. (*See generally* Defs' Joint Mem. in Supp. of Summ. J. ("Defs.' Hurt Br.") [Hurt 217].) In support of his own motion for summary judgment [220], Hurt argues that he is entitled to summary judgment on both his substantive and procedural due process claims because the record demonstrates that Defendants knew of or suspected Lenhardt's abuse but failed to report it. (*See generally* Pl.'s Joint Mot. for Summ. J. ("Pls.' Joint Br.") [Hurt 220].)

In Owens' case, Defendant Javed makes the following arguments in support of her motion for summary judgment [Owens 200]: (1) Owens' failure to intervene claim fails because Lenhardt never violated his constitutional rights, and there is no evidence that Dr. Javed had actual

**A17**

knowledge of any behavior by Lenhardt that Owens perceived as inappropriate; (2) Owens' supervisory liability theory fails because Dr. Javed never supervised Lenhardt; and (3) Dr. Javed is entitled to qualified immunity. (*See generally* Def. Javed's Mem. in Supp. of Summ. J. ("Def.'s Owens Br.") [Owens 201].) Plaintiffs have submitted joint opening briefs; Owens' arguments in support of his motion [Hurt 203] are identical to Hurt's. Owens argues that he is entitled to summary judgment because the record demonstrates that Defendant Javed knew of or suspected Lenhardt's abuse but failed to report it. (*See generally* Pls.' Joint Br. [Owens 203].)

## DISCUSSION

The court will grant a motion for summary judgment only if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014) (quoting *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013)). Put differently, in order to succeed at the summary judgment stage, the record must show that "no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). When the court considers cross-motions for summary judgment, as is the case here, it must interpret any disputed facts in favor of each nonmovant. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

Plaintiffs bring their claims under 42 U.S.C. § 1983. In order to prevail on a § 1983 claim, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003) (internal citation omitted). It is undisputed that the Defendants were acting under color of state law, so the second requirement is not at issue in this case.

As for the first requirement, § 1983 does not in and of itself provide substantive rights; rather, it "merely provides a method for vindicating federal rights elsewhere conferred." *Graham*

**A18**

*v. Connor*, 490 U.S. 386, 394 (1989) (internal quotation marks and citations omitted). Additionally, a defendant can be held liable under § 1983 only if he or she is "personally responsible for the violation of the plaintiff's constitutional rights." *Green v. Beth*, 770 F. App'x 273, 275 (7th Cir. 2019) (citing *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018)). Section 1983 "creates a cause of action based on personal liability and predicated upon fault." *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (citation omitted). Thus, defendants are not liable under § 1983 "merely for their supervision of others," and instead the plaintiff must show that the constitutional violation occurred "at the defendant's direction or with his knowledge or consent." *Id.* Here, Plaintiffs point to the due process clause of the Fourteenth Amendment to articulate two theories of constitutional violations by the Defendants: a failure to intervene claim and a procedural due process claim.[7] The court addresses these two theories separately.

## I.      Failure to Intervene Claim

Plaintiffs' primary § 1983 claim is that Defendants violated their due process rights under the Fourteenth Amendment by failing to intervene and protect Plaintiffs from Lenhardt's sexual misconduct. An antecedent component of this claim is that there was a constitutional violation of Plaintiffs' liberty interest in bodily integrity; the second component is that the Defendants were aware of the constitutional violation and failed to intervene.

Ordinarily, the state does not have a constitutional obligation "to protect private citizens from doing harm to each other." *J.H. ex rel. Higgin*, 346 F.3d at 791–92 (citing *DeShaney v.*

---

[7]      Defendants have also moved for summary judgment as to any claim predicated on a theory of supervisory liability. (Defs.' Hurt Br. at 9; Def.'s Owens Br. at 7.) Plaintiffs have not asserted such a claim in their complaints and do not raise such a theory in their motion for summary judgment. In fact, the parties agree that none of the Defendants ever supervised Lenhardt. (Hurt DSOF ¶¶ 37, 38; Hurt DSOFR ¶¶ 37, 38.) Defendants' request for summary judgment with respect to any supervisory liability claim under § 1983 is moot.

**A19**

*Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 202 (1989)). Courts have recognized, however, that the due process clause of the Fourteenth Amendment imposes a duty on a state where it "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been." *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993). The paradigmatic failure-to-intervene case is one brought against a law enforcement officer who stands by and watches as his or her partner uses excessive force on an individual. Indeed, Defendants rely on the case law in this area and cite to *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) to assert that a failure to intervene claim requires a plaintiff to show that the defendant had actual *knowledge* of a constitutional violation and failed to intervene. *Yang* involved a § 1983 failure-to-intervene claim brought against a police officer who stood by and silently watched as his partner physically assaulted a store owner who was attempting to stop the abusive officer from stealing from his business. *Id.* at 283–84. The district court concluded that the police officer who observed the assault was not liable as a matter of law, but the Seventh Circuit reversed. In finding the bystander-officer liable under § 1983, the court articulated the standard for failure-to-intervene cases involving excessive force by law enforcement:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Id.* at 285 (citations omitted).

Plaintiffs contend that the standard for a failure-to-intervene claim is satisfied if the Defendants knew *or suspected* that the Plaintiffs were being abused. To support this assertion, the Plaintiffs cite to a district court ruling in *Doe v. Board of Educ. of Consol. Sch. Dist. 230 Cook Cnty.*, 18 F. Supp. 2d 954, 958 (N.D. Ill. 1998). *Doe* involved a § 1983 claim against the principal of a high school who failed to protect minor students from engaging in sexual relations with a school staff member. *Id.* at 956–57. The court in *Doe* denied summary judgment for the principal and stated "[a]lthough there is no direct evidence establishing that any of the individual defendants

20

**A20**

had actual knowledge of Vasquez's relationships with plaintiffs . . . a reasonable jury [could] conclude that some or all of the individual defendants had enough knowledge to suspect some improper activity and did nothing about it." *Id.* at 958. The court did clarify, however, that "personal involvement is a prerequisite for individual liability in a § 1983 action" and that a supervisor cannot be held liable under § 1983 for "simply [being] negligent in failing to detect and prevent subordinate misconduct." *Id.* at 957 (internal quotation marks omitted) (citing *Gossmeyer v. McDonald*, 128 F.3d 481, 491 (7th Cir.1997)). Instead, the court stated, a supervisor can be held liable under § 1983 only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see" and added that they must "act either knowingly or with deliberate, reckless indifference." *Id.* 957–58. Notably, however, plaintiffs' claims in *Doe* were brought under a theory of supervisory liability, not one of failure to intervene. *Id.* at 957.

In the court's view, neither side in this case has cited directly-controlling case law, but Plaintiffs have stated the more applicable standard. Closest support for this conclusion can be found in § 1983 failure-to-intervene cases brought by victims of sexual abuse in the foster care setting. In this context, the Seventh Circuit has applied a "modified deliberate indifference standard . . . requiring actual knowledge *or suspicion of the alleged risk.*" *J.H. ex rel. Higgin*, 346 F.3d at 791 (emphasis in original); *see also K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 852 (7th Cir. 1990) (holding that children in state custody have a right not to be placed in the custody of an individual "whom the state knows or suspects to be a child abuser"); *Lewis v. Anderson*, 308 F.3d 768, 773 (7th Cir. 2002) (applying the "knows or suspects" standard in a failure-to-intervene case involving an abusive foster care setting).

*J.H. ex rel. Higgin*, a case that neither side here has cited, is illustrative. *J.H. ex rel. Higgin* was a § 1983 suit brought by two minor siblings who were sexually abused by their respective foster fathers, both of whom were convicted of aggravated sexual assault. *Id.* at 789. The action was brought against multiple employees of the Illinois Department of Children and Family

Services ("DCFS"), who oversaw placing the minors in the two homes where they were abused. *Id.* There was evidence that the defendants knew or suspected that there was a significant risk of abuse: one of the foster fathers had two previous allegations of abuse on his record. *Id.* at 794. The plaintiffs also presented evidence of dangerous/unsanitary conditions in the homes of the two foster parents. *Id.* at 793.

Defendants in *J.H. ex rel. Higgins* prevailed on summary judgment; the court observed that even the more relaxed standard requires that the plaintiffs "show a connection between any knowledge or suspicion of risk that the defendants may have had and the injury that the children actually suffered." *Id.* at 793. Evidence of the unsanitary conditions of the homes would not have suggested to the defendants that the plaintiffs were likely to be abused, nor was the court moved by the evidence showing a record of abuse by one of the foster fathers. *Id.* More meaningful was evidence showing that the prior allegations of abuse were investigated by DCFS and determined to be unfounded, and perhaps more importantly, that the named defendants were not involved in those investigations. *Id.* at 794. The court noted that while "the underlying facts of cases like this portray a sad course of events, we nevertheless continue to require plaintiffs to demonstrate that the individual defendants had specific knowledge or suspicion of the risk of sexual abuse" in order to hold defendants liable under § 1983. *Id.* at 792.

In this court's view, the facts and law of *J.H. ex rel. Higgins* are more closely analogous to the case at hand than the law enforcement failure-to-intervene cases relied on by Defendants. In both the foster care cases discussed above and the one before this court, the plaintiffs are individuals with limited capacity—children and individuals adjudged criminally insane, respectively. Additionally, in both the foster care cases and the present case, the plaintiffs were in the long-term custody of the state when they were allegedly subjected to abuse. *Cf. Lewis*, 308 F.3d at 773 (internal quotation marks and citations omitted) (noting that an official's duty to intervene "may arise from the creation of a special relationship between the state and the individual").

22

**A22**

In its analysis of Plaintiffs' claims in this case, then, the court will apply the standard used in *J.H. ex rel. Higgins*.[8]  Under that standard, for Plaintiffs to succeed on their § 1983 failure-to-intervene claim, they must show (1) that they suffered an underlying constitutional injury, and (2) that the defendants "knew of or suspected the specific risk facing plaintiffs and consciously ignored it or failed to stop the abuse."  *J.H. ex rel. Higgin*, 346 F.3d at 792 (citing *Lewis*, 308 F.3d at 773).  Because the two Plaintiffs' failure-to-intervene claims are distinct from each other, the court applies this standard to each one separately.

### A.    Plaintiff Owens

Plaintiff Owens and Defendant Dr. Javed filed cross-motions for summary judgment on Plaintiff's failure-to-intervene claim.  As noted above, Dr. Javed was Owens' psychiatrist at EMHC while Lenhardt was Owens' social worker.  Owens claims that Dr. Javed knew or suspected that Lenhardt was abusing him, and that Dr. Javed failed to intervene.  Owens' claim fails, however, because there is no evidence that Lenhardt ever abused him.

Owens and Lenhardt both testified that the two never engaged in any sexual activity; they never kissed, fondled each other, or engaged in any sexual activity.  (Owens DSOF ¶¶ 26–32.)  The nearest allegation to physical contact between Owens and Lenhardt is Owens' claim that during one of his sessions with Lenhardt, she "took [him] by the seat and tried to move it" in an attempt to nudge him closer to her.  (Owens Dep. at 56:12–14.)  Owens does describe other nonphysical interactions he had with Lenhardt that made him feel uncomfortable and which he interpreted as seductive behavior.  For example, Owens described an incident when Lenhardt came to the EMHC on a weekend and met with him, crying about personal problems she was experiencing.  (*Id.* at 53:24–55:6.)  In another instance, during a social work session, Lenhardt allegedly told Owens, "You're not going to get out of here unless you work—unless we get what

---

[8]        As neither Plaintiffs nor Defendants cited to *J.H. ex rel. Higgins* or the other foster care cases discussed in this opinion, the court will consider additional briefing on the topic should the parties request it.

**A23**

we want." (*Id.* at 34:7–35:24.) In essence, Owens' claim is that his perception that Lenhardt was attempting to seduce him amounted to a constitutional violation.

Given the knowledge now of record concerning Lenhardt's unlawful conduct at EMHC for more than a decade, the court recognizes that Lenhardt may indeed have had lewd intentions. Nevertheless, the record does not support the claim that Owens suffered a constitutional harm at her hands. Owens' claim here is based on the due process clause of the Fourteenth Amendment, which "does not transform every tort committed by a state actor into a constitutional violation." *Lewis*, 308 F.3d at 773 (internal quotation marks omitted) (quoting *DeShaney*, 489 U.S. at 202 (1988)). Existing caselaw does not precisely define what actions constitute an infringement of one's liberty interest in bodily integrity, but Owens fails to cite even one case supporting the claim that his interactions with Lenhardt amounted to a constitutional violation. Given the lack of any concrete allegation of physical or verbal harassment, the court concludes that Owens did not suffer a due process harm. Because Lenhardt never violated Owen's constitutional rights, his failure-to-intervene case must necessarily fail. *See Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2014) (stating that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation")). Accordingly, the court grants Defendant Dr. Javed's motion for summary judgment on Plaintiff Owens' failure-to-intervene claim.

### B.    Plaintiff Hurt

Plaintiff Hurt and Defendants Dr. Javed, Dr. Kareemi, Beck, Delaney, and Hogan have filed cross-motions for summary judgment on Plaintiff's failure-to-intervene claim. At the outset, the court notes that it is undisputed that Hurt suffered an underlying constitutional harm at the hands of Lenhardt, specifically that she sexually abused Hurt. (*See* Hurt DSOF ¶ 42, 43.) Instead, the Defendants each argue that Plaintiff's claim must fail because they did not actually know about Lenhardt's sexual misconduct involving Hurt, whereas Hurt claims that each Defendant knew of or suspected the abuse. In their efforts to peek into the minds of each Defendant and discern

**A24**

what each knew or suspected, the parties engaged in extensive discovery, including over two dozen depositions and a review of some 30,000 documents. As explained below, the weight of the evidence against each Defendant is varied. Ultimately, however, the court concludes there remain significant issues of material fact as to what each Defendant knew or suspected and therefore denies both parties' motions for summary judgment on Hurt's failure-to-intervene claim.

Some of the most forceful evidence that Plaintiffs present connecting Lenhardt's sexual abuse to Defendants is her roughly twelve-year history of abuse at EMHC and the rumors that swirled around the facility. The record shows evidence that Lenhardt had sexual relations with at least three patients at EMHC; that she engaged in sexual activities with patients at EMHC during normal business hours, in her office and other staff member's offices; and that on multiple occasions she was nearly caught in the act as staff walked by the office or knocked on the door while she was engaging in her misconduct. The record also shows evidence that Lenhardt's misconduct generated rumors among EMHC staff. Audrey Boston, an activity therapist who worked on the L-Unit with Dr. Javed, testified that "prior to my arriving to the L-Unit [in 2012], there already was . . . a reputation in the hospital" that Lenhardt was moved to the L-Unit "due to some sexual or boundary issues with a patient on a prior unit." (Boston Dep. at 62:3–12.) Others testified as to Lenhardt's shadowy reputation, including witnesses Nikolov, Desai, Boston, and Ingram. (PSOF ¶ 26, 31–33.) Lenhardt herself testified that hospital "administration" had accused her of abusing a patient. (*Id.* ¶ 17.) After Lenhardt and Hurt were caught locked in Hamlin's office, EMHC Security Chief Epperson emailed staff (including defendants Delaney and Hogan) expressing that he was "[v]ery concerned" that a [social worker] would ask for assistance from a patient, for an office not on her unit"—highlighting that even staff outside of Hurt's treatment team were on notice. (Ex. GG to PSOF.)

Plainly, the evidence that Lenhardt was abusive is voluminous and, at times, seemingly right in front of Defendants. Still, in order to succeed on a failure-to-intervene claim, Plaintiff Hurt must show that the Defendants in fact knew or suspected the existence of abuse, not merely that

they "should have known." *Pacelli v. deVito*, 972 F.2d 871, 873 (7th Cir. 1992) (internal citation omitted) ("what state officials 'should have known' is an insufficient basis of constitutional liability"). To attribute knowledge or suspicion to the Defendants from this record, Plaintiff Hurt points to statements allegedly made by each of the Defendants to either Hurt or Lenhardt. For example, Plaintiff Hurt claimed that Dr. Javed once asked him, "What's going on with you and [Lenhardt]?" because "[s]omething seems like it's up" immediately after he walked out of a room where Lenhardt vomited after performing oral sex on him. (Hurt Dep. at 80:20–22.) Hurt testified about similar interactions with Dr. Kareemi in which she asked, "What are you [and Lenhardt] working on more than—more than work?" and "Christy Lenhardt is really busy. You go to her office a lot. Why?" (*Id.* at 55:5–7.) Similarly, Hurt says that Defendant Delaney observed at least once that he was with "Lenhardt in the office a lot" and asked "[w]hat are you guys doing?" (*Id.* at 76:5–7.) Plaintiff also points to testimony from Boston claiming that she witnessed Defendant Delaney publicly accuse Lenhardt of having boundary issues in morning meetings where Dr. Javed, Defendant Dr. Kareemi, Defendant Beck were allegedly present. (Boston Dep. at 41:5–16.) Boston recalled Lenhardt's "over-excessive" tears during these meetings, in reaction to Hurt's having been moved off Lenhardt's unit. (*Id.* at 133:8-134:12.) Plaintiff and Lenhardt both testified that Defendant Beck had asked Lenhardt "What's with you and black guys?" (*Id.* at 103:14–104:6; Lenhardt Dep. at 108:1–3.) And Lenhardt testified that Beck had warned her that "administration was watching [her] and [Hurt]." (Lenhardt Dep. at 107:13–14.)

For their parts, Defendants have each vehemently denied these inferences supplied by Plaintiff and maintain that they had no knowledge or suspicion of a sexual relationship between Lenhardt and Hurt. But as the Seventh Circuit has noted, failure-to-intervene cases generally present "an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest,* 110 F.3d 467, 478 (7th Cir. 1997) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). In this case, there is evidence from which a reasonable jury could find that each Defendant knew of or suspected that Lenhardt

**A26**

was sexually abusing Hurt for nearly three years and that, instead of intervening, each chose to bury their heads in the sand. Similarly, a reasonable jury could conclude that each Defendant was indeed ignorant of Lenhardt's abuse, in part because of Lenhardt and Hurt's efforts to conceal their relationship and in part because of the sheer unlikelihood of the scenario. For this reason, the court denies both Plaintiff Hurt's and Defendants' motion for summary judgment on Hurt's failure-to-intervene claim.

Briefly, the court acknowledges that Defendants have also raised qualified immunity as a defense to Plaintiff's claim. Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (citation omitted). Determining if an official is entitled to qualified immunity involves two inquiries. *T.E. v. Grindle*, 599 F.3d 583, 587 (7th Cir. 2010) (citation omitted). First, the court must decide whether the facts demonstrate that the official conduct violated a constitutional right. *Id.* Second, if there was a constitutional violation, the court must determine whether the violated right was "clearly established." *Id.* Defendants here address only the first prong of the qualified immunity inquiry. Specifically, they claim that they are entitled to qualified immunity because they did not have "actual knowledge" of the sexual abuse by Lenhardt and thus, according to Defendants, there was no constitutional violation. (Defs.' Hurt Br. at 12.) As discussed above, however, whether Plaintiff Hurt can establish a constitutional violation by the Defendants is, for now, a matter of factual dispute. Because the underlying factual allegations are disputed, the court denies Defendants' motion for summary judgment on the basis of qualified immunity.

## II.     Procedural Due Process Claim

Finally, Plaintiffs Owens and Hurt also assert a Fourteenth Amendment procedural due process claim. Plaintiffs claim that Defendants' alleged violation of the Illinois Department of Human Services Act, 20 ILC 1305/1-17 et. seq. ("IDHS Act")—which creates reporting obligations for state employees on the discovery of abuse—amounts to a constitutional violation. (Pls.' Joint

**A27**

Br. at 50.) The court finds this claim meritless. A violation of state law, assuming one occurred here, "does not per se make a state actor liable under § 1983." *J.H. ex rel. Higgin*, 346 F.3d at 793. That is because state law violations "do not form the basis for imposing § 1983 liability." *Id.* (citing *Windle v. City of Marion, Ind.*, 321 F.3d 658, 662–63 (7th Cir. 2003)); *see also White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) ("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim.").

In support of their claim, Plaintiffs cite two cases: *Hewitt v. Helms*, 459 U.S. 460, 466 (1983) and *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990), but those cases do not alter this court's conclusion. Those cases address a different context; they specifically deal with situations when state statutes regulating *prison conditions* create a liberty interest for prisoners. More importantly, the Supreme Court has overruled the proposition for which Plaintiffs rely on the two cases. *See Sandin v. Conner*, 515 U.S. 472, 483 (1995) (overruling *Hewitt* and holding that "the search for a negative implication from mandatory language in [state] prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause"). Plaintiffs have failed to show that they have an actionable liberty interest created by the IDHS Act's reporting requirements. Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' procedural due process claim.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motions for summary judgment ([220] in No. 17-cv-7909; [203] in No. 18-cv-334) are denied in full. Defendants' motions for summary judgment ([216] in No. 17-cv-7909; [200] in No. 18-cv-334) are denied as to Plaintiff Hurt's failure-to-intervene claim and Defendants' defense of qualified immunity and granted as to Plaintiffs' supervisory liability claims and procedural due process claims. Defendant Javed's motion for summary judgment is granted as to Plaintiff Owens' failure-to-intervene claim ([200] in No. 18-cv-334). The Clerk is directed to enter judgment in favor of Defendant in Case No. 18-cv-334. The parties are directed to show cause within 14 days why the seal should not be lifted on their

**A28**

summary judgment submissions or, in the alternative, propose redactions that would permit otherwise sealed documents to be in the public record.

ENTER:

Dated:  September 25, 2023

_____
REBECCA R. PALLMEYER
United States District Judge

**A29**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENAHDAM HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 7909 |
| | ) | |
| HASINA JAVED, FAIZAL KAREEMI, | ) | |
| DREW BECK, COLEEN DELANEY, | ) | |
| and DIANA HOGAN | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

While confined in the Elgin Mental Health Center ("EMHC") from 2014 to 2017, Plaintiff Benahdam Hurt was the victim of sexual abuse by an EMHC staff member. The perpetrator has pleaded guilty to criminal charges. In this lawsuit brought under 42 U.S.C. § 1983, Hurt seeks damages from other EMHC staff. On September 25, 2023, this court issued an Order [245] on the parties' cross-motions for summary judgment [216, 220], denying in part and granting in part Defendants' motion and denying Plaintiff Hurt's motion in its entirety. *See Hurt v. Corcoran*, No. 17-CV-7909, 2023 WL 6213685 (N.D. Ill. Sept. 25, 2023). What remained following the court's summary judgment ruling was Plaintiff Hurt's failure-to-intervene claim against Defendants Hasina Javed, Faizal Kareemi, Colleen Delaney, Diana Hogan, and Drew Beck. The court's ruling invited Defendants to seek reconsideration, however, because its ruling applied a standard that neither party had directly addressed, referred to here as the "modified deliberate indifference" standard. This standard required Plaintiff to show that Defendants had "actual knowledge or suspicion of a substantial risk" that Hurt was being sexually abused and chose to ignore that risk.

Defendants have taken up the court's invitation. In their Motion to Reconsider [254] denial of Defendants' motion for summary judgment, Defendants argue that the court erred in applying this standard and, in the alternative, that even if the court was correct in applying the modified deliberate indifference standard, they are each immune from liability because the standard was

**A30**

not clearly established with respect to the factual context of Hurt's case. The Defendants' motion also asks the court to reconsider its summary judgment ruling with respect to Defendant Diana Hogan, arguing that she is entitled to summary judgment regardless of the which standard the court applies. For the reasons explained below, the Motion to Reconsider is granted with respect to Defendant Diana Hogan but otherwise denied.

## BACKGROUND

The court assumes the parties' familiarity with the factual and procedural background of this case, set forth in detail in the court's previous opinion. *See Hurt*, 2023 WL 6213685, at *1–9. A brief summary follows.

Plaintiff Benahdam Hurt was admitted to EMHC, a state-run mental health hospital, as a patient found not guilty by reason of insanity ("NGRI") for aggravated battery of a peace officer. Within months of his admission to EMHC, Hurt found himself entangled in a deeply inappropriate relationship with his assigned social worker, Christy Lenhardt. Grossly abusing her position of authority, Lenhardt initiated a sexual relationship with Hurt, conducting illicit encounters within the confines of EMHC. The sexual affair spanned roughly three years and included Lenhardt's performing sex acts on Hurt, including in her own and other staff members' offices.

Lenhardt's and Plaintiff's attempts to conceal the abusive conduct were not entirely successful—not surprising, as other EMHC staff were often mere steps from the rooms where Lenhardt performed her sex acts. Indeed, the record contained evidence that on multiple occasions, Lenhardt was nearly caught in the act by a Defendant who knocked on the door while she was performing oral sex on Hurt. On another occasion, the two accidentally locked themselves in another employee's office while they were involved in sexual misconduct and were forced to call security staff to unlock the room for them.

The record also contained evidence that Lenhardt had inappropriate relations with other patients at EMHC years before she began her affair with Hurt. In 2005, Lenhardt was caught alone with a patient in another employee's office. A staff member reported that incident to EMHC

2

**A31**

administration, which was documented in her employment review as "perceived overinvolvement with a male patient." That patient would later escape from EMHC and flee to Europe—where Lenhardt herself traveled to visit him. In fact, a co-worker (who is not a defendant in this case) drove Lenhardt to the airport for the trip and picked her up, though she contended she did not know the purpose of Lenhardt's travel. A few years later in 2009, another patient openly told staff and fellow patients that he had developed feelings for Lenhardt, and Lenhardt herself admitted to staff members that she had feelings for this patient. While the record was not clear whether Lenhardt had a sexual relationship with this patient, he was eventually transferred out of Lenhardt's unit at the hospital.

Notwithstanding the various signs that Lenhardt was having an affair with Hurt or her reputation for crossing boundaries with previous patients, the record contained no direct evidence that any EMHC staff members had actual knowledge of Lenhardt's abuse. The record does, however, include evidence of numerous instances in which Defendants expressed varying levels of suspicion regarding Lenhardt's relationship with Hurt. Suspicion became knowledge in June 2017, when EMHC security staff received a report that Hurt had posted a photo of himself on social media, taken within the facility. This report led to a search of Hurt's room by security staff, a search that uncovered journals and audio recordings saved on USB drives documenting Lenhardt's relationship with Hurt and her previous relationships with other patients.

Lenhardt eventually pleaded guilty to a felony count of "sexual misconduct with a person with disabilities" for her relationship with Hurt. 720 ILCS 5/11-9.5(b)(1).

## **LEGAL STANDARD**

Defendants purport to bring their motion to reconsider under Federal Rule of Civil Procedure 59(e), but that Rule applies only to final judgments. *See Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (noting that "a traditional Rule 59(e) motion to reconsider . . . can only follow a 'judgment' "). The court's denial of Defendants' motion for summary judgment was an interlocutory order, not a final judgment. *See, e.g.*, *Haze v. Kubicek*, 880 F.3d 946, 950 (7th Cir.

**A32**

2018) ("It is basic procedural law that a denial of summary judgment is an interlocutory ruling."). The court therefore construes this motion under Rule 54(b). *Galvan*, 678 F.3d at 587 n.3 ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider [interlocutory orders].").

The standard of review for motions to reconsider brought under Rules 54(b) and 59(e) are virtually identical. *See Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011) ("The standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b)."); *Saccameno v. Ocwen Loan Servicing, LLC*, No. 15 C 1164, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018) (same). Specifically, motions for reconsideration are generally "viewed with disfavor" and are granted "only in the rarest of circumstances and where there is a compelling reason," to wit, "to correct manifest errors of law or fact or to present newly discovered evidence." *See Saccameno*, 2018 WL 1240347, at *2 (internal quotation marks omitted) (citing *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008)). Plainly, "[a] party moving for reconsideration bears a heavy burden." *Caine v. Burge*, 897 F. Supp. 2d 714, 716–17 (N.D. Ill. 2012) (citing *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996)).

## DISCUSSION

In their motion to reconsider, Defendants contend that the court's denial of summary judgment was a manifest error of law. They present three arguments in their motion. First, Defendants argue that the court erred in applying the modified deliberate indifference standard to Hurt's case. Second, arguing in the alternative, Defendants claim that even if the modified deliberate indifference standard applied to Hurt's case, each Defendant is shielded by qualified immunity because the standard is not clearly established in law. Finally, Defendants single out Defendant Hogan and, again arguing in the alternative, contend that she is entitled to summary judgment because there is no evidence that she "knew or suspected" that Lenhardt posed a

A33

substantial risk to Plaintiff Hurt. Before addressing Defendants' arguments, the court finds it useful to briefly trace the origins of the modified deliberate indifference standard.

## I.  The Modified Deliberate Indifference Standard

The Seventh Circuit first articulated the modified deliberate indifference standard in *K.H. v. Morgan*, which held that once a state takes custody of a child, that child has a constitutional right to not be placed with a foster parent "whom the state knows or suspects to be a child abuser." 914 F.2d 846, 852 (7th Cir. 1990). The case concerned a heartbreaking instance of child abuse wherein staff of the Illinois Department of Children and Family Services ("IDCFS") removed a toddler from her parents' custody due to sexual abuse, only to have the child shuttled for four years from one foster home to nine others, where various foster parents engaged in further physical and sexual abuse of the child. *Id.* at 848. Plaintiff, through her guardian ad litem, brought a § 1983 action against multiple IDCFS employees in their individual capacities, including the Department's Director and guardianship administrator, and two social workers. *Id.* at 847. The complaint alleged two theories of liability: that the two social workers knew that K.H.'s foster placements were unsatisfactory but nevertheless placed her there, and separately, that the administrator defendants formulated and approved departmental policies that permitted these placements. *Id.* at 849. The district court rejected defendants' qualified immunity defense as to both theories.

On appeal, the Seventh Circuit held that though K.H. did not have a clearly established right to not be shuttled among foster homes, she *did* have a due process right under the Fourteenth Amendment "not to be handed over by state officers to a foster parent or other custodian, private or public, *whom the state knows or suspects to be a child abuser.*" *Id.* at 852 (emphasis added). That holding, the court explained, followed from *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982)—where the Supreme Court held that a mentally disabled adult who was involuntarily committed to a state mental health facility had a due process right to safety and freedom from bodily restraint. *K.H.*, 914 F.2d at 849 ("*Youngberg v. Romeo* made clear, years

5

before the defendants in this case placed K.H. with an abusing foster parent in 1986, that the Constitution requires the responsible state officials to take steps to prevent children in state institutions from deteriorating physically or psychologically."). The *K.H.* court concluded that the analogy to *Youngberg* was so apparent that the constitutional right at issue—to not be placed in an environment where the state knows or suspects someone would be abused—was clearly established. *Id.* at 853 ("*Youngberg* made the basic duty of the state to children in state custody clear."); *id.* at 852 ("There is, made explicit by this opinion but clearly implicit in *Youngberg*, a prima facie right not to be placed with a foster parent who the state's caseworkers and supervisors know or suspect is likely to abuse or neglect the foster child."). Accordingly, the court remanded for determination of whether the defendants knew or suspected that K.H.'s foster parents were abusive. *Id.* at 854.

The Seventh Circuit had occasion to apply the "knows or suspects" standard several years later in *Lewis v. Anderson*, 308 F.3d 768 (2002), another case involving foster care. The plaintiffs in *Lewis*, five siblings, brought a § 1983 action against several officials of the Wisconsin Department of Health and Social Services ("DHSS") in their individual capacities, alleging that the defendants violated their due process rights by placing them in an abusive foster home. *Id.* at 770. The defendants in *Lewis* were the Administrator of the Division of Community Services at the DHSS, two social workers for DHSS tasked with overseeing the placement of the plaintiffs, and the DHSS official who supervised the defendant social workers. *Id.* at 771. To meet the "knowledge or suspicion" standard, the plaintiffs offered two pieces of evidence: the caseworkers' awareness that the foster father had previously slapped one of his children and a reference letter for the foster parents that was "lukewarm" in its recommendation (specifically, the letter expressed concerns over the parents' short temper and the size of their home but concluded that they were fit to adopt the children). *Id.* at 774. On this record, the district court granted the defendants' motion for summary judgment and the plaintiffs appealed.

**A35**

The Seventh Circuit affirmed, but did not abandon the modified deliberate indifference standard. Applying that standard, the court first clarified that the state's obligations to the plaintiffs arose from the "special relationship between the state and the individual" and from the fact that "the danger to the child [was] state-created." *Id.* at 773 (internal quotation marks and citations omitted). The court went on to explain that the modified deliberate indifference standard established in *K.H.* "does not take the next step and impose some kind of duty of inquiry in these cases," but rather requires only that the plaintiffs "put forth a case that the . . . defendants actually knew of or suspected the existence of child abuse in the prospective adoptive family." *Id.* The *Lewis* plaintiffs' evidence did not meet that requirement: Evidence of "one instance of child-hitting" was not indicative of actual abuse, and the reference letter provided no basis to conclude that the foster parents would be abusive. *Id.* at 774–75. The plaintiffs had urged that the "stringent" knowledge or suspicion standard be reconsidered, but the court rejected that request, confirming that the standard is consistent with Supreme Court and Seventh Circuit case law on deliberate indifference. *Id.* at 776 (first citing *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); then citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); and then citing *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir.1999)).

The Seventh Circuit has continued to apply this modified deliberate indifference standard in the foster care context. *See, e.g., J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003); *Waubanascum v. Shawano Cnty.*, 416 F.3d 658, 665 (7th Cir. 2005); *Xiong v. Wagner*, 700 F.3d 282, 293 (7th Cir. 2012). These cases further refine the standard's contours. In *J.H.*, the court explained that "the standard set forth in *K.H.* and *Lewis* differs from the 'deliberate indifference' standard only in the sense that it can be satisfied by proof of a state actor's knowledge or *suspicion* of the risk of harm, rather than just knowledge. Both standards are subjective." *J.H. ex rel. Higgin*, 346 F.3d at 792 (emphasis in original). That court also held that in order to hold the defendants liable, the plaintiff "must show a connection between any knowledge or suspicion of risk that the defendants may have had and the injury that the children

7

**A36**

actually suffered." *Id.* at 793. In other words, a plaintiff cannot satisfy the standard merely by proffering evidence of a generalized risk; instead, there must be a nexus between the evidence of knowledge or suspicion and the abuse suffered. And, in *Waubanascum*, the court underscored that for the knowledge-or-suspicion standard to apply, "the state must have *custody* over the child." *Waubanascum*, 416 F.3d at 665 (emphasis in original) (finding that Shawano County did not have custody of child by virtue of having issued a foster care license to abusive father because child was in fact under the supervision and custody of Menominee County).

**II.  Was this Court's Application of the Modified Deliberate Indifference Standard a Manifest Error of Law?**

The Defendants' central argument against this court's use of the modified deliberate indifference standard is that the Seventh Circuit has never applied the standard outside the foster care context. For this reason, they urge, the court should not apply it here. In support of this argument, Defendants cite a handful of district court opinions dealing with failure-to-intervene claims in a variety of contexts, including claims of abuse brought against officials in schools, prisons, and even in mental health facilities, none of which apply the "knowledge or suspicion" standard.

Defendants are correct that the Seventh Circuit has not explicitly endorsed applying the modified deliberate indifference standard outside of the foster care context. The Court of Appeals has not, however, foreclosed application of the standard in analogous contexts. Indeed, some courts have contemplated the applicability of the standard outside of the foster care context. *See Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 763 (7th Cir. 2013) (citing *K.H.* in case brought by minor who had been sexually abused after the state placed them in residential treatment facility, but ultimately concluding case was barred by statute of limitations); *Golbert v. Aurora Chi. Lakeshore Hosp., LLC*, No. 19-CV-08257, 2021 WL 952560, at *6 (N.D. Ill. Mar. 11, 2021) (acknowledging dispute between parties of whether the "knowledge or suspicion" standard was applicable in a safe conditions of confinement claim brought by children abused in mental

8

**A37**

health facility, but not deciding issue); *K.L. v. Edgar*, 941 F. Supp. 706, 716 (N.D. Ill. 1996) (citing *K.H.* in class action brought by adult patients of mental health facility).

Notably, while Defendants have argued that the modified deliberate indifference standard should not apply here, they have failed to make a consistent case for what standard *should* apply. At some points in their motion, they argue that Plaintiff's burden is to show that the Defendants "*actually knew* about Plaintiff and Lenhardt's relationship"—the standard often used in failure-to-intervene cases involving police officers. (Defs.' Mot. to Recons. Summ. J. Ruling [254] ("Defs.' Mot. to Recons.") at 12–13 (emphasis added).) Indeed, this was the standard that the Defendants initially presented in their motion for summary judgment. (*See* Defs.' Joint Mem. in Supp. of Summ. J. [217] at 7 (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), for the legal standard that "defendant must have actual knowledge of the constitutional violation and a realistic opportunity to intervene and prevent the harm").) Then, at other points in their reconsideration briefing, they argue that "Plaintiff must show that [Defendants] . . . actually knew that there was *a substantial risk* that Lenhardt was abusing Plaintiff and failed to take action"—which is the traditional deliberate indifference standard, often applied in prison conditions cases. (Defs.' Reply in Supp. of Their Mot. to Recons. Summ. J. Ruling ("Defs.' Reply") at 9 (emphasis added).) Neither party raised the traditional deliberate indifference standard at summary judgment.

Even the cases that Defendants cite as persuasive authority are not consistent in which standard they use; some apply the "actual knowledge" test and others apply a deliberate indifference test. For example, Defendants point to *Strong v. Wisconsin*, 544 F. Supp. 2d 748, 765 (W.D. Wis. 2008) as a model for the court to follow, which applies the "actual knowledge" standard to a failure-to-intervene claim brought by a mental health patient that alleged sexual abuse by hospital staff. (Defs.' Mot. to Recons. at 8.) Then, in the very next paragraph, the Defendants invoke *Doe v. Macleod*, No. 18-3191, 2023 WL 2698672, at *1 (C.D. Ill. Mar. 29, 2023), where the court applied a deliberate indifference standard to a claim brought by a prisoner

**A38**

that was sexually abused by a prison employee. (Defs.' Mot. to Recons. at 8–9.) That leaves the court uncertain about which standard Defendants believe applies here.[1]

As the court sees it, counsel in this case have referred to at least three potential standards: "actual knowledge"; "actual knowledge of a substantial risk" (deliberate indifference); and "actual knowledge or suspicion of a substantial risk" (modified deliberate indifference). Without identifying which of the first two standards should apply here, Defendants focus their energy on arguing that the court should not apply the third—that is, the "knowledge or suspicion" standard. Plaintiff, for his part, argues that the court was correct in applying the "knowledge or suspicion" standard and, in any event, that Plaintiff would also survive summary judgment under the traditional deliberate indifference standard. Defendants have not established that the court's earlier ruling was a manifest error of law, and the court stands by its view that the foster care cases are most analogous to Hurt's case. Several factors guide the court's reasoning on this issue. First, Hurt was in the long-term custody of the state when he was abused, like the plaintiffs in the foster care cases. As the foster care cases point out, the "creation of a special relationship between the state and the individual," such as its taking an individual into its custody, creates an obligation on the state to protect that individual. *Lewis*, 308 F.3d at 773. Additionally, the "danger" posed to Hurt was also undoubtedly "state created"—he was sexually abused not by another detainee from whom the state failed to protect him, but by the social worker EMHC had assigned to him. *Id.* Hurt's case is also analogous to the foster care cases in the sense that by virtue of

---

[1]    In the court's view, *Strong*, which the Defendants urge is most factually apposite, is distinguishable. In that case, like Hurt's, the plaintiff was a forensic patient at a state-run mental health hospital. 544 F. Supp. 2d at 761. The plaintiff alleged that while he was a patient at the facility, a staff member engaged in a sexual relationship with him. He also claimed that another staff member would watch them engage in sex acts and acted as "look out" during the episodes. *Id.* at 759. In assessing the lookout-defendant's motion for summary judgment regarding plaintiff's failure-to-intervene claim, the court stated that a reasonable juror could find the lookout had active involvement in the abuse and could therefore be liable under either an "actual knowledge" standard or under a conspiracy theory. *Id.* at 765. In this sense, *Strong*, unlike Hurt's case, was much more analogous to the paradigmatic law enforcement failure-to-intervene claim where the defendant played an active role in the constitutional violation and was present while it happened. Put differently, the claim in *Strong* is less a failure-to-intervene claim than it is a conspiracy claim.

**A39**

being adjudicated insane, he represents an individual of limited mental capacity, similar to a child. The isolation and vulnerability of these two populations make them not only more susceptible to abuse, but also less equipped to report the abuse, and if they do report it, less likely to be believed. Beyond these similarities, it is worth reiterating that the modified deliberate indifference standard established in *K.H.* spawned from *Youngberg*—a case concerning the constitutional rights of a mentally ill adult who was committed to a state-run mental health facility.

Hurt's case bears little resemblance to *Yang v. Hardin* and its progeny, cited by Defendants, making the "actual knowledge" standard particularly inapplicable. These cases chiefly involve claims against bystander-policemen who witness their partners using excessive force on a suspect or detainee and fail to stop it. The alleged constitutional violation in these cases is typically happening directly in the presence of the bystander-officer, sometimes even on public streets where others can witness the violation. In contrast, the constitutional violation suffered by Hurt and the plaintiffs in the foster care cases is sexual abuse, which by its nature happens behind closed doors—making a liability requirement of "actual knowledge" unreasonable. Moreover, the critical element of long-term custody, which places a heightened burden on state officials to protect these individuals, is absent from the police excessive-force cases. That element is instead present in the prison context, where the traditional deliberate indifference standard is often applied.

The court nevertheless believes that the foster care cases are more analogous than the prison cases. As an initial matter, incarcerated individuals bring their failure-to-intervene claims under the Eighth Amendment, whereas involuntarily committed individuals, like Hurt, bring their claims under the Due Process Clause of the Fourteenth Amendment. *Youngberg*, 457 U.S. at 321–22. This distinction is relevant, as the Supreme Court has explained, because "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* Additionally, the vulnerability and limited-mental-capacity characteristics present in Hurt's case

**A40**

and the foster care cases are less acute in both the police and prison contexts. For these reasons, the court continues to believe that the modified deliberate indifference standard is the most appropriate standard in this case.

Defendants attempt to distinguish Hurt's case from the foster care cases by emphasizing that Hurt was not a child. They argue, for example, that "while Plaintiff was adjudicated NGRI, that fact alone does not mean that he had such a diminished mental capacity that he should be considered equivalent to a child." (Defs.' Mot. to Recons. at 11.) They note evidence that Hurt appeared to understand that Lenhardt would go to jail if staff discovered her abuse and that he concealed the fact that she performed sex acts on him—evidence, in Defendants' view, of his competence. (*Id.* at 12.) Hurt "could have reported the abuse" to numerous people and "could also have called the OIG hotline" to report the abuse, Defendants insist. (*Id.* at 9.) Finally, Defendants make the tenuous argument that as a technical matter, "Illinois law also does not presume that an adult admitted to a mental health facility is unable to consent to sexual activity." (*Id.* at 10.) To be sure, Defendants do not go so far as to claim that Hurt actually did consent to Lenhardt's specific sex acts, nor even that he could have done so. They do, however, gesture at this by characterizing Hurt as "an adult who was competent enough to understand that Lenhardt's activities were illegal, competent enough to understand that if their relationship were discovered, Lenhardt would lose her job and go to jail, and competent enough to actively work to conceal the relationship." (*Id.* at 12.)

These arguments may well be convincing to a jury, but they do not alter the court's conclusion about the appropriate standard here. Certainly the law distinguishes children from mentally ill adults. The two groups are akin, however, in their isolation and vulnerability, which make them less able or willing to report abuse and also more susceptible to being coerced into not reporting abuse. In any event, there is no basis in this record for a finding that Hurt and Lenhardt were in a lawful and consenting sexual relationship, and Defendants do not contend otherwise. To the contrary, Lenhardt herself pleaded guilty to a felony count of sexual misconduct

**A41**

with a person with disabilities, and the parties do not dispute that Hurt suffered a constitutional harm at Lenhardt's hands. *See Hurt*, 2023 WL 6213685, at *13. The suggestion that mentally ill individuals can consent to sex in some instances does little to support Defendants' argument in this case, where there is no question that Lenhardt exploited her position of authority, and Hurt's vulnerability, to sexually abuse him.

Finally, it is worth underscoring that the court's summary judgment ruling is not contingent on application of the "knowledge or suspicion" standard, and that Plaintiff's failure-to-intervene claims against Defendants Javed, Kareemi, Beck, and Delaney would survive summary judgment under the traditional deliberate indifference standard as well. To satisfy that standard, Plaintiff need not present direct evidence of "actual knowledge of a substantial risk," as the Defendants seem to suggest at points in their briefing. To the contrary, the Seventh Circuit has recognized that "except in the most egregious cases, plaintiffs generally lack direct evidence of actual knowledge. Rarely if ever will an official declare, 'I knew this would probably harm you, and I did it anyway!' Most cases turn on circumstantial evidence . . . ." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), *as amended* (Aug. 25, 2016). Thus, the Seventh Circuit has

> clarif[ied] that proof that the defendant had the requisite knowledge of substantial risk through circumstantial evidence of the risk's obviousness does not require evidence of past injury caused by the same risk or evidence that a defendant had recognized the risk before . . . . Actual knowledge of a substantial risk of serious harm can be inferred by the trier of fact from the obviousness of the risk . . . .

*Est. of Cole by Pardue v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996) (internal quotation marks and citations omitted). As articulated by the Seventh Circuit, the two variations of the deliberate indifference standard vary only slightly, with one requiring "knowledge of a substantial risk" and the other requiring "knowledge or suspicion of a substantial risk"—both are subjective tests. Whatever daylight exists between these two standards is even less discernible at the summary judgment stage, where all reasonable inferences must be drawn in favor of the nonmoving party. The record in this case, as the court detailed at length in its summary judgment order, depicted a disturbing picture of abuse by Lenhardt that spanned over a decade and affected multiple

**A42**

patients. This was not a case of a single incident of abuse that went undetected; there is evidence from which a reasonable jury could find that there were abundant signs of Lenhardt's substantial risk to patient safety. Whether the individual Defendants in this case were put on notice of the obviousness of that risk is a question that a jury must ultimately decide.

### III. Are the Defendants Protected by Qualified Immunity?

Next, Defendants' claim that they are immune from liability because there is no clearly established law applying the modified deliberate indifference standard to the fact pattern of this case. In other words, Defendants argue that while the law is clear that the modified deliberate indifference standard applies to children subjected to sexual abuse by their foster parents, it is not clearly established that this standard applies to mentally ill individuals subjected to sexual abuse by hospital staff.

Whether the qualified immunity defense has merit is a close question. It is true that the Seventh Circuit has not applied the "knows or suspects" standard outside of the foster care context. Yet it is also true that this does not in and of itself defeat Plaintiff's claim, as an "appropriately defined right is clearly established if there is a closely analogous—though not necessarily identical—case identifying that right, or if the defendant's conduct was so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (internal quotation marks and citations omitted). Hurt's case parallels the foster care cases in most important aspects, and the underlying constitutional conduct is sufficiently egregious to raise an argument that, if the Defendants in this case knew or suspected that a patient was being sexually abused, they should have known they had a constitutional duty to intervene, given *K.H.* and its progeny.

Nevertheless, the court need not reach Defendants' qualified immunity argument at this juncture. This is because the court's summary judgment ruling did not rest on a conclusion that there was evidence that the Defendants merely suspected there was sexual abuse. Rather, the court held that "there is evidence from which a reasonable jury could find that each Defendant

**A43**

*knew of or suspected* that Lenhardt was sexually abusing Hurt for nearly three years and that, instead of intervening, each chose to bury their heads in the sand." *Hurt*, 2023 WL 6213685, at *14. Simply put, as described above, the Plaintiff's claims would survive summary judgment under both the traditional *and* modified deliberate indifference standard, and there is no dispute that the traditional deliberate indifference standard is clearly established in law. For this reason, the Defendants' qualified immunity argument fails at the summary judgment stage.

Defendants' qualified immunity claim may well become relevant again at trial, however. For example, if after scrutinizing the facts at trial, the jury finds that a Defendant lacked "knowledge" of a substantial risk of sexual abuse, but did have a "suspicion" of that risk, Defendants' qualified immunity argument would resurface. One way the court could address this issue is to provide the jury with a general verdict form with interrogatories that separate the factual findings related to "knowledge" and "suspicion." This would preserve Defendants' ability to re-assert their qualified immunity argument in the event that the jury finds a Defendant did not meet the traditional deliberate indifference standard but did meet the modified deliberate indifference standard. The court will revisit this issue, if appropriate, at a later point in the litigation.

**IV.    Is Defendant Diana Hogan Entitled to Summary Judgment?**

Finally, Defendants argue that even if the modified deliberate indifference standard applies to Hurt's case, Defendant Diana Hogan is nevertheless entitled to summary judgment because, Defendants urge, there is no evidence in the record from which a reasonable juror could conclude that she actually "knew or suspected" that there was a substantial risk that Lenhardt was sexually abusing Hurt. Defendant Hogan was the Associate Director of Nursing of the Forensic Treatment Program at EMHC from 2008 until 2015, and then served as the Director of Nursing. *Hurt*, 2023 WL 6213685, at *2. In this role, Hogan did not supervise social workers such as Lenhardt and typically did not work in the hospital unit where Hurt was housed. *Id.* In fact, Hogan testified that while she knew who Lenhardt was, she never had more than a "fleeting conversation" with her.

15

**A44**

(Hogan Dep. Ex. F to DSOF [218-6] at 85:18–86:3.) She also testified that she "never even met" Hurt and "couldn't tell you what he looks like." (*Id.* at 43:21–24.)

Notwithstanding Hogan's apparent separation from both Lenhardt and Hurt, Plaintiff attempts to connect Hogan to this lawsuit with two pieces of evidence. The first was the fact that after Lenhardt and Hurt were caught locked in another staff member's office, Defendant Hogan received an email from EMHC Chief of Security William Epperson that contained a report of the incident and stated in the body of the email that he was "[v]ery concerned that a [social worker] would ask for assistance from a patient, for an office not on her unit." *Hurt*, 2023 WL 6213685, at *8. Plaintiff contends that Epperson's email and report should have alerted Hogan to the possibility that Lenhardt was abusing Hurt. The other evidence against Hogan consisted of reports that EMHC "administration" had suspicions surrounding Lenhardt and Hurt. For example, Lenhardt testified that Hogan's co-defendant, Drew Beck, warned Lenhardt that "administration was watching [her] and [Hurt]." *Id.* at 6. Plaintiff claims that in light of her role at EMHC as Director of Nursing, the reference to "administration" here must be read to include Hogan.

Upon a careful reconsideration of Defendant Hogan's deposition testimony and the record evidence related to her, the court concludes that Defendants are correct that the evidence is insufficient to find Hogan liable even under the modified deliberate indifference standard. True, Chief Epperson's email and incident report could (perhaps should) have sounded alarm bells; but Plaintiff provides no evidence that Hogan was in fact at all concerned. Hogan testified that at the time she was not worried about any potential sexual misconduct, but was instead concerned that other office doors may too have faulty locks and thus pose a safety risk to hospital *staff*. (Hogan Dep. at 54:16–55:11.) This reaction was not unreasonable, given that Hogan had essentially no familiarity with either Lenhardt or Hurt and the email and report themselves make no reference to any sexual misconduct.

Likewise, Plaintiff's "administration" argument is also too tenuous. In essence, Plaintiff asks the court to construe evidence that EMHC "administration" had suspicions surrounding

**A45**

Lenhardt as pointing directly to Defendant Hogan. While Hogan does refer to herself as a part of the hospital's administration, the record is clear that she was one of many administrators. (*See id.* at 56:1–7; 61:12–15.) The fact that some unidentified administrator had concerns about Lenhardt does not mean that Defendant Hogan did.

In the end, the strongest argument against Hogan is that more hands-on supervision of all staff might have uncovered Lenhardt's activities far sooner. But as the court understands the organizational structure of EMHC, Hogan, who was the Director of Nursing, did not supervise social workers. In any event, § 1983 does not allow for supervisory liability where the supervisor was not personally involved in the constitutional violation. Plaintiff's theory of liability against Defendant Hogan amounts to arguing that she *should have* known or suspected that Lenhardt was a danger to patients, without any evidence that she *actually* knew or suspected that Lenhardt was a risk. The court therefore grants Defendants' motion for reconsideration with respect to Defendant Hogan only.

## CONCLUSION

For the reasons provided above, the court grants the Defendants' Motion to Reconsider [254] with respect to Defendant Hogan only and denies all other claims in Defendants' Motion to Reconsider. Accordingly, Defendants' Renewed Motion to Stay Expert Discovery [262] is deemed moot and the parties are instructed to proceed with expert discovery.

ENTERED:

Dated: February 15, 2024

REBECCA R. PALLMEYER
United States District Judge

17

**A46**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENAHDAM HURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 7909 |
| | ) | |
| HASINA JAVED, FAIZAL KAREEMI, | ) | |
| DREW BECK, and COLEEN DELANEY, | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, the court grants Defendants Motion to Certify Interlocutory Appeal [277].

## BACKGROUND

The court has detailed the facts of this case in multiple opinions and assumes the parties' familiarity with this case's background. *See, e.g.*, *Hurt v. Corcoran*, No. 17 C 7909, 2023 WL 6213685 (N.D. Ill. Sept. 25, 2023); *Hurt v. Javed*, No. 17 C 7909, 2024 WL 640849 (N.D. Ill. Feb. 15, 2024). To orient the reader, the court provides an abridged summary of the context for this motion.

On September 25, 2023, the court issued its ruling [245] on the parties' cross-motions for summary judgment [216, 220], denying Plaintiff's motion in its entirety and denying Defendants' motion in part. In reaching its determinations, the court applied a "modified deliberate indifference" standard to Plaintiff's failure-to-intervene claim. This standard, first articulated by the Seventh Circuit in *K.H. v. Morgan*, 914 F.2d 846, 853 (7th Cir. 1990) and since then consistently applied in the foster care context, required Plaintiff to show that Defendants had *actual knowledge or suspicion of a substantial risk* that he was being sexually abused and chose to ignore that risk. As neither party here had directly cited this line of cases in their summary judgment briefing, the court invited the parties to further brief the issue of what legal standard should apply to Plaintiff's failure-to-intervene claim. Defendants accepted the invitation and argued in a Motion for Reconsideration [254] filed on October 31, 2023, that the court's adoption of this standard was error. Defendants proposed alternatively that either the failure-to-intervene standard from *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994), or the traditional deliberate indifference standard outlined in *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976) and its progeny, should apply here. The court remained unpersuaded by Defendants' arguments [274]. While acknowledging ambiguity in the caselaw, the court reaffirmed its conclusion that the modified deliberate indifference standard was the most applicable standard to Plaintiff's claim.

Defendants now ask the court to certify this issue for interlocutory appeal to the Seventh Circuit pursuant to 28 U.S.C. § 1292(b) [277]. Specifically, Defendants seek certification of this question:

**A47**

"Whether the deliberate indifference standard or modified deliberate indifference standard applies to a failure-to-intervene claim involving sexual abuse of an adult resident of a [state-run] mental health facility."

Specifically, this question concerns the subjective prong of the two standards. The subjective prong of the deliberate indifference standard is familiar to prison conditions litigation and requires that the defendant "actually knew of and disregarded a substantial risk of harm" facing the plaintiff. *E.g.*, *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Alternatively, the modified deliberate indifference standard "differs from the 'deliberate indifference' standard only in the sense that it can be satisfied by proof of a state actor's knowledge *or suspicion* of the risk of harm, rather than just knowledge. Both standards are subjective." *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003).

## DISCUSSION

A district court has discretion to certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) when there is "a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Seventh Circuit has outlined four criteria that must be met before a district court certifies an interlocutory order under § 1292(b): "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). "Unless all these criteria are satisfied, the district court may not and should not certify its order to [the Seventh Circuit] . . . under section 1292(b)." *Id.*; *see also Kenosha Unified Sch. Dist. No. 1 Bd. of Educ. v. Whitaker*, 841 F.3d 730, 732 (7th Cir. 2016). The court finds that all four criteria are satisfied in this case.

The first criterion requires that the order for interlocutory appeal concerns a "question of law." *Ahrenholz*, 219 F.3d at 676. A " 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine . . . ." *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. 20 C 02005, 2021 WL 2433666, at *4 (N.D. Ill. June 15, 2021) (quoting *Ahrenholz*, 219 F.3d at 676). In other words, "question of law" carries a distinct meaning within the context of § 1292(b) and is narrower than its ordinary legal meaning, encompassing only issues that "the court of appeals could decide quickly and cleanly without having to study the record . . . ." *Ahrenholz*, 219 F.3d at 676–77 (stating that a "question of law" means an "abstract legal issue"). In this instance, the question presented for interlocutory appeal revolves around whether one constitutional standard (deliberate indifference) or another (modified deliberate indifference) applies to a general factual context (sexual abuse of an adult resident of a state-run mental health facility). The question does not require the court of appeals to go "hunting through the record compiled in the summary judgment proceeding," nor does it "seek to overturn any findings of fact." *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625–26 (7th Cir. 2010). Instead, its resolution primarily requires a review of the constitutional provisions and caselaw animating the parties' competing legal standards. Accordingly, the court finds the first criterion satisfied.

The second criterion requires that the question of law be "controlling." *Ahrenholz*, 219 F.3d at 675. A question is controlling under § 1292(b) "if its resolution is quite likely to affect the further course of litigation, even if not certain to do so," *Costello v. BeavEx, Inc.*, No. 12 C 7843, 2014 WL 12775669, at *2 (N.D. Ill. Dec. 1, 2014) (quoting *Sokaogon Gaming Enter. Corp. v. Tushie–Montgomery Assocs.*, Inc., 86 F.3d 656, 659 (7th Cir. 1996)). "[T]he application of a legal standard is a controlling question of law within the meaning of section 1292(b)." *In re Text*

**A48**

*Messaging Antitrust Litig.*, 630 F.3d at 626 (collecting cases). Here, whether a given defendant is ultimately found liable at trial may well turn on which of the two standards is applied to Plaintiff's claim. For example, the evidence at trial might show that a defendant only *suspected*—and did not have *knowledge*—that there was a substantial risk that Plaintiff was being sexually abused. If this were the case, the defendant would be liable under the modified deliberate indifference standard but not under the traditional deliberate indifference standard. Thus, the second factor is easily satisfied.

The third criterion requires that the controlling question of law be "contestable." *Ahrenholz*, 219 F.3d at 675. "A question of law is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Costello*, 2014 WL 12775669, at *2 (citing *LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 5579006, at *6 (N.D. Ill. Nov. 23, 2009), and *Calvin v. Sheriff of Will Cnty.*, No. 03 C 3086, 2006 WL 1005141, at *3–4 (N.D. Ill. Apr. 14, 2006)). "[Q]uestions of first impression . . . [are] certainly contestable." *Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief and Dev.*, 291 F.3d 1000, 1007–08 (7th Cir. 2002). As the court has now stressed across three orders, neither party has pointed to controlling Seventh Circuit precent, and the court's own research has not illuminated an answer that definitively settles the debate. This lack of clarity in the caselaw has engendered a "substantial ground for difference of opinion," thereby satisfying the third factor of § 1292(b).

The final criterion requires that the interlocutory appeal have the potential to speed up the litigation. *Ahrenholz*, 219 F.3d at 675. The appeal need not promise to completely resolve the matter; it is sufficient that an interlocutory appeal would clarify the status of a claim to promote resolution of the matter. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("[A]ll that section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, is that an immediate appeal may materially advance the ultimate termination of the litigation."). The interlocutory appeal sought by Defendants has the potential to accelerate the conclusion of the case in several ways. Firstly, determining the applicable legal standard would enable the parties to better evaluate their trial prospects, potentially fostering settlement discussions. *See Nat. Res. Def. Couns. v. Illinois Power Res., LLC*, No. 113CV01181JBMTSH, 2016 WL 9650981, at *5 (C.D. Ill. Nov. 2, 2016) (finding that "confirmation of liability by the court of appeals could encourage settlement and compromise" and thus satisfy § 1292(b)'s requirement that the appeal materially advance the litigation). Moreover, clarity on the liability standard would streamline trial arguments and minimize jury confusion. Additionally, questions of law concerning the application of different legal standards are particularly suitable for immediate appeal as they mitigate the risk of a retrial in the event of an erroneous legal standard application.

It is not lost on this court that the mere "filing of a section 1292(b) petition tends to delay the litigation in the district court" as the appeals court processes the request. *Ahrenholz*, 219 F.3d at 675. But § 1292(b) does not mandate that proceedings be stayed while the interlocutory appeal is processing. *Id.*; 28 U.S.C. § 1292(b). Thus, although the Court of Appeals' resolution of the governing standard in this case would be of great value in advancing this litigation, the court confirms that it is committed to proceeding to trial as set on November 6, 2024, regardless of the pace at which the appeal is heard.

**CONCLUSION**

For the foregoing reasons, the court grants the Defendants' Motion to Certify Interlocutory Appeal [277]**.**

ENTER:

Dated:  April 25, 2024

REBECCA R. PALLMEYER
United States District Judge

**A50**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 6, 2024, I electronically filed the foregoing Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit via email at USCA7_Clerk@ca7.uscourts.gov.

I further certify that the other participant in this action, named below, was electronically served by transmitting a copy of said petition from my email address to his email address of record.

Stuart Kretchmar
srandolphk@gmail.com

/s/ Sarah A. Hunger
SARAH A. HUNGER
Deputy Solicitor General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5202 (office)
(312) 771-3885 (cell)
Sarah.Hunger@ilag.gov

### United States District Court
### Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:17–cv–07909
### *Internal Use Only*

Hurt v. Corcoran et al
Assigned to: Honorable Rebecca R. Pallmeyer
Demand: $9,999,000
 related Case:  1:18–cv–00334
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 11/02/2017
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Benahdam Hurt**

represented by **Stuart Randolph Kretchmar**
Attorney at Law
1170 Michigan Avenue
Wilmette, IL 60091
(847) 853–8106
Email: srandolphk@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Thomas Moran , Jr.**
THE MORAN LAW GROUP
Suite 101
566 West Lake Street
Chicago, IL 60661
(312) 405–4474
Email: johntmoran@protonmail.com
*ATTORNEY TO BE NOTICED*

**Joseph John Cecala**
Kretchmar & Cecala
658 Busse Highway
Park Ridge, IL 60068
(312) 235–6752
Email: jcecala@expansionfunding.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**James P Corcoran**
*in his official capacity as Medical
Director of Elgin Mental Health Center
and indiviually*
*TERMINATED: 08/15/2019*

represented by **Blanca R. Dominguez**
Office of the Illinois Attorney General
100 W. Randolph St.
13th Fl.
Chicago, IL 60601
(312) 814–4451
Email: BDominguez@atg.state.il.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Walsh**
Office of the Illinois Attorney General
100 W Randolph St, 13th Floor
Chicago, IL 60601
(312) 814–6122
Email: erin.walsh@ilag.gov
*TERMINATED: 09/11/2019*
*LEAD ATTORNEY*

**T. Andrew Horvat**

Horvat Law, LLC
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
312–803–4956
Email: andrew@horvatlawllc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelly C. Bauer**
Office of the Illinois Attorney General
General Law Bureau – Civil Rights Unit
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
(312) 814–3119
Email: kelly.bauer@ilag.gov
*TERMINATED: 09/11/2019*

**Defendant**

**Illinois Department of Human Services**      represented by   **Blanca R. Dominguez**
*a Department of the State of Illinois*                          (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Erin Walsh**
                                                                (See above for address)
                                                                *TERMINATED: 09/11/2019*
                                                                *LEAD ATTORNEY*

                                                                **Kelly C. Bauer**
                                                                (See above for address)
                                                                *TERMINATED: 09/11/2019*

**Defendant**

**Hasina Javed**                                represented by   **Blanca R. Dominguez**
*in her official capacity as a psychiatric*                      (See above for address)
*treatment team leader and indiviually*                          *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Erin Walsh**
                                                                (See above for address)
                                                                *TERMINATED: 09/11/2019*
                                                                *LEAD ATTORNEY*

                                                                **Sarah Hughes Newman**
                                                                Illinois Attorney General's Office
                                                                115 S. LaSalle Street
                                                                Ste 27th Floor
                                                                Chicago, IL 60603
                                                                312–814–6131
                                                                Email: sarah.newman@ilag.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **T. Andrew Horvat**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Kelly C. Bauer**
                                                                (See above for address)
                                                                *TERMINATED: 09/11/2019*

                                                                **Mary Alice Johnston**
                                                                Illinois Attorney General's Office

115 South LaSalle Street
Ste 27th Floor
Chicago, IL 60603
312–814–4417
Email: mary.johnston@ilag.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Faizal Kareemi**
*in her official capacity as a psychiatric*
*treatment team leader and individually*

represented by **Blanca R. Dominguez**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Walsh**
(See above for address)
*TERMINATED: 09/11/2019*
*LEAD ATTORNEY*

**Sarah Hughes Newman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**T. Andrew Horvat**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelly C. Bauer**
(See above for address)
*TERMINATED: 09/11/2019*

**Mary Alice Johnston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christy Lenhardt**
*in her official capacity as a psychiatric*
*treatment team administrator or secretary*
*and individually*
*TERMINATED: 08/25/2020*

represented by **Steven Jay Brody**
Steven J. Brody & Associates, Ltd.
11608 Dean Street
Ste 103
Huntley, IL 60142
815–479–8800
Email: steve@sjbrodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David C. Burtker**
Cunningham, Meyer & Vedrine
One East Wacker Drive
2200
Chicago, IL 60601
(312)578–8804
Email: dburtker@cmvlaw.com
*TERMINATED: 01/15/2020*

**Kenneth Dawson Seale**
Cunningham Meyer & Vedrine
One Ease Wacker Drive
#2200
Chicago, IL 60601
312 578 0049
Email: ken@cmvlaw.com
*TERMINATED: 01/15/2020*

**Michael Franklin Compton**
Cunningham Meyer And Vedrine
One East Wacker Drive
Suite 2200
Chicago, IL 60601
(312) 578–0049
Email: mcompton@cmvlaw.com
*TERMINATED: 01/15/2020*

<u>**Defendant**</u>

**Elgin Mental Health Center**          represented by   **Blanca R. Dominguez**
*TERMINATED: 12/08/2018*                                 (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Erin Walsh**
                                                         (See above for address)
                                                         *TERMINATED: 09/11/2019*
                                                         *LEAD ATTORNEY*

                                                         **Kelly C. Bauer**
                                                         (See above for address)
                                                         *TERMINATED: 09/11/2019*

<u>**Defendant**</u>

**Drew Beck**                           represented by   **Erin Walsh**
*in his official capacity as a social worker*           (See above for address)
*and individually*                                      *TERMINATED: 09/11/2019*
                                                        *LEAD ATTORNEY*

                                                        **Marci L. Sahinoglu**
                                                        Illinois Attorney General's Office
                                                        General Law Bureau, Civil Rights Unit
                                                        115 S. LaSalle Street
                                                        Floor 27
                                                        Chicago, IL 60603
                                                        312–636–5595
                                                        Email: Marci.sahinoglu@ilag.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Amanda Leigh Kozar**
                                                        Office of the Illinois Attorney General
                                                        100 W. Randolph St.
                                                        Floor 13
                                                        Chicago, IL 60601
                                                        (312) 814–6534
                                                        Email: amanda.kozar@ilag.gov
                                                        *TERMINATED: 09/26/2022*

                                                        **Mary Alice Johnston**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Coleen Delaney**                      represented by   **Erin Walsh**
*in her official capacity as a clinical unit*           (See above for address)
*supervisor and individually*                           *TERMINATED: 09/11/2019*
                                                        *LEAD ATTORNEY*

                                                        **Sarah Hughes Newman**
                                                        (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mary Alice Johnston**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Diana Hogan**                    represented by **Erin Walsh**
*in her official capacity as an*                    (See above for address)
*administrative supervisor and*                    *TERMINATED: 09/11/2019*
*individually*                                      *LEAD ATTORNEY*

                                                   **Sarah Hughes Newman**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Mary Alice Johnston**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**James P Corcoran**              represented by **Daniel Noah Robbin**
                                                   Office of the Illinois Attorney General
                                                   115 S. La Salle St.
                                                   Floor 28
                                                   Chicago, IL 60603
                                                   312–814–7199
                                                   Email: daniel.robbin@ilag.gov
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Respondent**

**Dr. Joanne Langley**            represented by **Daniel Noah Robbin**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2017 | 1 | COMPLAINT filed by Benahdam Hurt; Jury Demand. Filing fee $ 400, receipt number 0752–13751855.(Cecala, Joseph) (Entered: 11/02/2017) |
| 11/02/2017 | | CASE ASSIGNED to the Honorable Rebecca R. Pallmeyer. Designated as Magistrate Judge the Honorable Sheila Finnegan. (meg, ) (Entered: 11/06/2017) |
| 11/06/2017 | 2 | NOTICE TO THE PARTIES – The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in the attached Notice which includes the MIDP Standing Order. Also attached is a checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the attached documents (Notice to Parties and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or Third–Party Complaint is served. (jk, ) (Entered: 11/06/2017) |
| 11/07/2017 | 3 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Initial status hearing set for 1/8/2018 at 09:00 AM, courtroom 2141. Mailed notice. (etv, ) (Entered: |

| | | |
|---|---|---|
| | | 11/07/2017) |
| 01/08/2018 | 4 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 1/8/2018. Status hearing set for 2/26/2018 at 09:00 AM. Mailed notice. (etv, ) (Entered: 01/08/2018) |
| 02/23/2018 | 5 | ATTORNEY Appearance for Defendants Elgin Mental Health Center, Illinois Department of Human Services by Blanca R. Dominguez (Dominguez, Blanca) (Entered: 02/23/2018) |
| 02/23/2018 | 6 | ATTORNEY Appearance for Defendants Elgin Mental Health Center, Illinois Department of Human Services by Erin Walsh (Walsh, Erin) (Entered: 02/23/2018) |
| 02/26/2018 | 7 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 2/26/2018. Status hearing set for 5/2/2018 at 9:30 AM. Parties are invited to contact the court if they desire court involvement in settlement efforts. Mailed notice. (etv, ) (Entered: 02/26/2018) |
| 03/08/2018 | | SUMMONS Issued as to Defendant Christy Lenhardt. (pk, ) (Entered: 03/08/2018) |
| 03/12/2018 | 8 | ATTORNEY Appearance for Defendants James P Corcoran, Hasina Javed, Faizal Kareemi by Blanca R. Dominguez (Dominguez, Blanca) (Entered: 03/12/2018) |
| 03/12/2018 | 9 | ATTORNEY Appearance for Defendants James P Corcoran, Hasina Javed, Faizal Kareemi by Erin Walsh (Walsh, Erin) (Entered: 03/12/2018) |
| 03/15/2018 | 10 | SUMMONS Returned Executed by Benahdam Hurt as to Christy Lenhardt on 3/10/2018, answer due 4/2/2018. (Kretchmar, Stuart) (Entered: 03/15/2018) |
| 03/22/2018 | 11 | ATTORNEY Appearance for Defendant Christy Lenhardt by Kenneth Dawson Seale (Seale, Kenneth) (Entered: 03/22/2018) |
| 03/22/2018 | 12 | ATTORNEY Appearance for Defendant Christy Lenhardt by Michael Franklin Compton (Compton, Michael) (Entered: 03/22/2018) |
| 03/22/2018 | 13 | MOTION by Plaintiff Benahdam Hurt to reassign case *to this Court* (Kretchmar, Stuart) (Entered: 03/22/2018) |
| 03/23/2018 | 14 | ATTORNEY Appearance for Plaintiff Benahdam Hurt by Stuart Randolph Kretchmar (Kretchmar, Stuart) (Entered: 03/23/2018) |
| 03/23/2018 | 15 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiffs' unopposed motion for reassignment based on relatedness 13 is granted without an appearance. Case No. 18 C 334, Mark Owens v. James Patrick Corcoran, currently assigned to Judge Wood to be reassigned to Judge Pallmeyer. Mailed notice. (etv, ) (Entered: 03/23/2018) |
| 04/13/2018 | 16 | MOTION by Defendants James P Corcoran, Elgin Mental Health Center, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi for extension of time to file answer *Unopposed* (Dominguez, Blanca) (Entered: 04/13/2018) |
| 04/13/2018 | 17 | NOTICE of Motion by Blanca R. Dominguez for presentment of motion for extension of time to file answer 16 before Honorable Rebecca R. Pallmeyer on 5/2/2018 at 08:45 AM. (Dominguez, Blanca) (Entered: 04/13/2018) |
| 04/13/2018 | 18 | MOTION by Plaintiff Benahdam HurtDefault (Attachments: # 1 Affidavit)(Kretchmar, Stuart) (Entered: 04/13/2018) |
| 04/16/2018 | 19 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: State Defendants' unopposed motion for extension of time to Answer or otherwise plead in response to Plaintiff's complaint 16 is granted until 30 days after an amended complaint is filed, but Plaintiff's amended complaint, if any, should be filed on or before 5/2/2018. Mailed notice. (etv, ) (Entered: 04/16/2018) |
| 04/16/2018 | 20 | MOTION by Defendant Christy Lenhardt for extension of time *to Answer or Otherwise Plead/Response to Plaintiff's Motion for Default* (Attachments: # 1 Exhibit 1)(Seale, Kenneth) (Entered: 04/16/2018) |
| 04/16/2018 | 21 | NOTICE of Motion by Kenneth Dawson Seale for presentment of extension of time 20 before Honorable Rebecca R. Pallmeyer on 4/19/2018 at 08:45 AM. (Seale, Kenneth) |

| | | |
|---|---|---|
| | | (Entered: 04/16/2018) |
| 04/19/2018 | 22 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 4/19/2018. Defendant Christy Lenhardt's motion for extension of time to Answer or otherwise plead 20 is granted to and including 6/1/2018. Plaintiff's motion for default 18 is stricken without prejudice. Amended Complaint to be filed by 5/2/2018. Status hearing set for 5/2/2018 is stricken. The parties are directed to appear through lead counsel for a pretrial conference pursuant to FED. R. CIV. P. 16. on 6/13/2018 at 9:00 AM. Counsel are requested promptly to meet face−to−face for a discussion of possible settlement and for preparation of a planning report. The form is accessible from the court's Internet site, www.ilnd.uscourts.gov. Such report shall be submitted to Judge Pallmeyer in chambers no later than two business days prior to the conference. Mailed notice. (etv, ) (Entered: 04/19/2018) |
| 05/01/2018 | 23 | AMENDED complaint by Benahdam Hurt against All Defendants (Cecala, Joseph) (Entered: 05/01/2018) |
| 05/22/2018 | 24 | MOTION by Defendant Christy Lenhardt to stay (Attachments: # 1 Exhibit 1)(Seale, Kenneth) (Entered: 05/22/2018) |
| 05/22/2018 | 25 | NOTICE of Motion by Kenneth Dawson Seale for presentment of motion to stay 24 before Honorable Rebecca R. Pallmeyer on 5/29/2018 at 08:45 AM. (Seale, Kenneth) (Entered: 05/22/2018) |
| 05/25/2018 | 26 | MOTION by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi to stay (Dominguez, Blanca) (Entered: 05/25/2018) |
| 05/25/2018 | 27 | NOTICE of Motion by Blanca R. Dominguez for presentment of motion to stay 26 before Honorable Rebecca R. Pallmeyer on 5/29/2018 at 08:45 AM. (Dominguez, Blanca) (Entered: 05/25/2018) |
| 05/29/2018 | 28 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 5/29/2018. Defendant, Christy Lenhardt's motion to stay 24 , and State Defendants' motion to stay 26 are entered and continued for briefing. Response to be filed by or on 7/19/2018; reply to be filed by or on 8/9/2018. Date for responsive pleading is entered and continued generally. Status hearing set for 8/21/2018 at 9:00 AM. Rule 16 conference set for 6/13/2018 is stricken. Motion to stay in the Owens case (18 C 334) to be filed within one week. Mailed notice. (etv, ) (Entered: 05/29/2018) |
| 07/19/2018 | 29 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi to stay 26 (Attachments: # 1 Exhibit Crime case docs part 1, # 2 Exhibit Crime case docs part 2)(Kretchmar, Stuart) (Entered: 07/19/2018) |
| 08/09/2018 | 30 | REPLY by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi *in support of motion to stay* (Walsh, Erin) (Entered: 08/09/2018) |
| 08/15/2018 | 31 | ATTORNEY Appearance for Defendants James P Corcoran, Hasina Javed, Faizal Kareemi by T. Andrew Horvat (Horvat, T.) (Entered: 08/15/2018) |
| 08/21/2018 | 32 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 8/21/2018. Case is stayed as to deposition testimony. Defendants motion to dismiss to be filed by or on 9/19/2018; response to be filed by or on 10/17/2018. All parties to proceed with written discovery. Status hearing set for 11/1/2018 at 9:00 AM. Motions to stay [24, 26] are granted in part and denied in part; parties to proceed with written discovery only. Mailed notice. (etv, ) (Entered: 08/21/2018) |
| 09/19/2018 | 33 | MOTION by Defendants Faizal Kareemi, Illinois Department of Human Services, James P Corcoran, Hasina Javed to dismiss (Walsh, Erin) (Entered: 09/19/2018) |
| 09/19/2018 | 34 | MEMORANDUM by James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi in support of motion to dismiss 33 (Walsh, Erin) (Entered: 09/19/2018) |
| 10/01/2018 | 35 | WITHDRAWING *T. Andrew Horvat and Blanca R. Dominguez* as counsel for Defendants James P Corcoran, Elgin Mental Health Center, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi and substituting Kelly C. Bauer as |

| | | counsel of record (Bauer, Kelly) (Entered: 10/01/2018) |
|---|---|---|
| 10/11/2018 | 36 | MOTION by Plaintiff Benahdam Hurt to amend/correct *to amend the complaint or extend time for response* (Attachments: # 1 Exhibit Proposed Amended Complaint, # 2 Notice of Filing)(Kretchmar, Stuart) (Entered: 10/11/2018) |
| 10/15/2018 | 37 | NOTICE of Motion by Stuart Randolph Kretchmar for presentment of motion to amend/correct 36 before Honorable Rebecca R. Pallmeyer on 10/23/2018 at 08:45 AM. (Kretchmar, Stuart) (Entered: 10/15/2018) |
| 10/19/2018 | 38 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion for leave to amend the complaint 36 is granted without an appearance. State Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) 33 is stricken as moot. Status hearing set for 11/1/2018 is stricken and re–set to 12/6/2018 at 9:00 AM. Mailed notice. (etv, ) (Entered: 10/19/2018) |
| 10/24/2018 | 39 | *Second* AMENDED complaint by Benahdam Hurt against All Defendants (Kretchmar, Stuart) (Entered: 10/24/2018) |
| 11/16/2018 | 40 | MOTION by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi for leave to file *Motion to Dismiss Instanter* (Attachments: # 1 Exhibit Motion to Dismiss and Memorandum)(Walsh, Erin) (Entered: 11/16/2018) |
| 11/16/2018 | 41 | MOTION by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi for protective order *pursuant to HIPAA* (Walsh, Erin) (Entered: 11/16/2018) |
| 11/16/2018 | 42 | MOTION by Defendants James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi for protective order (Walsh, Erin) (Entered: 11/16/2018) |
| 11/16/2018 | 43 | *(Unopposed Motion)* NOTICE of Motion by Erin Walsh for presentment of motion for leave to file 40 before Honorable Rebecca R. Pallmeyer on 11/29/2018 at 08:45 AM. (Walsh, Erin) (Entered: 11/16/2018) |
| 11/16/2018 | 44 | NOTICE of Motion by Erin Walsh for presentment of motion for protective order 42 , motion for protective order 41 before Honorable Rebecca R. Pallmeyer on 11/29/2018 at 08:45 AM. (Walsh, Erin) (Entered: 11/16/2018) |
| 11/19/2018 | 45 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion for leave to file motion to dismiss instanter 40 , motion for qualified protective order pursuant to HIPAA 41 , and State Defendants' motion for a confidentiality order 42 are granted. Status hearing set for 12/6 to stand. Mailed notice. (etv, ) (Entered: 11/19/2018) |
| 11/19/2018 | 46 | HIPAA QUALIFIED PROTECTIVE ORDER: Signed by the Honorable Rebecca R. Pallmeyer on 11/19/2018. Mailed notice. (etv, ) (Entered: 11/19/2018) |
| 11/19/2018 | 47 | Confidentiality Order : Signed by the Honorable Rebecca R. Pallmeyer on 11/19/2018. Mailed notice. (etv, ) (Entered: 11/19/2018) |
| 11/19/2018 | 48 | MOTION by Defendants Faizal Kareemi, Illinois Department of Human Services, James P Corcoran, Hasina Javed to dismiss (Walsh, Erin) (Entered: 11/19/2018) |
| 11/19/2018 | 49 | MEMORANDUM by James P Corcoran, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi in support of motion to dismiss 48 (Walsh, Erin) (Entered: 11/19/2018) |
| 11/19/2018 | 50 | NOTICE of Motion by Erin Walsh for presentment of motion to dismiss 48 before Honorable Rebecca R. Pallmeyer on 11/29/2018 at 08:45 AM. (Walsh, Erin) (Entered: 11/19/2018) |
| 11/28/2018 | 51 | ATTORNEY Appearance for Defendant Drew Beck by Erin Walsh (Walsh, Erin) (Entered: 11/28/2018) |
| 11/29/2018 | 52 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. No one appeared on behalf of Plaintiff on Defendants' noticed motion. Defendants' motion to dismiss 48 is entered and continued. Plaintiff's response to be filed by 01/07/2019; reply to be filed by 01/28/2019. Status hearing set for 12/06/2018 to stand. Mailed notice (mw, ) (Entered: 11/29/2018) |

| 12/03/2018 | 53 | MOTION by Plaintiff Benahdam Hurt to amend/correct *to correct erroneous caption* (Attachments: # 1 3rd amended complaint)(Kretchmar, Stuart) (Entered: 12/03/2018) |
|---|---|---|
| 12/03/2018 | 54 | NOTICE of Motion by Stuart Randolph Kretchmar for presentment of before Honorable Rebecca R. Pallmeyer on 12/6/2018 at 08:45 AM. (Kretchmar, Stuart) (Entered: 12/03/2018) |
| 12/06/2018 | 55 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 12/6/2018. Motion for leave to amend the complaint to correct an erroneous caption in the second amended complaint 53 is granted. Response to motion to dismiss 48 extended to and including 1/14/2019; reply extended to and including 2/4/2019; ruling or argument set for 2/20/2019 at 9:30 AM. Mailed notice. (etv, ) (Entered: 12/06/2018) |
| 12/06/2018 | 56 | AMENDED *3rd Amended Complaint* (Kretchmar, Stuart) (Entered: 12/06/2018) |
| 12/08/2018 | 57 | *Third* AMENDED complaint by Benahdam Hurt against All Defendants (Kretchmar, Stuart) (Entered: 12/08/2018) |
| 12/18/2018 | 58 | ATTORNEY Appearance for Defendant Coleen Delaney by Erin Walsh (Walsh, Erin) (Entered: 12/18/2018) |
| 12/21/2018 | 59 | ATTORNEY Appearance for Defendant Diana Hogan by Erin Walsh (Walsh, Erin) (Entered: 12/21/2018) |
| 12/27/2018 | 60 | MOTION by Defendants Diana Hogan, Drew Beck, Coleen Delaney to dismiss (Walsh, Erin) (Entered: 12/27/2018) |
| 01/02/2019 | 61 | NOTICE of Motion by Erin Walsh for presentment of motion to dismiss 60 before Honorable Rebecca R. Pallmeyer on 1/7/2019 at 09:00 AM. (Walsh, Erin) (Entered: 01/02/2019) |
| 01/07/2019 | 62 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 1/7/2019. Defendants Beck, Delaney, and Hogan's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) 60 is entered and continued for briefing. Response to all motions to be filed by or on 2/7/4019; reply to all motions to filed by or on 2/28/2019. Rule 26(a)(1) disclosures to be made in 7 days. Status hearing set for 3/6/2019 at 9:00 AM. Ruling set for 2/20/2019 is stricken. Referral to Magistrate Judge Finnegan for settlement conference. Mailed notice. (etv, ) (Entered: 01/07/2019) |
| 01/07/2019 | 63 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Sheila M. Finnegan for the purpose of holding proceedings related to: settlement conference. (etv, )Mailed notice. (Entered: 01/07/2019) |
| 01/08/2019 | 64 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone conference is set on 1/15/2019 at 11:00 a.m.Mailed notice (sxw, ) (Entered: 01/08/2019) |
| 01/15/2019 | 65 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conference held 1/15/2019 for discussion of settlement issues. Settlement Conference set for 3/26/2019 at 10:30 a.m. at the request of the parties. Plaintiff's counsel is to provide a settlement letter to defense counsel by 2/28/2019. Defense counsel is to provide a responsive letter to plaintiff's counsel by 3/21/2019. Each party is to provide its letter to Judge Finnegan (by e−mail to Chambers_Finnegan@ilnd.uscourts.gov) on the same day that the letter is sent to opposing counsel. The parties are directed to review and comply with Judge Finnegan's Standing Order for Settlement Conferences (available on the court's website at www.ilnd.uscourts.gov by selecting the link for Magistrate Judge Finnegan and then the link for "Settlement Conferences"). Mailed notice (sxw, ) (Entered: 01/15/2019) |
| 02/07/2019 | 66 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Faizal Kareemi, Illinois Department of Human Services, James P Corcoran, Hasina Javed to dismiss 48 , MOTION by Defendants Diana Hogan, Drew Beck, Coleen Delaney to dismiss 60 (Kretchmar, Stuart) (Entered: 02/07/2019) |
| 02/28/2019 | 67 | REPLY by Defendants Drew Beck, James P Corcoran, Coleen Delaney, Diana Hogan, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi to motion to dismiss 48 , motion to dismiss 60 (Walsh, Erin) (Entered: 02/28/2019) |

| 03/06/2019 | 68 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 3/6/2019. The court is confident that Defendants understand their obligation not to retaliate against persons who provide information to plaintiff's counsel in good faith. The court expects counsel to prepare a protective order that will reassure potential witnesses of that commitment, and submit it for the court's signature within 7 days. To ensure that Judge Finnegan's time is well–spent, the parties will promptly provide any discovery responses that are feasible and necessary before the scheduled settlement conference. Status hearing set for 4/17/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 03/06/2019) |
|---|---|---|
| 03/06/2019 | 69 | Suggested Order of Protection by Benahdam Hurt *Pursuant to Minute Order of 3/6/2019 Dkt. 68* (Kretchmar, Stuart) (Entered: 03/06/2019) |
| 03/07/2019 | 70 | ATTORNEY Appearance for Defendant Christy Lenhardt by David C. Burtker (Burtker, David) (Entered: 03/07/2019) |
| 03/08/2019 | 71 | MOTION by Defendants Drew Beck, James P Corcoran, Coleen Delaney, Diana Hogan, Illinois Department of Human Services, Hasina Javed, Faizal Kareemi for extension of time (Walsh, Erin) (Entered: 03/08/2019) |
| 03/08/2019 | 72 | NOTICE of Motion by Erin Walsh for presentment of extension of time 71 before Honorable Rebecca R. Pallmeyer on 3/14/2019 at 08:45 AM. (Walsh, Erin) (Entered: 03/08/2019) |
| 03/14/2019 | 73 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 3/14/2019. State Defendants' motion for an extension of time 71 is granted. Deadline to submit a response to Plaintiff's proposed protective order is extended to 3/22/2019. Mailed notice. (etv, ) (Entered: 03/14/2019) |
| 03/19/2019 | 74 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conferences held on 3/19/2019 with counsel for each side separately for discussion of settlement issues. Additional telephone conference with plaintiff's counsel only is set on 3/20/2019 at 11:00 a.m. Mailed notice (sxw, ) (Entered: 03/19/2019) |
| 03/20/2019 | 75 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conference held on 3/20/2019 with Plaintiff's counsel for discussion of settlement issues. Mailed notice (sxw, ) (Entered: 03/20/2019) |
| 03/20/2019 | 76 | MINUTE entry before the Honorable Sheila M. Finnegan: Settlement conference set for 3/26/2019 is cancelled given the parties' need to exchange further discovery before a formal conference is held. Telephone conference is set for 4/22/2019 at 4:45 p.m. Parties (all or a subset) may contact the courtroom deputy to request an earlier conference call with Magistrate Judge Finnegan regarding settlement issues.Mailed notice (sxw, ) (Entered: 03/20/2019) |
| 03/22/2019 | 77 | OBJECTIONS *to Plaintiff's Proposed Order of Protection* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Walsh, Erin) (Entered: 03/22/2019) |
| 04/17/2019 | 78 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 4/17/2019. By close of business 4/22/2019, Plaintiff will provide complete signed responses to interrogatories, and a certificate of completion with respect to responses to Request For Production. Records of relationship between Hurt and Lenhardt will be produced by close of business 4/22/2019. Plaintiff Hurt will execute release of medical records within 7 days. Status hearing set for 6/10/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 04/17/2019) |
| 04/22/2019 | 79 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conference held on 4/22/2019 for discussion of settlement issues. Only defense counsel dialed in for the pre–scheduled call. Since the parties require more discovery before attempting to negotiate a settlement, the Court will hold another telephone conference on 5/24/2019 at 4 p.m. (defense counsel) and 4:15 (plaintiff's counsel) to explore settlement issues. Counsel are to initiate a call to chambers (312–435–5657) at the designated time.Mailed notice (sxw, ) (Entered: 04/23/2019) |
| 05/24/2019 | 80 | MOTION by Defendants James P Corcoran, Hasina Javed, Faizal Kareemi to compel (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Walsh, Erin) (Entered: 05/24/2019) |

| 05/24/2019 | 81 | NOTICE of Motion by Erin Walsh for presentment of motion to compel, 80 before Honorable Rebecca R. Pallmeyer on 5/30/2019 at 08:45 AM. (Walsh, Erin) (Entered: 05/24/2019) |
|---|---|---|
| 05/24/2019 | 82 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conferences held with the parties (separately) on 5/24/2019 for discussion of settlement issues. Parties do not desire a settlement conference at this time. They may contact the courtroom deputy in the future if they would like to schedule one.Mailed notice (sxw, ) (Entered: 05/28/2019) |
| 05/30/2019 | 83 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held on 5/30/2019. Defendant's motion to compel 80 is granted. Plaintiff to provide sworn answers to Interrogatories, and specific identification of responsive documents within fourteen (14) days. Status hearing set for 6/10/2019 is stricken and re−set to 6/19/2019 at 9:00 AM. Mailed notice. (etv, ) (Entered: 05/31/2019) |
| 06/17/2019 | 84 | TRANSCRIPT OF PROCEEDINGS held on 4/17/19 before the Honorable Rebecca R. Pallmeyer. Order Number: 34499. Court Reporter Contact Information: Frances Ward − (312)435−5561 − wardofficialtranscripts@gmail.com.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/8/2019. Redacted Transcript Deadline set for 7/18/2019. Release of Transcript Restriction set for 9/16/2019. (Ward, Frances) (Entered: 06/17/2019) |
| 06/19/2019 | 85 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held on 6/19/2019. Stay is lifted effective at the entry of a guilty plea, if any. Status hearing set for 8/6/2019 at 10:00 AM. Mailed notice. (etv, ) (Entered: 06/20/2019) |
| 08/06/2019 | 86 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing set for 8/6/19 is stricken and re−set to 8/27/19 at 9:00 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 08/06/2019) |
| 08/15/2019 | 87 | MEMORANDUM OPINION AND ORDER Signed by the Honorable Rebecca R. Pallmeyer on 8/15/2019: Defendants' motions to dismiss 48 , 60 are granted in part and denied in part. Plaintiffs' claims against DHS are dismissed, as are their official capacity claims. Plaintiffs' claims for declaratory and injunctive relief are also dismissed. Both Plaintiffs' claims against Javed, acting in her individual capacity, and Hurt's claims against Kareemi, Beck, Delaney, and Hogan, acting in their individual capacities, survive Defendants' motions. Defendant Corcoran is dismissed. Mailed notice (mw, ) (Entered: 08/15/2019) |
| 08/27/2019 | 88 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held and continued to 10/16/19 at 9:00 a.m. Rule 16 conference set for 10/16/19 at 9:00 a.m. All Defendants, except Christy Lenhardt, shall file their answer by 9/10/19. Discovery shall be initiated within seven days after Defendants answer is filed. Notice mailed by judge's staff (ntf, ) (Entered: 08/27/2019) |
| 09/10/2019 | 89 | WITHDRAWING *Kelly C. Bauer and Erin Walsh* as counsel for Defendants Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi and substituting Sarah Hughes Newman as counsel of record (Newman, Sarah) (Entered: 09/10/2019) |
| 09/10/2019 | 90 | MOTION by Defendants Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time to file answer regarding amended complaint 57 (Newman, Sarah) (Entered: 09/10/2019) |
| 09/10/2019 | 91 | NOTICE of Motion by Sarah Hughes Newman for presentment of motion for extension of time to file answer 90 before Honorable Rebecca R. Pallmeyer on 9/16/2019 at 09:00 AM. (Newman, Sarah) (Entered: 09/10/2019) |
| 09/10/2019 | 92 | WITHDRAWING *Erin Walsh* as counsel for Defendant Drew Beck and substituting Amanda Leigh Kozar as counsel of record (Kozar, Amanda) (Entered: 09/10/2019) |

| 09/10/2019 | 93 | MOTION by Defendant Drew Beck for extension of time to file answer (Kozar, Amanda) (Entered: 09/10/2019) |
|---|---|---|
| 09/10/2019 | 94 | NOTICE of Motion by Amanda Leigh Kozar for presentment of motion for extension of time to file answer 93 before Honorable Rebecca R. Pallmeyer on 9/16/2019 at 09:00 AM. (Kozar, Amanda) (Entered: 09/10/2019) |
| 09/11/2019 | 95 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' motions for extension of time to answer 90 and 93 are granted to and including to 10/10/19. Motion hearing date of 9/16/19 is stricken. Status and Rule 16 conference set for 10/16/19 is stricken and re–set to 11/6/19 at 9:00 a.m. Attorney Kelly C. Bauer and Erin Walsh are given leave to withdrawal as counsel for Defendants and Attorney Sarah H. Newman is given leave to substitute as counsel for Defendants. Notice mailed by judge's staff (ntf, ) (Entered: 09/11/2019) |
| 09/11/2019 | 96 | MOTION by Plaintiff Benahdam Hurt for default judgment as to *Christy Lenhardt* (Attachments: # 1 Affidavit)(Kretchmar, Stuart) (Entered: 09/11/2019) |
| 10/09/2019 | 97 | MOTION by Defendants Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time to file answer regarding amended document 56 (Newman, Sarah) (Entered: 10/09/2019) |
| 10/09/2019 | 98 | NOTICE of Motion by Sarah Hughes Newman for presentment of motion for extension of time to file answer 97 before Honorable Rebecca R. Pallmeyer on 10/16/2019 at 08:45 AM. (Newman, Sarah) (Entered: 10/09/2019) |
| 10/10/2019 | 99 | ANSWER to amended complaint by Drew Beck(Kozar, Amanda) (Entered: 10/10/2019) |
| 10/10/2019 | 100 | MINUTE entry before the Honorable Sheila M. Finnegan: All matters relating to the referral having been completed, the referral is closed.Mailed notice (sxw, ) (Entered: 10/10/2019) |
| 10/16/2019 | 101 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Plaintiff's motion for default judgment as to Christy Lenhardt 96 is stricken without prejudice. Defendant Christy Lenhardt's answer shall be filed by 11/13/19. Discovery will commence on 11/13/19. All fact discovery shall be noticed in time to be completed by 4/30/20. Defendants' motion for extension of time to file answer 97 is granted to 10/23/19. Status hearing set for 1/16/20 at 9:00 a.m., at which time the court will entertain a request for adjustment of the discovery close date if necessary. The court expects any such request to be accompanied by an agreed detailed schedule for completion of necessary discovery. Notice mailed by judge's staff (ntf, ) (Entered: 10/16/2019) |
| 10/22/2019 | 102 | ANSWER to amended complaint *and affirmative defenses* by Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi(Newman, Sarah) (Entered: 10/22/2019) |
| 11/05/2019 | 103 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status and Rule 16 conference set for 11/6/19 is stricken and re–set to 1/16/20 at 9:00 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 11/05/2019) |
| 11/13/2019 | 104 | ANSWER to amended complaint *and Affirmative Defense* by Christy Lenhardt(Compton, Michael) (Entered: 11/13/2019) |
| 12/03/2019 | 105 | MOTION by Plaintiff Benahdam Hurt to strike answer to amended complaint 104 (Kretchmar, Stuart) (Entered: 12/03/2019) |
| 12/09/2019 | 106 | NOTICE of Motion by Stuart Randolph Kretchmar for presentment of motion to strike 105 before Honorable Rebecca R. Pallmeyer on 12/16/2019 at 09:00 AM. (Kretchmar, Stuart) (Entered: 12/09/2019) |
| 12/16/2019 | 107 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion hearing held. Plaintiff's motion to strike the answer of Defendant Christy Lenhardt pursuant to Rule 12(f) 105 is denied, but by agreement Defendant Lenhardt will produce a copy of her plea agreement or the transcript of the proceeding. Notice mailed by judge's staff (ntf, ) (Entered: 12/16/2019) |
| 01/07/2020 | 108 | MOTION by Attorney David Burtker and Michael Compton to withdraw as attorney for Christy Lenhardt. New address information: Christy Lenhardt, 273 Paine St., South |

| | | |
|---|---|---|
| | | Elgin, IL 60177 (Attachments: # 1 Exhibit)(Compton, Michael) (Entered: 01/07/2020) |
| 01/07/2020 | 109 | NOTICE of Motion by Michael Franklin Compton for presentment of motion to withdraw as attorney 108 before Honorable Rebecca R. Pallmeyer on 1/16/2020 at 09:00 AM. (Compton, Michael) (Entered: 01/07/2020) |
| 01/07/2020 | 110 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Attorney David Burtker and Michael Compton to withdraw as attorney for Christy Lenhardt. New address information: Christy Lenhardt, 273 Paine St., South Elgin, IL 60177 108 (Kretchmar, Stuart) (Entered: 01/07/2020) |
| 01/07/2020 | 111 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Attorney David Burtker and Michael Compton to withdraw as attorney for Christy Lenhardt. New address information: Christy Lenhardt, 273 Paine St., South Elgin, IL 60177 108 *(Amended to correct caption)* (Kretchmar, Stuart) (Entered: 01/07/2020) |
| 01/14/2020 | 112 | MOTION by Plaintiff Benahdam Hurt to withdraw response in opposition to motion, 110 (Kretchmar, Stuart) (Entered: 01/14/2020) |
| 01/15/2020 | 113 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion to withdraw his response in opposition to Defendant Lenhardt's attorneys' motion to withdraw 112 is granted. Defendant Christy Lenhardt's motion to withdraw as attorney of record 108 is granted. Attorneys David C. Burtker, Michael Franklin Compton, and Kenneth Dawson Seale are given leave to withdraw as counsel for Defendant. Status hearing set for 1/16/2020 is stricken and re–set to 1/23/2020 at 9:00 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 01/15/2020) |
| 01/22/2020 | 114 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: By agreement, status hearing set for 1/23/2020 is stricken and re–set to 2/24/2020 at 9:30 a.m. Notice mailed by judge's staff (ntf, ) (Entered: 01/22/2020) |
| 02/13/2020 | 115 | ATTORNEY Appearance for Defendants Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi by Mary Alice Johnston (Johnston, Mary) (Entered: 02/13/2020) |
| 02/24/2020 | 116 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Status hearing held and continued to 4/28/2020 at 9:00 a.m. All fact discovery shall be noticed in time to be completed by 5/29/2020. Expert discovery, if any, shall be completed by 6/30/2020. Notice mailed by judge's staff (ntf, ) (Entered: 02/24/2020) |
| 03/16/2020 | 117 | ORDER Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (pj, ) (Entered: 03/17/2020) |
| 03/30/2020 | 118 | ORDER Seconded Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20–0012, entered on March 17, 2020, and General Order 20–0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice. (docket4, ) (Entered: 03/31/2020) |
| 04/24/2020 | 119 | ORDER Third Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket1, ) (Entered: 04/27/2020) |
| 05/18/2020 | 120 | STATUS Report by Benaham Hurt (Kretchmar, Stuart) (Entered: 05/18/2020) |
| 05/26/2020 | 121 | ORDER ORDER Fourth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in |

| | | |
|---|---|---|
| | | civil cases. For non−emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket1, ) (Entered: 05/26/2020) |
| 06/01/2020 | 122 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their joint written status report and directs that all discovery be completed on or before September 1, 2020. The parties shall submit a further joint status report, also on September 1. Notice mailed by judge's staff (ntf, ) (Entered: 06/01/2020) |
| 06/26/2020 | 123 | MOTION by Plaintiff Benahdam Hurt for discovery *to Deem Rule 36 Requested Facts Admitted* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kretchmar, Stuart) (Entered: 06/26/2020) |
| 06/29/2020 | 124 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion to deem Rule 36 facts admitted 123 is entered and continued. Absent full and complete responses within seven days, by 7/6/2020, the motion will be granted and the statements deemed admitted for purposes of this case. Notice mailed by judge's staff (ntf, ) (Entered: 06/29/2020) |
| 07/06/2020 | 125 | RESPONSE by Defendant Christy Lenhardt *to Rule 36 Requests for Admission* (Attachments: # 1 Notice of Filing)(Brody, Steven) (Entered: 07/06/2020) |
| 07/06/2020 | 126 | ATTORNEY Appearance for Defendant Christy Lenhardt by Steven Jay Brody . (Attachments: # 1 Notice of Filing)(Brody, Steven) (Entered: 07/06/2020) |
| 07/07/2020 | 127 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff is directed promptly to advise the court whether Ms. Lenhardt's response to the Rule 36 admissions renders his pending motion 123 moot. Notice mailed by judge's staff (ntf, ) (Entered: 07/07/2020) |
| 07/10/2020 | 128 | ORDER Fifth Amended General Order 20−0012 IN RE: CORONAVIRUS COVID−19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in−person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in−court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk3, Docket) (Entered: 07/10/2020) |
| 07/27/2020 | 129 | NOTICE by Benahdam Hurt re order on motion for discovery,, set motion and R&R deadlines/hearings, 124 , Response 125 , MOTION by Plaintiff Benahdam Hurt for discovery *to Deem Rule 36 Requested Facts Admitted* 123 (Kretchmar, Stuart) (Entered: 07/27/2020) |
| 07/31/2020 | 130 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Pursuant to notice 129 , Plaintiff's motion to deem facts admitted 123 is withdrawn. Notice mailed by judge's staff (ntf, ) (Entered: 07/31/2020) |
| 08/05/2020 | 131 | MOTION to Defer Initial Discovery Response Deadline (MIDP) *for enlargement of time*, filed by Plaintiff Benahdam Hurt. (Kretchmar, Stuart) (Entered: 08/05/2020) |
| 08/06/2020 | 132 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion to defer initial discovery response deadline [MIDP] 131 is granted in part and denied in part. The MIDP program is no longer applicable, but the parties are expected to complete all discovery (not just initial discovery) promptly. The deadline for doing so is extended to December 1, 2020. The parties are directed to submit a joint written status report on their progress on or before September 30, 2020. Notice mailed by judge's staff (ntf, ) (Entered: 08/06/2020) |
| 08/21/2020 | 133 | MOTION by Plaintiff Benahdam Hurt for settlement *with Defendant Christy Lenhardt* (Attachments: # 1 Exhibit, # 2 Affidavit)(Kretchmar, Stuart) (Entered: 08/21/2020) |
| 08/21/2020 | 134 | NOTICE of Motion by Stuart Randolph Kretchmar for presentment of (Kretchmar, Stuart) (Entered: 08/21/2020) |
| 08/25/2020 | 135 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's stipulated motion for dismissal of Christy Lenhardt with prejudice and settlement agreement 133 is granted. Notice mailed by judge's staff (ntf, ) (Entered: 08/25/2020) |

| 09/30/2020 | 136 | STATUS Report *(joint)* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 09/30/2020) |
|---|---|---|
| 10/07/2020 | 137 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: In their recent report, the parties advised that they intended to seek an extension of the discovery close date. As no such motion has been filed, the parties are directed to submit a further written status report on 12/1/2020. Notice mailed by judge's staff (ntf, ) (Entered: 10/07/2020) |
| 10/07/2020 | 138 | MOTION by Plaintiff Benahdam Hurt for extension of time to complete discovery (Kretchmar, Stuart) (Entered: 10/07/2020) |
| 10/08/2020 | 139 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion for an enlargement of time to complete fact discovery pursuant to Rule 6(b) 138 is granted to and including 2/1/2021. To ensure continued progress, the court directs the parties to submit joint written status reports on 12/1/2020 and on 1/4/2021, identifying specifically what discovery has been completed and what remains outstanding. Notice mailed by judge's staff (ntf, ) (Entered: 10/08/2020) |
| 11/25/2020 | 140 | MOTION by Plaintiff Benahdam Hurt for extension of time (Attachments: # 1 Exhibit)(Kretchmar, Stuart) (Entered: 11/25/2020) |
| 11/30/2020 | 141 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion for extension of the discovery close date 140 is denied without prejudice. From what the court can determine, the only discovery progress that has been made since the last extension is the production of documents by Defendant on October 5. Since that date, it appears no further discovery has been initiated, nor have depositions been noticed. The discovery schedule has already been extended three times. See Docket Entries 116 , 132 , 139 . Most recently, the court directed that the parties submit a joint written status report on 12/1/2020 and again on 1/4/2021, "identifying specifically what discovery has been completed and what remains outstanding." The date for the 12/1/2020 report is extended by seven days, to 12/8/2020. The court expects the parties to identify the documents, if any, yet to be produced; the names of individuals who must be deposed, and the subject matter of those depositions; and the dates, either agreed or at least proposed, on which those depositions will be taken. The court is sensitive to the difficulties generated by Plaintiff's homelessness and by the pandemic. As this case has been pending more than three years, however, memories will likely soon fade and witnesses may become unavailable. After receiving the detailed report described here, the court would entertain an extension of the discovery schedule only for specific limited purposes identified as necessary in the report. Notice mailed by judge's staff (ntf, ) (Entered: 11/30/2020) |
| 12/08/2020 | 142 | STATUS Report *(Joint)* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 12/08/2020) |
| 12/08/2020 | 143 | MOTION by Plaintiff Benahdam Hurt for extension of time to complete discovery (Kretchmar, Stuart) (Entered: 12/08/2020) |
| 12/10/2020 | 144 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion for extension of time for discovery 143 is granted. Plaintiff will promptly serve requests for records from the Elgin Mental Health Center, the Chester Mental Health Center, Mercy Hospital and Mercy Hospital Psychiatric Center, Jackson Park Hospital, Edwards Hospital, Streamwood Mental Health Center, the Kane County State's Attorney, FaceBook, Inc., the Office of Inspector General of the Illinois Department of Human Services, and the Illinois State Police. Defendant Javed will promptly serve additional discovery requests to Plaintiff and to Defendant Lenhardt, and will promptly issue third–party subpoenas. The parties will complete depositions of the following witnesses no later than March 31, 2021: Dr. James Corcoran, Linda Neidlkoff, Joanne Langley, Carol Borsinger, Tom Comeford, Robert Hamlin, William Epperson, Dr. James Hardy, Officer Ricardo Sandoval, Officer Mathew Myers, Ryma Jackson, Page (Machinski) Sweeny, and John Does #1 and #2. The court directs that the dates for these deposition be set forth in the status report due on January 4, 2021. The parties will complete depositions of Diane Hogan, Colleen Delaney, Dr. Kareemi, Dr. Javed, Drew Beck, Christy Lenhardt, and Benahdam Hurt by May 28, 2021. Dispositive motions, if any, shall be filed by June 30, 2021. Notice mailed by judge's staff (ntf, ) (Entered: 12/10/2020) |
| 01/04/2021 | 145 | STATUS Report *(joint, regarding discovery)* by Drew Beck (Kozar, Amanda) (Entered: 01/04/2021) |

| 01/05/2021 | 146 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The parties are directed to submit a further written status report on or before March 31, 2021. Mailed notice (vcf, ) (Entered: 01/05/2021) |
|---|---|---|
| 03/26/2021 | 147 | MOTION by Defendants Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time to complete discovery *(JOINT MOTION)* (Attachments: # 1 Notice of Filing)(Johnston, Mary) (Entered: 03/26/2021) |
| 03/29/2021 | 148 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Parties' joint motion for extension of discovery deadline 147 is granted to and including 5/28/2021. Should this extension prove insufficient to obtain necessary documents, the parties must nevertheless be prepared to proceed with and complete any necessary depositions. Parties are directed to file a joint status report by 6/4/2021. Notice mailed by judge's staff (ntf, ) (Entered: 03/29/2021) |
| 04/01/2021 | 149 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing set for 4/6/2021 at 9:15 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 04/01/2021) |
| 04/06/2021 | 150 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held and continued to 5/27/2021 at 9:15 a.m. All depositions shall be completed by 5/28/2021. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 04/06/2021) |
| 04/20/2021 | 151 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing set for 5/7/2021 at 10:15 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 04/20/2021) |
| 05/07/2021 | 152 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held and continued to 5/24/2021 at 9:15 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 05/07/2021) |
| 05/24/2021 | 153 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held. Parties are directed to file a joint written status report by 6/17/2021. Notice mailed by judge's staff (ntf, ) (Entered: 05/24/2021) |
| 06/17/2021 | 154 | STATUS Report *(Joint)* by Illinois Department of Human Services (Johnston, Mary) (Entered: 06/17/2021) |
| 06/21/2021 | 155 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court acknowledges the parties' recent joint status report and directs, as they have requested, that a further report be submitted on or before July 8, to provide the court with updated information on discovery progress.Notices mailed by judge's staff notice (rbf, ) (Entered: |

| | | |
|---|---|---|
| | | 06/21/2021) |
| 07/08/2021 | 156 | STATUS Report *(JOINT)* by Illinois Department of Human Services (Johnston, Mary) (Entered: 07/08/2021) |
| 07/12/2021 | 157 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: At the parties' request, set forth in their recent status report, they are directed to submit a further joint status report on July 29, 2021. Plaintiff is free to file a motion to compel, after conferring with defense counsel pursuant to Rule 37.Notices mailed by judge's staff. (rbf, ) (Entered: 07/12/2021) |
| 07/16/2021 | 158 | MOTION by Plaintiff Benahdam Hurt to compel *third party respondents* (Kretchmar, Stuart) (Entered: 07/16/2021) |
| 07/19/2021 | 159 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephonic status hearing set for 7/27/2021 at 09:30 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff. (rbf, ) (Entered: 07/19/2021) |
| 07/24/2021 | 160 | MOTION by Plaintiff Benahdam Hurt to compel *Memorandum in Support* (Attachments: # 1 Exhibit A Hurt Subpoena & Rider, # 2 Exhibit B Hurt Subpoena & Rider (ISP), # 3 Exhibit E Nikolov Transcript, # 4 Exhibit F Javed Transcript, # 5 Exhibit G Boston Transcript, # 6 Exhibit H Canon Receipt, # 7 Exhibit I Respondent Email, # 8 Exhibit J Plaintiff email, # 9 Exhibit K Dworkin email, # 10 Exhibit L Email re AG Computer, # 11 Exhibit M Cousel email, # 12 Exhibit N, # 13 Exhibit P, # 14 Exhibit Q, # 15 Exhibit R, # 16 Exhibit S)(Kretchmar, Stuart) (Entered: 07/24/2021) |
| 07/27/2021 | 161 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephonic motion hearing held on 07/27/2021 regarding plaintiff's motion to compel [158, 160]. Plaintiff shall serve another subpoena within 24 hours outlining all materials he seeks, including but not limited to materials that ISP retrieved for purposes of this investigation and was available including computer records, files and hard drives that are now reported to be in storage. Defendants and subpoena respondent shall comply with subpoena and all outstanding discovery requests by no later than 09/03/2021. Plaintiff's motion to compel 158 , 160] is entered and continued to 09/10/2021 at 9:30 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices mailed by judge's staff. (rbf, ) (Entered: 07/27/2021) |
| 07/29/2021 | 162 | STATUS Report *(Joint)* by Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi (Johnston, Mary) (Entered: 07/29/2021) |
| 09/06/2021 | 163 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephonic status hearing set for 09/10/2021 is stricken and reset for 9/16/2021 at 10:00 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices mailed by judge's staff. (rbf, ) (Entered: 09/06/2021) |
| 09/14/2021 | 164 | MINUTE entry before the Honorable Rebecca R. Pallmeyer:By agreement of the parties, the 09/16/2021 telephonic status hearing is stricken and reset for 9/21/2021 at 09:15 a.m. Members of the public and media will be able to call in to listen to this |

| | | |
|---|---|---|
| | | hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notices mailed by judge's staff. (rbf, ) (Entered: 09/14/2021) |
| 09/21/2021 | 165 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephonic status hearing held on 09/21/2021. The court directs the parties to meet and confer and discuss what outstanding discovery remains as it pertains to plaintiffs' motions to compel [158, 160]. After the meet and confer, parties shall submit an agreed proposed order to this court's proposed order inbox giving directives to the Illinois State Police to turn over hard drive(s) and computer records pertaining to this litigation to the proposed third–party discovery as stated in open court. Counsel shall be prepared to present oral arguments on plaintiffs' motion to compel [158, 160] on 10/08/2021 at 1:30 p.m. The motion hearing will be conducted telephonically. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. (rbf, ) (Entered: 09/21/2021) |
| 10/07/2021 | 166 | MOTION by Plaintiff Benahdam Hurt to supplement *to Memo in Support of Motion To Compel* (Kretchmar, Stuart) (Entered: 10/07/2021) |
| 10/08/2021 | 167 | NOTICE by Benahdam Hurt *of subpoena* (Attachments: # 1 Exhibit subpoena)(Kretchmar, Stuart) (Entered: 10/08/2021) |
| 10/08/2021 | 169 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephonic motion hearing held regarding Plaintiff's motion(s) to compel [158, 160, 166]. As discussed on the record, the motions are granted as follows: the court directs Defendants to produce redacted materials relating to any allegations of sexual abuse or sexual harassment of patients at EMHC by Ms. Christine Lehnhardt, redacted to eliminate any reference to the identity of persons who were confined at EMHC, and labeled for review by "Attorneys' Eyes Only." The court sustains Defendants' objection to production of all "morning meeting minutes," but will direct Plaintiff to make a targeted additional request for such minutes for particular time frames, specifically, a week prior to or following any of the alleged incidents relating to Plaintiff. Should no such records exist, Defendants are directed to produce a sworn statement to that effect. The court directs the production of documents regarding OIG reports and complaints of sexual harassment or sexual abuse, whether substantiated or unsubstantiated, involving any of the named Defendants, as well as the raw number of such complaints, whether substantiated or unsubstantiated, during the relevant time frame. With regards to the investigative records regarding the 2006 escape of Angelo Rotunno, the court has been informed that document production has already been made and review is underway. All additional document production shall be made within 21 days of the October 8, 2021 hearing. Proposed narrowed windows for the production of morning meeting minutes should be made within 7 days. By 11/19/2021, counsel shall jointly submit a proposed scheduling order for all depositions in both this case and in case 18cv334. (rbf, ) (Entered: 10/15/2021) |
| 10/15/2021 | 168 | TRANSCRIPT OF PROCEEDINGS held on 10/8/21 before the Honorable Rebecca R. Pallmeyer. Order Numbers: 41831, 41832. Court Reporter Contact Information: Frances Ward – wardofficialtranscripts@gmail.com – (312)435–5561.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. |

| | | | |
|---|---|---|---|
| | | | Redaction Request due 11/5/2021. Redacted Transcript Deadline set for 11/15/2021. Release of Transcript Restriction set for 1/13/2022. (Ward, Frances) (Entered: 10/15/2021) |
| 10/18/2021 | 170 | ORDER Signed by the Honorable Rebecca R. Pallmeyer on 10/18/2021.(rbf, ) (Entered: 10/18/2021) |
| 10/20/2021 | 171 | MOTION by Defendant Illinois Department of Human Services for extension of time *to produce documents (morning meeting minutes)* (Johnston, Mary) (Entered: 10/20/2021) |
| 10/21/2021 | 172 | RESPONSE by Benahdam Hurt to MOTION by Defendant Illinois Department of Human Services for extension of time *to produce documents (morning meeting minutes)* 171 (Kretchmar, Stuart) (Entered: 10/21/2021) |
| 10/21/2021 | 173 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants seek an extension of time in which to produce the "morning meeting minutes" which were the subject of extensive discussion at a discovery conference held on October 8, 2021. At that conference, the court sustained Defendants' objection to production of morning meeting minutes produced over a several–month–long time span, as counsel's explanation satisfied the court that the parties' search terms would likely have "hit" on those morning meeting minutes likely to contain information relevant to this case. The court did, however, permit Plaintiff to make a more targeted request that is, for morning meeting minutes during particular time frames, specifically, a week prior to or following any of the alleged incidents relating to Plaintiff. It appears Plaintiff has ignored that direction, with predictable results: Plaintiff has requested minutes for meetings over some eight months, and Defendants contend they cannot comply with that request in the tight time frame the court has set. The court agrees. To the extent Plaintiff believes eight months' worth of minutes are within "the narrowed periods ordered by the court," as stated in his October 21, 2021 response 172 , the court respectfully disagrees. The request for eight months of morning meeting minutes is stricken. Defendants' motion for an extension of time to produce these documents is stricken as moot 171 . Defendants are not seeking additional time to comply with Plaintiff's remaining requests, so many of the arguments in Plaintiff's response appear to be moot as well. (rbf, ) (Entered: 10/21/2021) |
| 11/19/2021 | 174 | STATUS Report *Joint* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 11/19/2021) |
| 11/22/2021 | 175 | ORDER signed by the Honorable Rebecca R. Pallmeyer: Enter proposed discovery schedule, modified as set forth in this order. The court grants leave to take the deposition of incarcerated persons (Plaintiff Hurt and Plaintiff Owens). The parties are directed to file monthly written status reports on the 15th day of each month. As set forth below, the court directs that Plaintiff proceed promptly with subpoenas to third–party medical providers and promptly identify the John Doe witnesses, and that both parties proceed immediately with the depositions of key witnesses. Fact discovery will be completed no later than May 31, 2022; the court anticipates that expert discovery will have commenced by then as well. (rbf, ) (Entered: 11/22/2021) |
| 12/15/2021 | 176 | STATUS Report *(Joint)* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 12/15/2021) |
| 12/22/2021 | 177 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their written status report and directs them to file a further report as scheduled before January 15, 2022. (rbf, ) (Entered: 12/22/2021) |
| 01/14/2022 | 178 | STATUS Report *joint* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 01/14/2022) |
| 01/18/2022 | 179 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their recent joint status report and directs that next month's report include firm dates on which an additional ten witnesses have been or will be deposed. (rbf, ) (Entered: 01/18/2022) |
| 02/15/2022 | 180 | STATUS Report *(Joint)* by Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi (Johnston, Mary) (Entered: 02/15/2022) |
| 02/16/2022 | 181 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their written status report and directs them to file a further report as scheduled before March 15, 2022. (rbf, ) (Entered: 02/16/2022) |

| 03/15/2022 | 182 | STATUS Report *Joint, March 15* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 03/15/2022) |
|---|---|---|
| 03/16/2022 | 183 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court thanks the parties for their written status report and directs them to file a further report as scheduled before April 18, 2022. The court also notes Plaintiff's intention to file a supplemental status report within the next week, if necessary for resolution of discovery disputes. Mailed notice (mjc, ) (Entered: 03/16/2022) |
| 04/02/2022 | 184 | STATUS Report *Supplement* by Benahdam Hurt (Attachments: # 1 Exhibit Privilege Log)(Kretchmar, Stuart) (Entered: 04/02/2022) |
| 04/04/2022 | 185 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court construes Plaintiff's recent supplemental status report as a motion (a) to overrule, as waived, the attorney−client privilege objection that "non−party IDHS" has asserted over various documents; (b) to compel production of morning meeting notes "from three key time periods" (Plaintiff has not identified the relevant time periods, but estimates they will comprise, in total "approximately twenty days"); (c) seeking guidance from the court concerning privilege objections that may be "complex and dubious"; (d) to bar the presence of IDHS general counsel at witness depositions; (e) to permit the presence of Plaintiff's paralegal at all such depositions at "Plaintiffs' counsel's sole discretion"; and (f) to bar the Illinois Attorney General from representing non−party witnesses. With respect to (a) and (d), the court notes that IDHS is in fact a party in the Owens case, and that general counsel for a party is presumptively entitled to attend depositions. With respect to (c), the court declines to issue advisory opinions on privilege matters, but will entertain a request to compel production of identified documents, if appropriate. A telephone status conference is set for 4/7/2022 at 10:30 a.m. to discuss issues raised by this report. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (mjc, ) (Entered: 04/04/2022) |
| 04/07/2022 | 186 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone conference convened. Plaintiff's objection to the presence of IDHS general counsel at depositions is overruled without prejudice to a more specific request for a protective order. Defendants' objection, if any, to the presence of Plaintiff's paralegal at depositions is overruled without prejudice to a more specific request for a protective order. Plaintiff's objection to representation of non−party witnesses by the Illinois Attorney General is sustained in that Defendants agree that non−party witnesses will be represented, if at all, by attorneys who have no involvement in the defense of this case. The timeliness objection to Defendant's assertion of attorney−client privilege is overruled without prejudice to substantive objections to assertion of the privilege. The court orders production, within 14 days, of morning meeting minutes from the following dates: December 19, 20, 21, 23, 26, 27, 28, 29, and 30, 2016; June 1 and 2, 2017; and July 3, 4, and 5, 2017. Date for submission of April status report is stricken. This case is referred to Magistrate Judge Finnegan for a settlement conference, to take place at the conclusion of fact discovery. Further written status report will be due on May 16, 2022. Mailed notice (mjc, ) (Entered: 04/07/2022) |
| 04/07/2022 | 187 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Sheila M. Finnegan for the purpose of holding proceedings related to: settlement conference.(mjc, )Mailed notice. (Entered: 04/07/2022) |
| 04/15/2022 | 188 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conference is set on 4/28/2022 at 3:15 p.m. Mailed notice (sxw) (Entered: 04/15/2022) |
| 04/28/2022 | 189 | MINUTE entry before the Honorable Sheila M. Finnegan: Preliminary settlement conference (by phone) held on 4/28/2022. Plaintiffs are to send a settlement letter by 6/7/2022, to which Defendants are to respond by 7/5/2022. Letters are to be sent by email to chambers_finnegan@ilnd.uscourts.gov and copy opposing counsel. Settlement conference (by video) is tentatively set for 7/12/2022 at 10:30 a.m. subject to the parties confirming this date by 5/3/2022 in an email to the above email address. The parties are directed to review and comply with Judge Finnegan's Standing Order |

| | | for Settlement Conferences (available on the court's website at www.ilnd.uscourts.gov by selecting the link for Magistrate Judge Finnegan and then the link for "Settlement Conferences"). Mailed notice (sxw) (Entered: 04/28/2022) |
|---|---|---|
| 05/04/2022 | 190 | MINUTE entry before the Honorable Sheila M. Finnegan: The parties have confirmed the settlement conference set on 7/12/2022 at 10:30 a.m. All other dates set on 4/28/2022 to remain. Mailed notice (sxw) (Entered: 05/04/2022) |
| 05/12/2022 | 191 | STATUS Report *Joint* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 05/12/2022) |
| 05/13/2022 | 192 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court has reviewed the parties' recent report and, at their request, extends the discovery close date to 6/30/2022. Requirement of monthly status reports stands. Mailed notice (lf, ) (Entered: 05/13/2022) |
| 06/16/2022 | 193 | STATUS Report *joint* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 06/16/2022) |
| 06/17/2022 | 194 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court has reviewed the parties' recent status report. Plaintiff has requested a further extension of the discovery close date, "to determine whether subpoenaed witnesses may be deposed and to allow responses to subpoena for documents issued by both Plaintiffs and Defendants." The court continues to be troubled by the many extensions that have been requested in this case, but grants this one with the understanding that all written and oral fact discovery will be complete no later than July 31, 2022. The court understands that Plaintiff will disclose experts pursuant to Rule 26(a)(2) no later than July 15. The court directs that the parties proceed immediately with expert discovery, that Defendants disclose experts, if any, no later than August 19, and that dispositive motions, if any, be filed on or before September 1, 2022. Mailed notice. (kp, ) (Entered: 06/17/2022) |
| 07/05/2022 | 195 | MOTION by Plaintiff Benahdam Hurt to compel *Depositions* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Cecala, Joseph) (Entered: 07/05/2022) |
| 07/05/2022 | 196 | NOTICE of Motion by Joseph John Cecala for presentment of motion to compel 195 before Honorable Rebecca R. Pallmeyer on 7/6/2022 at 10:00 AM. (Cecala, Joseph) (Entered: 07/05/2022) |
| 07/05/2022 | 197 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Hearing on Plaintiff's emergency motion for an order to compel witness depositions 195 is set by telephone on 7/6/2022 at 10:00 a.m. Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Notice mailed by judge's staff (ntf, ) (Entered: 07/05/2022) |
| 07/06/2022 | 198 | MOTION by Respondents James P Corcoran, Joanne Langley for protective order *and Response to Plaintiff's Motion to Compel (REDACTED)* (Attachments: # 1 Exhibit Email from Respondents' Counsel to Plaintiff, # 2 Exhibit Email from Plaintiff's Counsel to Respondents', # 3 Exhibit Email from Respondents' Counsel Requesting 37.2 Conference, # 4 Exhibit Email from Plaintiff's Counsel Regarding Sanctions, # 5 Exhibit Letter from Respondents' Counsel re: 37.2 Conference of 6/27/2022, # 6 Declaration Declaration of Dr. James P. Corcoran)(Robbin, Daniel) (Entered: 07/06/2022) |
| 07/06/2022 | 199 | ATTORNEY Appearance for Respondents James P Corcoran, Joanne Langley by Daniel Noah Robbin (Robbin, Daniel) (Entered: 07/06/2022) |
| 07/06/2022 | 200 | SEALED DOCUMENT by Respondents James P Corcoran, Joanne Langley *Motion for Protective Order* (Robbin, Daniel) (Entered: 07/06/2022) |
| 07/06/2022 | 201 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone emergency motion hearing held. For reasons stated on the record, plaintiff's motion for an order to compel witness depositions of James P. Corcoran, M.D., and Joanne Langley, PH.D., and for sanctions under FRCP Rule 45 195 is granted. Dr. Corcoran's deposition will |

| | | |
|---|---|---|
| | | consume no more than three hours. The parties agree that Plaintiff's counsel will not question Ms. Langley seeking personal details concerning allegations she has made on her own behalf. Mailed notice (mjc, ) (Entered: 07/06/2022) |
| 07/07/2022 | 202 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: James Corcoran and Joanne Langley's motion for protective order 198 is granted in part and denied in part, as set forth in the entry yesterday 201 . That entry is amended to reflect that the court is not at this time ordering any sanctions, but encourages the parties to contact the court should there be disagreements during the course of the depositions. Mailed notice (mjc, ) (Entered: 07/07/2022) |
| 07/07/2022 | 203 | TRANSCRIPT OF PROCEEDINGS held on 7/6/22 before the Honorable Rebecca R. Pallmeyer. Order Number: 43623. Court Reporter Contact Information: Frances Ward – wardofficialtranscripts@gmail.com – 312.435.5561.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 7/28/2022. Redacted Transcript Deadline set for 8/8/2022. Release of Transcript Restriction set for 10/5/2022. (Ward, Frances) (Entered: 07/07/2022) |
| 07/11/2022 | 205 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone conference held with counsel for the parties (separately) on 7/11/2022 for discussion of settlement issues in advance of tomorrow's settlement conference. Mailed notice (sxw) (Entered: 07/13/2022) |
| 07/12/2022 | 204 | MINUTE entry before the Honorable Sheila M. Finnegan: Settlement conference held on 7/12/2022. Mailed notice (sxw) (Entered: 07/13/2022) |
| 07/13/2022 | 206 | MINUTE entry before the Honorable Sheila M. Finnegan: Minute entry 204 is amended as follows: Settlement conference held (by video) on 7/12/2022. The parties were unable to reach a settlement. The referral will remain open so the parties may resume negotiations with the Court's assistance at a later time if they are in agreement to do so. Mailed notice (sxw) (Entered: 07/13/2022) |
| 07/16/2022 | 207 | STATUS Report *joint* by Benahdam Hurt (Kretchmar, Stuart) (Entered: 07/16/2022) |
| 07/21/2022 | 208 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court has reviewed the parties' joint status report. To streamline briefing and allow each side to respond to the other side's argument, the court hereby directs the parties to file cross–motions for summary judgment on September 1, 2022; cross–replies will be due on or before October 3, 2022. Any motion for ruling on questions certified during Ms. Langley's deposition should be filed no later than July 25, 2022. Mailed notice (mjc, ) (Entered: 07/21/2022) |
| 07/25/2022 | 209 | MOTION by Plaintiff Benahdam Hurt to compel *Joanne Langley, and for sanctions* (Attachments: # 1 Exhibit Ex. 1, transcript, # 2 Exhibit Ex. 2, transcript, # 3 Exhibit Ex. 3, list of questions, # 4 Exhibit Ex. 4, invoice)(Kretchmar, Stuart) (Entered: 07/25/2022) |
| 07/26/2022 | 210 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: A telephone motion hearing is set for 8/2/22 at 10:15 a.m. on Plaintiff's motion to compel 209 . Members of the public and media will be able to call in to listen to this hearing. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice (mjc, ) (Entered: 07/26/2022) |

| 07/29/2022 | 211 | MOTION by Respondent Joanne Langley to file instanter *Response to Plaintiff's Motion to Compel 209* (Attachments: # 1 Exhibit Proposed Response)(Robbin, Daniel) (Entered: 07/29/2022) |
| --- | --- | --- |
| 07/30/2022 | 212 | REPLY by Benahdam Hurt to MOTION by Respondent Joanne Langley to file instanter *Response to Plaintiff's Motion to Compel 209* 211 (Kretchmar, Stuart) (Entered: 07/30/2022) |
| 08/02/2022 | 213 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone motion hearing held. For the reasons stated on the record, Plaintiff's motion to compel is granted in part and denied in part. Dr. Langley will provide written answers to the questions posed on page 10 of her response is granted; Dr. Langley is directed to answer those questions within 14 days, that is, by 8/16/2022. The court suspects this motion would not have been necessary had either side accepted the court's direct invitation to make a phone call during the deposition. Plaintiff's request for sanctions is denied. Mailed notice. (cp, ) (Entered: 08/02/2022) |
| 08/22/2022 | 214 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time *for all Parties to file motions for summary judgment (Unopposed)* (Johnston, Mary) (Entered: 08/22/2022) |
| 08/23/2022 | 215 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion 214 is granted. Date for parties' cross–motions for summary judgment is extended to September 15, 2022. Parties are expected to submit a proposed agreed briefing schedule together with their motions. Mailed notice. (cp, ) (Entered: 08/23/2022) |
| 09/15/2022 | 216 | MOTION by Defendants Faizal Kareemi, Diana Hogan, Drew Beck, Coleen Delaney, Hasina Javed for summary judgment (Johnston, Mary) (Entered: 09/15/2022) |
| 09/15/2022 | 217 | MEMORANDUM by Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi in support of motion for summary judgment 216 *(Joint)* (Johnston, Mary) (Entered: 09/15/2022) |
| 09/15/2022 | 218 | RULE 56 Statement of Material Facts (Joint) Statement by Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi regarding motion for summary judgment 216 (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Exhibit Exhibit I, # 10 Exhibit Exhibit J)(Johnston, Mary) (Entered: 09/15/2022) |
| 09/15/2022 | 219 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to file a joint statement of facts and excess facts in support of their joint motion for summary judgment (Unopposed) (Johnston, Mary) (Entered: 09/15/2022) |
| 09/15/2022 | 220 | MOTION by Plaintiff Benahdam Hurt for summary judgment , MOTION by Plaintiff Benahdam Hurt to seal document *Summary Judgment* (Kretchmar, Stuart) (Entered: 09/15/2022) |
| 09/15/2022 | 221 | MOTION by Plaintiff Benahdam Hurt to supplement *Plaintiffs' Joint Summary Judgment* (Kretchmar, Stuart) (Entered: 09/15/2022) |
| 09/16/2022 | 222 | Rule 56 Statement of Material Facts STATEMENT by Benahdam Hurt (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit D, # 6 Exhibit D, # 7 Exhibit D, # 8 Exhibit E, # 9 Exhibit F, # 10 Exhibit G, # 11 Exhibit H, # 12 Exhibit I, # 13 Exhibit I, # 14 Exhibit J, # 15 Exhibit K, # 16 Exhibit L, # 17 Exhibit M, # 18 Exhibit N, # 19 Exhibit O, # 20 Exhibit P, # 21 Exhibit Q, # 22 Exhibit R, # 23 Exhibit R, # 24 Exhibit S, # 25 Exhibit T, # 26 Exhibit U, # 27 Exhibit V, # 28 Exhibit W, # 29 Exhibit X, # 30 Exhibit Z, # 31 Exhibit AA, # 32 Exhibit BB, # 33 Exhibit DD, # 34 Exhibit EE, # 35 Exhibit FF, # 36 Exhibit GG, # 37 Exhibit HH, # 38 Exhibit II, # 39 Exhibit JJ, # 40 Exhibit KK, # 41 Exhibit LL, # 42 Exhibit MM, # 43 Exhibit NN, # 44 Exhibit OO, # 45 Exhibit PP)(Kretchmar, Stuart) (Entered: 09/16/2022) |
| 09/16/2022 | 223 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: By agreement, parties will submit cross–responses to the motions for summary judgment on November 10, 2022. Mailed notice. (cp, ) (Entered: 09/16/2022) |

| 09/16/2022 | [224](#) | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi Defendants' unopposed motion to seal Plaintiff's summary judgment filings due to sensitive information. (Johnston, Mary) (Entered: 09/16/2022) |
|---|---|---|
| 09/16/2022 | [225](#) | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion to seal plaintiff's summary judgment filings [224](#) is granted. The clerk of the court shall seal docket entries [220](#) , [221](#) , [222](#) , and 222−1 through 222−45. Mailed notice. (cp, ) (Entered: 09/16/2022) |
| 09/16/2022 | [226](#) | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendant's unopposed motion for leave to file a joint statement of facts in excess of 80 facts in support of Defendants' joint motion for summary judgment [219](#) is granted. Motion to supplement [221](#) is granted. Mailed notice (cp, ) (Entered: 09/16/2022) |
| 09/23/2022 | [227](#) | MOTION by Attorney Amanda L. Kozar to withdraw as attorney for Drew Beck. No party information provided (Kozar, Amanda) (Entered: 09/23/2022) |
| 09/23/2022 | [228](#) | WITHDRAWING *Amanda Kozar and Mary Johnston* as counsel for Defendant Drew Beck and substituting Marci L. Sahinoglu as counsel of record (Sahinoglu, Marci) (Entered: 09/23/2022) |
| 09/26/2022 | [229](#) | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion to withdraw Amanda Kozar as counsel for defendant [227](#) is granted. Attorney Amanda Leigh Kozar is terminated as counsel for defendant Beck. Mailed notice. (cp, ) (Entered: 09/26/2022) |
| 11/04/2022 | [230](#) | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time *for parties to file cross−responses in opposition to cross−motions for summary judgment.* (Johnston, Mary) (Entered: 11/04/2022) |
| 11/04/2022 | [231](#) | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time *for parties to file cross−responses in opposition to cross−motions for summary judgment.* [230](#) (Kretchmar, Stuart) (Entered: 11/04/2022) |
| 11/07/2022 | [232](#) | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court shares Plaintiff's frustration at the pace of this litigation but believes the brief extension Defendants have requested is justified for the reasons set forth in their motion. That motion [230](#) is granted. Mailed notice. (cp, ) (Entered: 11/07/2022) |
| 11/17/2022 | [233](#) | SEALED RESPONSE by Benahdam Hurt to memorandum in support of motion [217](#) , MOTION by Defendants Faizal Kareemi, Diana Hogan, Drew Beck, Coleen Delaney, Hasina Javed for summary judgment [216](#) (Kretchmar, Stuart) (Entered: 11/17/2022) |
| 11/17/2022 | [234](#) | SEALED RESPONSE by Benahdam Hurt to Rule 56 statement, [218](#) (Attachments: # [1](#) Exhibit A, # [2](#) Exhibit B, # [3](#) Exhibit C, # [4](#) Exhibit D, # [5](#) Exhibit E, # [6](#) Exhibit F, # [7](#) Exhibit G, # [8](#) Exhibit G, # [9](#) Exhibit H, # [10](#) Exhibit I)(Kretchmar, Stuart) (Entered: 11/17/2022) |
| 11/17/2022 | [235](#) | RESPONSE by Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemiin Opposition to MOTION by Plaintiff Benahdam Hurt for summary judgment MOTION by Plaintiff Benahdam Hurt to seal document *Summary Judgment* [220](#) (Johnston, Mary) (Entered: 11/17/2022) |
| 11/17/2022 | [236](#) | RESPONSE by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to statement,,, [222](#) *of material facts in support of Plaintiff's motion for summary judgment* (Attachments: # [1](#) Declaration)(Johnston, Mary) (Entered: 11/17/2022) |
| 11/17/2022 | [237](#) | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to file excess pages *(Unopposed)* (Johnston, Mary) (Entered: 11/17/2022) |
| 11/23/2022 | [238](#) | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Attorney Mary Johnston reports that due to technical difficulties, she is unable to receive by e−mail the sealed docket entries [233](#) and [234](#) sent by plaintiff's attorney. The Court directs the courtroom deputy to e−mail Attorney Mary Johnston docket entries [233](#) and [234](#) . Mailed notice. (cp, ) (Entered: 11/23/2022) |

| | | |
|---|---|---|
| 11/30/2022 | 239 | MOTION by Plaintiff Benahdam Hurt for leave to file *a 3−page Reply to Defendants' SJ Response* (Attachments: # 1 Exhibit Proposed Reply)(Kretchmar, Stuart) (Entered: 11/30/2022) |
| 12/01/2022 | 240 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to file reply in support of Defendants' motion for summary judgment (Attachments: # 1 Exhibit Exhibit A (Proposed Reply))(Johnston, Mary) (Entered: 12/01/2022) |
| 12/02/2022 | 241 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion for leave to file excess pages 237 is granted. Plaintiffs' joint motion for leave to file a reply 239 is granted. Defendants' Motion for leave to file reply 240 is granted. Mailed notice. (cp, ) (Entered: 12/02/2022) |
| 12/05/2022 | 242 | REPLY by Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to sealed response 233 , MOTION by Defendants Faizal Kareemi, Diana Hogan, Drew Beck, Coleen Delaney, Hasina Javed for summary judgment 216 (Johnston, Mary) (Entered: 12/05/2022) |
| 12/29/2022 | 243 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |
| 08/01/2023 | 244 | MINUTE entry before the Honorable Sheila M. Finnegan: All matters relating to the referral have been completed so the referral is closed. Mailed notice (sxw, ) (Entered: 08/01/2023) |
| 09/25/2023 | 245 | MEMORANDUM Opinion and Order: Plaintiffs' motions for summary judgment ( 220 in No. 17−cv−7909; 203 in No. 18−cv−334) are denied in full. Defendants' motions for summary judgment ( 216 in No. 17−cv−7909; 200 in No. 18−cv−334) are denied as to Plaintiff Hurt's failure−to−intervene claim and Defendants' defense of qualified immunity and granted as to Plaintiffs' supervisory liability claims and procedural due process claims. Defendant Javed's motion for summary judgment is granted as to Plaintiff Owens' failure−to−intervene claim ( 200 in No. 18−cv−334). The Clerk is directed to enter judgment in favor of Defendant in Case No. 18−cv−334. The parties are directed to show cause within 14 days why the seal should not be lifted on their summary judgment submissions or, in the alternative, propose redactions that would permit otherwise sealed documents to be in the public record. Signed by the Honorable Rebecca R. Pallmeyer on 9/25/2023. Mailed notice. (cp, ) (Entered: 09/25/2023) |
| 09/25/2023 | 246 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: On the court's own motion, a telephone status hearing is set for 10/16/2023 at 9:00 a.m. To join the telephone hearing, please dial (877) 336−1839 and enter access code: 6708061#. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (cp, ) (Entered: 09/25/2023) |
| 10/05/2023 | 247 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to file motion for reconsideration on the Court's ruling on the Defendants' motion for summary judgment |

| | | (Johnston, Mary) (Entered: 10/05/2023) |
|---|---|---|
| 10/11/2023 | 248 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' motion for leave to file motion for reconsideration of the court's ruling on the Defendants' motion for summary judgment 247 is granted. Defendants are given leave to file their motion for reconsideration by October 31, 2023. At that time, the parties are directed to submit an agreed proposed briefing schedule. Mailed notice. (cp, ) (Entered: 10/11/2023) |
| 10/11/2023 | 249 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: On the court's own motion, the status hearing set for 10/16/23 is stricken. Mailed notice. (cp, ) (Entered: 10/11/2023) |
| 10/25/2023 | 250 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to stay *expert discovery*<br><br>(Newman, Sarah) (Entered: 10/25/2023) |
| 10/26/2023 | 251 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion 250 is granted in part and denied in part without prejudice. Request for a stay is denied, but the date for expert disclosure is extended to January 31, 2024. The court will entertain a further extension only after having seen briefing on the motion for reconsideration. Mailed notice. (cp, ) (Entered: 10/26/2023) |
| 10/30/2023 | 252 | MOTION by Plaintiff Benahdam Hurt for leave to file *Brief as Invited by the Court*<br><br>(Attachments: # 1 Exhibit Proposed Brief)(Kretchmar, Stuart) (Entered: 10/30/2023) |
| 10/31/2023 | 253 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion 252 is entered and continued. The court will allow additional briefing on the issue of the appropriate liability standard, and its application in this, in conjunction with Defendant's motion for reconsideration, to be filed today. Should Defendant elect not to file such motion, Plaintiff's motion for leave to file additional briefing will be granted. Mailed notice. (cp, ) (Entered: 10/31/2023) |
| 10/31/2023 | 254 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for reconsideration regarding order on motion for summary judgment,,,,,,,,, order on motion to seal document,,,,, memorandum opinion and order,,,, 245<br><br>(Newman, Sarah) (Entered: 10/31/2023) |
| 10/31/2023 | 255 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to file excess pages *(Unopposed)*<br><br>(Newman, Sarah) (Entered: 10/31/2023) |
| 11/01/2023 | 256 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion for leave to file overlength brief instanter 255 is granted. Mailed notice. (cp, ) (Entered: 11/01/2023) |
| 11/01/2023 | 257 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The following briefing schedule is set for Defendants' motion for reconsideration 254 : Plaintiff's response is due by 11/21/2023; and Defendants' reply is due by 12/12/2023. Mailed notice. (cp, ) (Entered: 11/01/2023) |
| 11/21/2023 | 258 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for reconsideration regarding order on motion for summary judgment,,,,,,,,, order on motion to seal document,,,,, memorandum opinion and order,,,, 245 254 *(Kretchmar, Stuart) (Entered: 11/21/2023)* |
| 12/12/2023 | 259 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for extension of time to file response/reply as to response in opposition to motion, 258 *(Unopposed)*<br><br>(Newman, Sarah) (Entered: 12/12/2023) |

| 12/13/2023 | 260 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' unopposed motion for a three–day extension of time to file their reply in support of their motion for reconsideration 259 is granted. Defendants' deadline to reply in support of their motion for reconsideration is extended to 12/15/2023. Mailed notice. (cp, ) (Entered: 12/13/2023) |
|---|---|---|
| 12/15/2023 | 261 | REPLY by Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to response in opposition to motion, 258 (Newman, Sarah) (Entered: 12/15/2023) |
| 12/22/2023 | 262 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to stay *expert discovery (renewed)*<br><br>(Johnston, Mary) (Entered: 12/22/2023) |
| 12/22/2023 | 263 | NOTICE by Marci L. Sahinoglu of Change of Address (Sahinoglu, Marci) (Entered: 12/22/2023) |
| 12/27/2023 | 264 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to stay *expert discovery (renewed)*<br><br>262 (Kretchmar, Stuart) (Entered: 12/27/2023) |
| 12/28/2023 | 265 | NOTICE by Mary Alice Johnston of Change of Address (Johnston, Mary) (Entered: 12/28/2023) |
| 12/28/2023 | 266 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
| 01/11/2024 | 267 | NOTICE by Sarah Hughes Newman of Change of Address (Newman, Sarah) (Entered: 01/11/2024) |
| 01/19/2024 | 268 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Defendants' renewed motion 262 is entered and continued, but on its own motion the court continues the expert disclosure date to February 16, 2024. Mailed notice. (cp, ) (Entered: 01/19/2024) |
| 02/07/2024 | 269 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to stay *expert discovery (renewed)*<br><br>(Attachments: # 1 Exhibit PL IDOC Information)(Johnston, Mary) (Entered: 02/07/2024) |
| 02/07/2024 | 270 | MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi for leave to issue subpoena to Illinois Department of Corrections (unopposed)<br><br>(Attachments: # 1 Exhibit PL IDOC Information, # 2 Exhibit Proposed Subpoena)(Johnston, Mary) (Entered: 02/07/2024) |
| 02/09/2024 | 271 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: On the court's own motion and by agreement of the parties, an in–court hearing is set for 2/14/2024 at 9:00 a.m. in Courtroom 2541 regarding Defendants' motions 269 270 . Mailed notice. (cp, ) (Entered: 02/09/2024) |

| 02/12/2024 | 272 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Diana Hogan, Hasina Javed, Faizal Kareemi to stay *expert discovery (renewed)* |
| | | 269 (Attachments: # 1 Exhibit text of email)(Kretchmar, Stuart) (Entered: 02/12/2024) |
| 02/14/2024 | 273 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: In–person motion hearing held. The court expects promptly to issue its ruling on Defendants Motion to Reconsider 252 . The parties are directed to confer about an expert witness schedule and proposed trial dates. The parties are encouraged to engage in settlement negotiations. For the reasons stated on the record, the court enters and continues the motions to stay expert discovery 262 269 ; and grants Defendants' unopposed motion for leave to issue subpoena to the Illinois Department of Corrections 270 . A telephone status hearing is set for 2/28/2024 at 9:00 a.m. To join the telephone hearing, please dial (877) 336–1839 and enter access code: 6708061#. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (cp, ) (Entered: 02/15/2024) |
| 02/15/2024 | 274 | MEMORANDUM Opinion and Order: The court grants the Defendants' Motion to Reconsider 254 with respect to Defendant Hogan only and denies all other claims in Defendants' Motion to Reconsider. Accordingly, Defendants' Renewed Motion to Stay Expert Discovery 262 is deemed moot and the parties are instructed to proceed with expert discovery. See attached Memorandum Opinion and Order for further details. Signed by the Honorable Rebecca R. Pallmeyer on 2/15/2024. Mailed notice. (cp, ) (Entered: 02/15/2024) |
| 02/28/2024 | 275 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held. For the reasons stated on the record, the court orders all disclosures to be completed no later than March 31, 2024. All expert disclosures to be completed by April 30, 2024. Defendants' Motion to stay expert discovery 269 is denied. An in–person status hearing is set for 5/7/2024 at 10:00 a.m. in courtroom 2541. The parties are encouraged to contact the court for any assistance in settlement efforts. Mailed notice. (cp, ) (Entered: 02/29/2024) |
| 02/28/2024 | 276 | AMENDED MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone status hearing held. For the reasons stated on the record, the court orders all expert disclosures to be completed no later than March 31, 2024. All expert depositions to be completed by April 30, 2024. Defendants' Motion to stay expert discovery 269 is denied. An in–person status hearing is set for 5/7/2024 at 10:00 a.m. in courtroom 2541. The parties are encouraged to contact the court for any assistance in settlement efforts. Mailed notice. (cp, ) (Entered: 02/29/2024) |
| 03/15/2024 | 277 | MOTION by Defendants Drew Beck, Coleen Delaney, Hasina Javed, Faizal Kareemi to certify interlocutory appeal |
| | | (Johnston, Mary) (Entered: 03/15/2024) |
| 03/18/2024 | 278 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The following briefing schedule is set for Motion to Certify Interlocutory Appeal 277 : Response is due by 3/25/2024; Reply is due by 4/1/2024. Mailed notice. (cp, ) (Entered: 03/18/2024) |
| 03/18/2024 | 279 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: The court sets the following REVISED briefing schedule for the Motion to Certify Interlocutory Appeal 277 : Plaintiff's response is due 4/1/2024; and Defendants' reply is due by 4/8/2024. Mailed notice. (cp, ) (Entered: 03/18/2024) |
| 03/26/2024 | 280 | MOTION by Defendants Drew Beck, Coleen Delaney, Hasina Javed, Faizal Kareemi for extension of time *to disclose Defendants' expert and to complete expert depositions* |
| | | (Johnston, Mary) (Entered: 03/26/2024) |
| 03/28/2024 | 281 | *counsel* MOTION by Plaintiff John T. Moran for leave to appear as additional *counsel* |

| | | |
|---|---|---|
| | | (Moran, John) (Entered: 03/28/2024) |
| 03/30/2024 | 282 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Hasina Javed, Faizal Kareemi for extension of time *to disclose Defendants' expert and to complete expert depositions*

280 (Kretchmar, Stuart) (Entered: 03/30/2024) |
| 04/01/2024 | 283 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Motion for leave to appear 281 is granted. Attorney John Thomas Moran, Jr is added as counsel for plaintiff Benahdam Hurt. A telephone hearing is set for 4/4/2024 at 9:15 a.m. regarding Defendants' motion to extend deadline to disclose expert and complete expert depositions 280 . To join the telephone hearing, please dial (877) 336–1839 and enter access code: 6708061#. Instructions and a link to the conference number are located on Judge Pallmeyer's website. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (cp, ) (Entered: 04/01/2024) |
| 04/01/2024 | 284 | RESPONSE by Benahdam Hurtin Opposition to MOTION by Defendants Drew Beck, Coleen Delaney, Hasina Javed, Faizal Kareemi to certify interlocutory appeal

277 *or in the alternative to certify interlocutory appeal as frivolous* (Kretchmar, Stuart) (Entered: 04/01/2024) |
| 04/03/2024 | | (Court only) ***Motions terminated: 252 (cp, ) (Entered: 04/03/2024) |
| 04/04/2024 | 285 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Telephone motion hearing held. For the reasons stated on the record, Defendant's motion to extend deadline to disclose and complete expert depositions 280 is granted. The deadline for the disclosure of experts is extended to April 30, 2024 and all expert discovery is to be completed by May 31, 2024. The jury trial date is set for November 6, 2024 at 9:00 a.m. The parties are directed to submit a final pre–trial order, including motions in limine, by October 1, 2024. Mailed notice. (cp, ) (Entered: 04/04/2024) |
| 04/08/2024 | 286 | REPLY by Drew Beck, Coleen Delaney, Hasina Javed, Faizal Kareemi to response in opposition to motion, 284 *and in further support of their motion to certify interlocutory appeal* (Newman, Sarah) (Entered: 04/08/2024) |
| 04/10/2024 | 287 | MOTION by Plaintiff Benahdam Hurt for leave to file *Sur–Reply*

(Attachments: # 1 Exhibit)(Kretchmar, Stuart) (Entered: 04/10/2024) |
| 04/25/2024 | 288 | ORDER: The court grants Defendants Motion to Certify Interlocutory Appeal 277 . Signed by the Honorable Rebecca R. Pallmeyer on 4/25/2024. Mailed notice. (cp, ) (Entered: 04/25/2024) |
| 04/25/2024 | 289 | MINUTE entry before the Honorable Rebecca R. Pallmeyer: Plaintiff's motion for leave to file a sur–reply 287 is granted nunc pro tunc. In light of this court's ruling granting the motion for interlocutory appeal, the parties are reminded that the Court of Appeals' review is discretionary and will be exercised only if application is made within ten days. See 28 U.S.C. § 1292(b); Groves v. United States, 941 F.3d 315, 319 (7th Cir. 2019). Mailed notice. (cp, ) (Entered: 04/25/2024) |